# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DISNEY ENTERPRISES, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>INTERDIGITAL, INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, INTERDIGITAL CE PATENT HOLDINGS, SAS, VID SCALE, INC., VID SCALE PATENTS, LLC, THOMSON LICENSING SAS, AND TECHNICOLOR SA,<br><br>*Defendants*. | C.A. No. 25-cv-996-MN |

## INTERDIGITAL'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

Dated: September 30, 2025

**FARNAN LLP**
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**SULLIVAN & CROMWELL LLP**
Garrard R. Beeney (*pro hac vice*)
Nicolas M. Britton (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 558-4000
beeneyg@sullcrom.com
brittonn@sullcrom.com

Andrei Iancu (*pro hac vice*)
Brittany S. Bruns (*pro hac vice*)
1700 New York Avenue, N.W. Ste 700
Washington, D.C. 20006
(202) 956-7500
iancua@sullcrom.com
brunsb@sullcrom.com

Kyle W. Mach (*pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
(650) 461-5600
machk@sullcrom.com

**McKool Smith P.C.**
Richard A. Kamprath (*pro hac vice*)
300 Crescent Court, Suite 1200
Dallas, Texas 75201
(214) 978-4000
rkamprath@mckoolsmith.com

Joshua W. Budwin (*pro hac vice*)
303 Colorado Street, Suite 2100
Austin, Texas 78701
(512) 692-8700
jbudwin@mckoolsmith.com

James Hartmann Smith (*pro hac vice*)
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 402-9400
jsmith@mckoolsmith.com

*Attorneys for Defendants InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS, VID SCALE Patents, LLC, and VID SCALE, Inc.*

## <u>TABLE OF CONTENTS</u>

Page

STATEMENT OF FACTS ................................................................................................2

ARGUMENT ..................................................................................................................4

I.     Disney's Claims Should Be Dismissed...........................................................................4

     A.     Disney Lacks Article III Standing. ...........................................................4

     B.     Disney's Allegations of a "Relevant Market" Are Facially Deficient....................7

     C.     Disney Does Not Allege Facts Necessary to Sustain a Section 2 Claim under *Broadcom*. ..............................................................................................9

     D.     Disney's Section 1 Claim Is Untimely and Deficient. ...........................................11

          1.     Disney's Sherman Act Section 1 Count Is Time Barred. ..........................12

          2.     InterDigital's Acquisitions Did Not Unreasonably Restrain Trade..........12

     E.     Count III Should Be Dismissed Under the First-Filed Rule and Under This Court's Discretion Under the Declaratory Judgment Act.....................................14

II.     This Court Should Stay This Action Pending Resolution of the Earlier-Filed Patent Infringement Cases. ........................................................................................16

     A.     A Stay Will Simplify the Issues for Trial. ...........................................................16

     B.     A Stay Would Further Judicial Efficiency............................................................17

     C.     A Stay Will Not Unduly Prejudice or Tactically Disadvantage Disney...............18

CONCLUSION..............................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fuji Seal, Inc.* v. *Brook + Whittle Ltd.*,
   No. CV 24-1215 (MN), 2025 WL 2223333 (D. Del. Aug. 5, 2025) ......................................14

*Am. Int'l Adjustment Co.* v. *Galvin*,
   86 F.3d 1455 (7th Cir. 1996) ................................................................................................7

*Apotex, Inc.* v. *Senju Pharm. Co.*,
   921 F. Supp. 2d 308 (D. Del. 2013).....................................................................................17

*Asahi Glass Co.* v. *Pentech Pharms.*,
   289 F.Supp.2d 986 (N.D. Ill. 2003) .....................................................................................10

*Aspartame Antitrust Litig.*,
   416 F. App'x 208, 211 (3d Cir. 2011) ..................................................................................12

*BCS Bus. Consulting Servs. Pet. Ltd.* v. *Baker*,
   755 F. Supp. 3d 1285 (C.D. Cal. 2024) .................................................................................3

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)........................................................................................................10, 11

*Broadcom Corp.* v. *Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)........................................................................................9, 10, 11

*Burtch* v. *Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)...........................................................................................12, 13

*Calamos Asset Mgmt., Inc.* v. *Travelers Cas. & Sur. Co. of Am.*,
   No. CV 18-1510 (MN), 2020 WL 3470473 (D. Del. June 25, 2020)...............................17, 19

*Cepheid* v. *Roche Molecular Sys., Inc.*,
   2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ........................................................................15

*Chapman* v. *New York State Div. for Youth*,
   546 F.3d 230 (2d Cir. 2008).................................................................................................8

*Cisco Sys., Inc.* v. *Ramot at Tel Aviv Univ., Ltd.*,
   No. CV 21-1365-GBW, 2022 WL 16921988 (D. Del. Nov. 14, 2022)..................................15

*City of Los Angeles* v. *Lyons*,
   461 U.S. 95 (1983)................................................................................................................6

*Clapper* v. *Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................5

*Clemens* v. *ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ........................................................4

*Comcast Cable Commc'ns, LLC* v. *USA Video Tech. Corp.*,
No. CIV.A. 06-407-JJF, 2008 WL 1908612 (D. Del. Apr. 29, 2008) .....................15

*Diamond* v. *Charles*,
476 U.S. 54 (1986) .................................................................5

*DSM IP Assets, B.V.* v. *Honeywell Int'l, Inc.*,
No. CV 23-675-WCB, 2024 WL 639991 (D. Del. Feb. 15, 2024) ........................18

*E.E.O.C.* v. *Univ. of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ...........................16

*Eagle Pharms., Inc.* v. *Eli Lilly & Co.*,
No. CV 18-1121- MSG, 2018 WL 6201704 (D. Del. Nov. 27, 2018) ..............16, 18

*Eastern R.R. Presidents Conference* v. *Noerr Motor Freight*,
365 U.S. 127 (1961) ................................................................6

*Fowler* v. *UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ....................................................10, 11

*FTC* v. *Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2018) .......................................................9

*Godo Kaisha IP Bridge 1* v. *TCL Commc'n Tech. Holdings Ltd.*,
2018 WL 11426956 (D. Del. Feb. 28, 2018) .....................................10, 14

*Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ...................................................12, 13

*InterDigital, Inc. et al.* v. *The Walt Disney Company et al.*,
Case No. 2:25-cv-00895-WLH-BFM ...............................................1

*InterVest, Inc.* v. *Bloomberg, L.P.*,
340 F.3d 144 (3d Cir. 2003) .......................................................12

*Leegin Creative Leather Prods.* v. *PSKS*,
551 U.S. 877 (2007) ...............................................................13

*Lewis* v. *Cont'l Bank Corp.*,
494 U.S. 472 (1990) ................................................................5

*Lujan* v. *Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................4

*Lutz* v. *Portfolio Recovery Assocs., LLC*,
    49 F.4th 323 (3d Cir. 2022) ....................................................................................2, 11

*Microsoft Mobile Inc. v. InterDigital, Inc.*,
    2016 WL 1464545 (D. Del. Apr. 13, 2016)...........................................................8, 9

*Monsanto Co.* v. *Syngenta Seeds, Inc.*,
    No. CV 04-305-SLR, 2006 WL 7204491 (D. Del. Nov. 8, 2006).........................17

*Peachlum* v. *City of York*,
    333 F.3d 429 (3d Cir. 2003)..........................................................................................4

*Pro. Real Est. Invs., Inc.* v. *Columbia Pictures Indus.*,
    508 U.S. 49 (1993)........................................................................................................6

*Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)..............................................................................7, 8, 9

*Rambus Inc.* v. *FTC*,
    522 F.3d 456 (D.C. Cir. 2008)......................................................................................9

*S. Cross Overseas Agencies, Inc.* v. *Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999)..........................................................................................3

*Suburban Trails, Inc. v. N.J. Transit Corp.*,
    800 F.2d 361 (3d Cir. 1986)..........................................................................................4

*Talley* v. *Christiana Care Health Sys.*,
    No. CV 17-926-CJB, 2018 WL 4938566 (D. Del. Oct. 11, 2018) ...........................8

*Teva Pharms. USA, Inc.* v. *EISAI Co., Ltd.*,
    620 F.3d 1341 (Fed. Cir. 2010)..................................................................................15

*United Cap. Funding Grp., LLC* v. *Brick City Brewing, LLC*,
    2022 WL 225458 (D.N.J. Jan. 26, 2022) ...................................................................7

*United Mine Workers of Am.* v. *Pennington*,
    381 U.S. 657 (1965)......................................................................................................6

*W. Penn Allegheny Health Sys., Inc.* v. *UPMC*,
    627 F.3d 85 (3d Cir. 2010)..........................................................................................12

*Walker Process Equip., Inc.* v. *Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965)......................................................................................................6

**Statutes and Rules**

15 U.S.C. § 15(b) ..........................................................................................................12

28 U.S.C § 2201(a) ........................................................................................................15

**Other Authorities**

Jonathan M. Barnett, *From Patent Thickets to Patent Networks: The Legal
    Infrastructure of the Digital Economy*, 55 JURIMETRICS 1 (2014) ......................................2

Plaintiff Disney Enterprises, Inc. ("Disney"), owner of three of the largest video streaming services in the world—Disney+, Hulu, and ESPN+—alleges that its ability to compete in the streaming market is unlawfully constrained by InterDigital's[1] enforcement of patent claims to video encoding methods Disney uses. (Compl. ¶ 14.) Disney's claims fail for several reasons.

At the outset, all of Disney's claims should be dismissed because Disney lacks Article III standing. Disney's Counts I and II, alleging violations of the Sherman Act Sections 2 and 1, should further be dismissed because Disney fails to define a sufficient relevant market. Disney's Count I should also be dismissed because Disney fails to plausibly allege anticompetitive conduct and instead relies entirely on conclusory recitations of the legal standard. Disney's Count II should also be dismissed as barred by the statute of limitations and because Disney has not adequately alleged a restraint of trade. Finally, Disney's Count III should be dismissed under the first-filed rule as it is entirely duplicative of counterclaims Disney raised in pending patent infringement litigation in the Central District of California (the "CA Case") months ago. *See InterDigital, Inc. et al.* v. *The Walt Disney Company et al.*, Case No. 2:25-cv-00895-WLH-BFM. Alternatively, because Disney's claims overlap with those at issue in the CA Case, this case can be most efficiently resolved if it is stayed pending resolution of the CA Case and similar cases proceeding in Brazil, Germany, and the Unified Patent Court ("UPC"), all of which will likely be resolved long before this action.

---

[1] InterDigital refers collectively to Defendants InterDigital CE Patent Holdings, SAS, InterDigital Madison Patent Holdings, SAS, InterDigital VC Holdings, Inc., InterDigital, Inc., VID SCALE Patents, LLC, and VID SCALE, Inc. Two other named defendants, Thomson Licensing SAS and Technicolor SA (together, "Thomson"), are unrelated to InterDigital and have counsel separate from InterDigital. Thomson is the former owner of certain of InterDigital's patents. (Compl. ¶ 56.)

## STATEMENT OF FACTS[2]

InterDigital has invested in research and development for decades, resulting in a global patent portfolio across multiple sectors, including digital video.  As Disney acknowledges, InterDigital's contributions to video codecs—the solutions used to encode (compress) and decode (decompress) video files so that video can be streamed efficiently over the internet—have made today's video streaming industry possible.  (Compl. ¶ 59; Ex. 9; ¶¶ 51-53; ¶ 4.)

The "recipe" for decoding video bit streams into viewable formats across devices like phones and TVs is typically defined in industry "standards" that have been developed by standard-setting organizations ("SSOs") to ensure interoperability and performance.  (Compl. ¶ 10 fn.1; ¶ 27.)  There are multiple standards for decoding, including H.264 ("AVC") and H.265 ("HEVC").  (Compl. ¶ 35; Jonathan M. Barnett, *From Patent Thickets to Patent Networks: The Legal Infrastructure of the Digital Economy*, 55 JURIMETRICS 1, 12 (2014) (cited in Compl. ¶ 10 fn.1 and attached as Ex. A to the Declaration of Kyle Mach ("Mach Decl.").)  Because these video decoding standards incorporate patented technology, SSOs like the International Telecommunication Union ("ITU") require participants to commit to license essential claims in their standard-essential patents ("SEPs") on "reasonable and nondiscriminatory" ("RAND" or "FRAND") terms.  (Compl. ¶ 6.)  InterDigital contributed technical solutions to both the AVC and HEVC standards and, with respect to certain "declared" patents, agreed to the SSO RAND terms.  (Compl. ¶¶ 4, 59; Exs. 1-4.)  In 2022, Disney and InterDigital began discussing a license authorizing Disney's use of InterDigital's patented video encoding technology, which enables Disney's streaming business.  (Compl. ¶ 62.)  To date, Disney has not taken a license to any of

---

[2] For the purposes of this motion to dismiss only, InterDigital treats all of Disney's allegations in its Complaint as true.  *Lutz* v. *Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).  InterDigital does not otherwise accede to the truth of any allegation in Disney's Complaint.

InterDigital's patents, despite its continued use of InterDigital's patented encoder innovations, which Disney insists are RAND-encumbered.  (Compl. ¶¶ 62, 64.)

After three years of infringement and failed negotiations, InterDigital sued Disney in the Central District of California for infringement of what it considers non-RAND-encumbered claims in five of InterDigital's patents on February 2, 2025.  (Mach Decl. Ex. B at 136.)[3]  In its Answer, Disney filed 23 counterclaims, including affirmative defenses and counterclaims that put at issue *exactly the same* facts and issues that Disney asserts here.  (Mach Decl. Ex. C.)  For example, both here and in the CA Case, Disney claims that InterDigital's encoding-only patent claims are RAND encumbered.  *Compare* (Mach Decl. Ex. C at 99-104 (¶¶ 61-88)) *with* (Compl. ¶¶ 98-107.)  In the CA Case, as here, Disney has alleged that InterDigital "refused to offer Disney [] a license on RAND terms" and cites to InterDigital's other patent infringement proceedings against Disney in Brazil, Germany, and the UPC (the "Foreign Cases") as attempts to "obtain improper leverage by seeking injunctive relief, and [] to coerce Disney into capitulating and paying excessive non-RAND royalties."  *Compare* (Mach Decl. Ex. C at 84-85, (¶ 2)) *with* (Compl. ¶ 62; *compare* (Mach Decl. Ex. C at 98, (¶ 58)) *with* (Compl. ¶¶ 71-73.)  Disney did not raise any antitrust counterclaims in the CA Case.  Rather, it waited over four months before filing this case, seeking a duplicative declaration that InterDigital's encoder patents are RAND encumbered and alleging that InterDigital has violated Sherman Act Sections 1 and 2.

In each of the Foreign Cases, InterDigital has asserted only patent claims related to encoding.  (Mach Decl. Ex. D ¶ 4, Ex. E. ¶ 4.)  A court-appointed expert in Brazil opined that

---

[3] This Court may consider the filings in the CA Case and Foreign Cases, "not for the truth of the facts recited therein, but for the existence of the" document or the statements therein.  *S. Cross Overseas Agencies, Inc.* v. *Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see, e.g.*, *BCS Bus. Consulting Servs. Pet. Ltd.* v. *Baker*, 755 F. Supp. 3d 1285, 1298 (C.D. Cal. 2024) (taking judicial notice of foreign proceedings).

InterDigital did not breach its RAND commitment and that the encoding-only patent claims asserted in that case were not standard essential and therefore were not subject to the RAND commitment.  (Mach Decl. Ex. D ¶ 9.)

## ARGUMENT

### I.    Disney's Claims Should Be Dismissed.

#### A.  Disney Lacks Article III Standing.

To invoke federal jurisdiction, a plaintiff must allege an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  Disney identifies three supposed injuries: (1) non-RAND license offers from InterDigital, which Disney has rejected; (2) litigation fees and costs; and (3) potential exclusion from the marketplace and negative business consequences from injunctions that could be issued in the CA Case and Foreign Cases.  (Compl. ¶¶ 62-63, 71-73, 85-87.)  As explained below, none of these is a concrete injury-in-fact.  *Id.*; *Clemens* v. *ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022).  And insofar as there could be a sufficient injury alleged here, it is not ripe given ongoing litigation that will soon decide the merits of key overlapping questions.  *See Peachlum* v. *City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003) (one of the considerations underpinning ripeness is whether "the court [has] enough information on which to decide the matter conclusively"); *Suburban Trails, Inc.* v. *N.J. Transit Corp.*, 800 F.2d 361, 365-66 (3d Cir. 1986) (ripeness analysis considers whether judicial review will "disrupt the orderly process of adjudication and whether rights or obligations have been determined").

First, Disney alleges no concrete injury from InterDigital's supposed non-RAND offers. Nor could it.  Disney has not alleged that it ever accepted a license, paid royalties, or suffered any economic harm from InterDigital's license proposals, because Disney has done none of these things.  Rather, it alleges that "there is a substantial threat that Disney Enterprises will be forced

to capitulate," (Compl. ¶ 87), to non-RAND rate offers—exactly the kind of speculative harm the Supreme Court has held fails to qualify as a concrete injury-in-fact. The same is true of the other alleged "threats" Disney insists it faces: "higher costs . . . [that] threaten[] a further loss of market share" and "injunctions in foreign jurisdictions" that allegedly may cause a "further loss of market share." *Id.* But "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient" for Article III standing purposes. *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Disney's unsupported and conclusory allegation that the potential harm from these threats "is both imminent and irreparable" is insufficient. (Compl. ¶ 87.) Nor is such a claim plausible when considering the litigation pending elsewhere between Disney and InterDigital. For example, in the other cases Disney alleges that it does not use InterDigital's patented innovations *at all*. *See, e.g.*, (Mach Decl. Ex. C at 2, (¶¶ 1, 4) (Disney "specifically denies that it has committed any acts of infringement.").) Should Disney successfully prove noninfringement in the other matters, it will not need a license to those patents.

Second, Disney has not suffered a cognizable injury on account of litigation costs. Disney points to its defense of patent suits brought by InterDigital in California and abroad. *See* (Compl. ¶¶ 71-73, 85-86.) But the costs of defending litigation do not themselves constitute an injury-in-fact for Article III purposes. *See Lewis* v. *Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (interest in attorney's fees insufficient for standing); *Diamond* v. *Charles*, 476 U.S. 54, 70-71 (1986). Even if these expenses could qualify as an injury, the Supreme Court has long recognized that the kinds of expenses at issue here are the ordinary incidents of litigation and are immune from attack under the *Noerr-Pennington* doctrine. *See Eastern R.R. Presidents Conf.* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am.* v. *Pennington*, 381 U.S. 657 (1965).

The *Noerr-Pennington* doctrine recognizes only two narrow exceptions: first, where the infringement action is a "sham"—objectively baseless and brought solely to impose costs on a rival, *see Pro. Real Est. Invs., Inc.* v. *Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993); and second, where the patents asserted were procured through fraud on the Patent Office, known as *Walker Process* fraud, *see Walker Process Equip., Inc.* v. *Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). But Disney pleads no such allegations here. It does not allege that the Foreign Cases are "shams" or baseless; to the contrary, it acknowledges that they are active disputes being litigated on their merits. *See, e.g.*, (Compl. ¶¶ 62, 71-73.) Nor does Disney allege that any InterDigital patent was obtained through fraud. These omissions are fatal. Without sham litigation or *Walker Process* fraud, patent suits are protected petitioning activity.

Third, Disney has not suffered cognizable harm from the threat of injunctions. Disney alleges that "the threat of an injunction in significant foreign markets poses a major risk to Disney Enterprises' global streaming business." (Compl. ¶ 86; *see also id.* ¶¶ 64, 87.) But a speculative "risk" of foreign injunctions and their consequences is not a "real and immediate" injury sufficient for Article III standing purposes. *See City of Los Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983). To the extent that the risk of injunctions is not speculative—most notably in Brazil, where a preliminary injunction has issued—that outcome still fails to provide the basis for any sort of antitrust claim: The Brazilian injunction confirms that InterDigital's enforcement actions are not "objectively baseless," foreclosing any suggestion of sham litigation. Under *Noerr-Pennington*, InterDigital's protected activity in Brazil cannot be converted into an antitrust injury. In short, Disney does not explain how even a single foreign injunction could plausibly erode or collapse its "global streaming business," particularly given its scale and diversified markets.

-6-

As to all of Disney's supposed injuries, its position in the CA Case eviscerates any theory of standing here:  In California, Disney has denied infringement, while in Delaware it seeks to premise standing on the very infringement it disclaims.  *Compare* (Mach Decl. Ex. C at 2, (¶ 1) (Disney "specifically denies that it has committed any acts of infringement.")) *with* (Compl. ¶ 85 (Disney "must either capitulate to InterDigital's supra-RAND licensing demands or face the costs and risks of protracted global patent litigation and the corresponding threat of a loss of market access.")).  Although Federal Rule of Civil Procedure 8 allows pleading in the alternative, each claim must have a factual basis in reality.  *See United Cap. Funding Grp., LLC* v. *Brick City Brewing, LLC*, 2022 WL 225458, at *2 (D.N.J. Jan. 26, 2022); *Am. Int'l Adjustment Co.* v. *Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.").  Such a basis is impossible here.  Disney cannot face "imminent and irreparable" harm from the patent-related actions if, as Disney maintains elsewhere, it does not use the patented innovations at all.  This inconsistency confirms that Disney's Complaint is too speculative to establish Article III standing and that any claim is not ripe.  Because none of Disney's asserted claims rise to the level of a concrete and particularized injury-in-fact, the Complaint should be dismissed for lack of Article III standing.

### B.    Disney's Allegations of a "Relevant Market" Are Facially Deficient.

Disney bears the "burden of defining the relevant market."  *Queen City Pizza, Inc.* v. *Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (citations omitted).  The outer bounds of the market "are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Id.*  "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's

favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.*; *Chapman* v. *New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008); *Talley* v. *Christiana Care Health Sys.*, 2018 WL 4938566, at *7 (D. Del. Oct. 11, 2018) (dismissing claims where complaint "contained very few facts that even nod at the concept of reasonable interchangeability of use or cross-elasticity of demand").

Disney defines the relevant markets as including "the markets for technologies covered by the Thomson and/or InterDigital codec patents issued in the United States and elsewhere that are essential, or are alleged to be essential to the" AVC and HEVC standards, "together with all other alternative technologies to the Thomson and/or InterDigital patents that could have been used in the" AVC and HEVC standards. (Compl. ¶ 75.) Disney alleges that "[v]ideo streaming services," including its own, "must comply with the" AVC and HEVC standards "to ensure compatibility between video viewing devices that are compliant with the Compression Standards and video content suppliers, e.g., streaming networks and services." (Compl. ¶ 38.) But Disney does not say whether there are other video encoding options that it could use. Further, Disney makes no allegations as to why the unidentified alternative technologies are not interchangeable. *See Microsoft Mobile Inc.* v. *InterDigital, Inc.*, 2016 WL 1464545, at *2 (D. Del. Apr. 13, 2016) (rejecting a facial market-definition challenge because plaintiff alleged why alternative technologies were not interchangeable). By failing to discuss any alternatives at all, let alone considering the interchangeability or cross-elasticities among them, Disney has "proposed [a] relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor," and its antitrust claims should be dismissed. *Queen City Pizza*, 124 F.3d at 436.

### C.     Disney Does Not Allege Facts Necessary to Sustain a Section 2 Claim under *Broadcom*.

Disney's Section 2 claim must also be dismissed because Disney cannot allege facts sufficient to convert the contract dispute it raises into an antitrust claim.  The gravamen of Disney's Sherman Act Section 2 claim is that InterDigital falsely promised to license its essential patent claims on RAND terms during the standard setting process and later refused to offer Disney the required RAND royalty rate.  *See* (Compl. ¶¶ 10-12.)  As many courts have recognized, violations of standard setting policies are generally mere breaches of contract that do not give rise to a claim under the Sherman Act.  *E.g.*, *FTC* v. *Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2018) ("the remedy for such a breach [of RAND commitments] lies in contract and patent law"); *see also Rambus Inc.* v. *FTC*, 522 F.3d 456, 466-67 (D.C. Cir. 2008).

However, in *Broadcom Corp.* v. *Qualcomm Inc.*, the Third Circuit found that standard setting conduct could give rise to a Sherman Act violation—but only in highly specific circumstances: "(1) in a consensus-oriented private standard-setting environment, (2) a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, (3) coupled with an S[S]O's reliance on that promise when including the technology in a standard, and (4) the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct."  501 F.3d 297, 314 (3d Cir. 2007).[4]  Subsequent decisions have declined to broaden this holding.  *See, e.g.*, *Godo Kaisha IP Bridge 1* v. *TCL Commc'n Tech. Holdings Ltd.*, 2018 WL 11426956, at *7 (D. Del. Feb. 28, 2018) *report and rec. adopted*, 2017 WL 1055958 (D. Del. Mar.

---

[4] Courts in this District have applied *Broadcom* only in the factual context in which it arose.  In *Microsoft Mobile* the court permitted certain RAND-based antitrust claims to proceed past the pleading stage, but only where the complaint alleged with particularity facts supporting fraudulent concealment and reliance by the SSO.  2016 WL 1464545 at *4.  Here, by contrast, Disney does not allege any concealment at all:  InterDigital's acquisitions and RAND declarations were public and extensively reported.  Nor does Disney allege facts—let alone particularized facts—supporting its conclusory assertion that the ITU actually relied on InterDigital's supposed misstatements.

20, 2017).  Here, Disney attempts to avail itself of the *Broadcom* decision via conclusory parroting of the four *Broadcom* elements.  *See* (Compl. ¶¶ 54, 59, 61, 62.)  But this falls short of what the law requires.  To survive a motion to dismiss, Disney must provide more than a "formulaic recitation of the elements of a cause of action;" it must provide sufficient "facts to state a claim for relief that is plausible on its face," rather than merely "conceivable."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 545, 570 (2007).  Particularly in antitrust cases, the Supreme Court has instructed district courts to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Id.* at 558.  "[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase."  *Asahi Glass Co.* v. *Pentech Pharms.*, 289 F.Supp.2d 986, 995 (N.D. Ill. 2003).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Fowler* v. *UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).

Disney's allegations fall well short of this standard.  For example, Disney repeatedly alleges that InterDigital promised to license its essential patent claims on RAND terms in 2011 even though "InterDigital never intended to license its patents on RAND terms."  (Compl. ¶¶ 10, 18, 59 61.)  But the sole factual premise Disney provides to support this conclusion is that InterDigital's offer to Disney more than a decade later (in 2022) was, in Disney's view, not RAND.  (Compl. ¶ 62.)  This cannot sustain the allegation without rendering the four-element *Broadcom* requirements meaningless, because satisfaction of the fourth element (a non-RAND offer) would automatically substantiate the second (an intentionally false promise).  *See Broadcom*, 501 F.3d at 317-18 (in contrast, relying on Broadcom's alleging "numerous specific practices" by Qualcomm that could be anticompetitive).  Similarly, Disney alleges that the ITU "relied on [InterDigital's

-10-

allegedly false] promises when they decided to adopt" InterDigital's technologies.  (Compl. ¶ 59.)  But Disney offers nothing in the way of facts to support this conclusion other than generic speculation about why InterDigital (or any patent holder) might want to mislead an SSO.  (Compl. ¶ 60.)  There is *nothing* supporting the ultimate assertion that InterDigital intended to mislead the ITU, other than the bare allegation that it did so.

After the Court "disregard[s] any formulaic recitation of the elements of a . . . claim or other legal conclusion," there is nothing to support Disney's claims.  *See Lutz*, 49 F.4th at 327-28 (cleaned up, citations omitted).  Disney fails to offer anything "'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" and thus its Section 2 claim must be dismissed.  *See Fowler*, 578 F.3d at 210.  Any other result would gut the Supreme Court's holding in *Twombly* and render meaningless the high standard imposed by *Broadcom*.  If Disney's rote recital of legal elements is sufficient to state a Section 2 claim, any plaintiff can convert *every* dispute over RAND royalty rates into protracted discovery on a Section 2 antitrust claim merely by including bare conclusions matching the four *Broadcom* elements, and nothing more.  This cannot be the result intended by the *Broadcom* court when it explicitly required more than a mere RAND dispute before a Sherman Act claim can proceed.

### D.    Disney's Section 1 Claim Is Untimely and Deficient.

To state a claim under Sherman Act Section 1, a plaintiff must plausibly plead:  (i) "the defendant was a party to a 'contract, combination . . . or conspiracy'"; and (ii) the agreement "imposed an unreasonable restraint on trade" in the relevant market.  *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010); *W. Penn Allegheny Health Sys., Inc.* v. *UPMC*, 627 F.3d 85, 100 (3d Cir. 2010).  Section 1 claims must be "commenced within four years after the cause of action accrued."  15 U.S.C. § 15(b).  Section 1 claims are evaluated under either:  (i) the *per se* rule, which applies only to an agreement that "on its face, has no purpose except stifling

-11-

competition," or (ii) the rule of reason, where the plaintiff "bears the initial burden of showing that the alleged [agreement] produced an adverse, anticompetitive effect within the relevant [] market." *Burtch* v. *Milberg Factors, Inc.*, 662 F.3d 212, 221, 222 (3d Cir. 2011) (citations omitted).  And "[u]nilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation." *InterVest, Inc.* v. *Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003).

### 1.  Disney's Sherman Act Section 1 Count Is Time Barred.

Disney alleges the existence of a "patent privateering agreement between Technicolor, Thomson Licensing, and InterDigital" in violation of Section 1.  (Compl. at p. 14 (cleaned up).) Disney pleads that two of InterDigital's acquisitions gave rise to the alleged "unlawful agreement" (*Id.*, ¶ 97): (i) its July 2018 acquisition of Technicolor's patent licensing business, Thomson; and (ii) its June 2019 acquisition of Technicolor's "Research & Innovation . . . organization."  (*Id.*, ¶¶ 57, 58.)  These acquisitions took effect more than six years before Disney filed the Complaint. Because Section 1 claims must be commenced within four years of accrual of the cause of action, Disney's claim is time barred.  15 U.S.C. § 15(b).  Disney does not, and cannot, argue that any fraudulent concealment tolled the limitations period.  *Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) (fraudulent concealment will toll the limitations period only "'when a plaintiff's cause of action has been obscured by the defendant's conduct'").  InterDigital's acquisitions were publicly disclosed—Disney even cites to the associated press releases.  (Compl. ¶ 57 n.18, ¶ 58 n.21.)  Disney does not attempt to allege otherwise.

### 2.  InterDigital's Acquisitions Did Not Unreasonably Restrain Trade.

Even if Disney's Section 1 claim was timely, which it is not, Disney's claim fails.  The *per se* standard does not apply here—these acquisitions were for legitimate business purposes and cannot be "conclusively presumed to unreasonably restrain competition," like price-fixing or market-allocation agreements.  *Ins. Brokerage*, 618 F.3d at 317; *see also Leegin Creative Leather*

*Prods.* v. *PSKS*, 551 U.S. 877, 886 (2007).  Under the rule of reason, Disney fails to meet its

burden of showing the allegedly unlawful agreement had an unreasonable restraint on the relevant

market.  *Burtch*, 662 F.3d 212 at 222.

First, Disney's allegation of an unlawful "patent transfer scheme" is conclusory and lacks

the support needed to sustain the existence of a Sherman Act conspiracy.  *Ins. Brokerage*, 618 F.3d

at 319.  All Disney pleads is that, as part of lawful acquisitions:  (i) InterDigital acquired patents

and applications; (ii) Technicolor received a percentage of "future cash receipts" of certain

InterDigital licensing efforts; and (iii) InterDigital "assumed the rights and obligations of the R&I

research and development organization and Technicolor's licensing business."  (Compl. ¶¶ 57,

58.)  From these facts alone, augmented only by Disney's adjectives, Disney alleges intent on

behalf of InterDigital, Thomson, and Technicolor "to cause the inflated prices, restricted output,

and other anticompetitive effects resulting from their agreement to transfer Thomson's and

Technicolor's RAND-encumbered SEPs."  (Compl. ¶ 94.)  This is not enough.  Disney fails to

explain how the conveyance of patents and the agreement with Technicolor led to higher royalty

rates.  Nowhere does Disney allege just *how* InterDigital's lawful acquisitions led to any

anticompetitive harm, especially given a transfer of patents alone is not sufficient to allege harm.

*See Godo Kaisha*, 2018 WL 11426956, at *6 ("the transfer of patent rights is not sufficient to

allege harm to competition where, as here, IP Bridge and Panasonic were not in competition for

the licensing of the transferred patents").  Thomson and Technicolor could have sought the same

royalty rates as InterDigital but-for the acquisition.  And even after the conveyance, InterDigital

remained bound by RAND commitments insofar as they bound Thomson and Technicolor.[5]

---

[5] That the parties may dispute the scope of such RAND commitment and obligation is irrelevant
to whether Disney has adequately pled its Section 1 claim.  *See supra* at 9-10.

Second, nowhere does Disney allege a causal link between InterDigital's acquisitions and the alleged harms. An allegation that InterDigital charged supra-RAND rates, which it did not, is unilateral activity by InterDigital and does not involve the alleged coconspirators. *See id.* at *8 ("to the extent IP Bridge's demand for a reasonable royalty allegedly results in a supra-FRAND rate from TCT, this cannot constitute anticompetitive activity under Section 1 because it is, at most, unilateral action on the part of IP Bridge").

### E. Count III Should Be Dismissed Under the First-Filed Rule and Under This Court's Discretion Under the Declaratory Judgment Act.

This Court has discretion twice over not to hear Disney's Count III, which seeks a declaration that InterDigital's encoding claims—including claims at issue in the CA Case—are RAND-encumbered. (Compl. ¶ 107.) This Court's consideration of that issue would be, at best, duplicative of the CA Case and, at worst, potentially contradictory. The "first-filed" rule is intended to avoid exactly these sorts of "conflicting decisions and promote judicial efficiency." *Am. Fuji Seal, Inc.* v. *Brook + Whittle Ltd.*, No., 2025 WL 2223333, at *1 (D. Del. Aug. 5, 2025) (citation omitted). It "dictates that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it.'" *Comcast Cable Commc'ns, LLC* v. *USA Video Tech. Corp.*, 2008 WL 1908612, at *1 (D. Del. Apr. 29, 2008) (citation omitted). District courts have discretion to deviate from that norm under exceptional circumstances not present here, such as "inequitable conduct, bad faith, or forum shopping." *Id.*

As Count III seeks declaratory judgment, this Court has "a 'double dose' of discretion" under the first-filed rule and under the Declaratory Judgment Act. *Cisco Sys., Inc.* v. *Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citation omitted); 28 U.S.C § 2201(a). Courts have "upheld discretionary decisions declining jurisdiction when the declaratory judgment action was duplicative of other proceedings." *Teva Pharms. USA, Inc.* v. *EISAI Co.,*

-14-

*Ltd.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010), *vacated on other grounds*, 564 U.S. 1001 (2011); *see also Cepheid* v. *Roche Molecular Sys., Inc.*, 2013 WL 184125, at *13 (N.D. Cal. Jan. 17, 2013).

In the CA Case, Disney has brought counterclaims duplicative of Count III.  In Counterclaims I-III, Disney asserts that InterDigital: (1) breached its contract with the ITU by failing to offer RAND licenses to the asserted encoding claims; (2) is promissorily estopped from offering other-than-RAND licenses to those encoder patent claims; and (3) breached its duty of good faith by failing to offer RAND licenses to the claims.  (Mach Decl. Ex. C at 99-103, (¶¶ 61-81).)  In Counterclaim IV, Disney seeks a declaration that InterDigital has not complied with its declaration to license patent claims related to encoding on RAND terms by not counting those claims among its SEPs.  (Mach Decl. Ex. C at 103-104, (¶¶ 82-88).)[6]  These counterclaims require the CA court to determine whether InterDigital's encoding-only patent claims are RAND encumbered.

Regardless of Disney's intent in asking this Court to determine the same issue currently being litigated in CA—whether to duplicate proceedings, avoid an adverse decision in that other forum, or gain negotiating leverage—its injection of the same issue in dueling courts risks contradictory decisions and guarantees waste of judicial resources.  This is exactly what the first-filed rule is designed to prevent.  Disney may avoid application of the first-filed rule only if it can show "exceptional circumstances."  *E.E.O.C.* v. *Univ. of Pa.*, 850 F.2d 969, 979 (3d Cir. 1988).  None exist here.  Disney lodged counterclaims asserting that InterDigital's encoder patents are RAND encumbered in CA on March 31, 2025, then months later filed a duplicative claim in this Court seeking a declaration that InterDigital's encoding-only patent claims, including those at

---

[6] Disney has raised similarly overlapping issues in cases currently pending in the Foreign Cases. (Mach Decl. Ex. D ¶¶ 7-9; Mach Decl. Ex. E ¶ 4.)

issue in CA, are RAND encumbered.  The later-filed claim should be dismissed under the first-filed rule and this Court's discretion under the Declaratory Judgment Act.

## II.    This Court Should Stay This Action Pending Resolution of the Earlier-Filed Patent Infringement Cases.

Due to the overlap between the earlier-filed patent CA Case and Foreign Cases, on the one hand, and this antitrust case on the other, InterDigital respectfully requests that this Court stay all claims in this case until resolution of the former.  Staying "an antitrust case until after resolution of a related patent case" is "common practice," *Eagle Pharms., Inc.* v. *Eli Lilly & Co.*, 2018 WL 6201704, at *1 n.2 (D. Del. Nov. 27, 2018), and makes particular sense here given the additional overlap of RAND, standard-setting, and other issues.  In exercising discretion to stay a case, courts consider whether a stay will: (1) simplify the issues in question and trial of the case; (2) promote judicial economy, e.g., how close to trial the litigation has advanced; and (3) unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms.  *Calamos Asset Mgmt., Inc.* v. *Travelers Cas. & Sur. Co. of Am.*, 2020 WL 3470473, at *5 (D. Del. June 25, 2020) (cleaned up).  All three factors favor a stay.

### A.  A Stay Will Simplify the Issues for Trial.

"Courts routinely stay matters if resolution of an action in another forum will streamline proceedings, even if the other proceeding would only resolve some of the issues." *Calamos*, 2020 WL 3470473, at *5; *Monsanto Co.* v. *Syngenta Seeds, Inc.*, 2006 WL 7204491, at *1 (D. Del. Nov. 8, 2006) (staying antitrust case because of "overlap between the patent case and the antitrust case"). Resolution of the CA Case would simplify the resolution of Disney's antitrust claims because, for example, if InterDigital "ultimately prevails on any of its infringement claims, it would have a legal entitlement to exclude [Disney] from the marketplace." *See Apotex, Inc.* v. *Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013).  The factfinder in the CA Case would then have to

determine whether the asserted encoder claims are RAND-encumbered, whether Disney is a willing licensee entitled to a RAND license, and the amount of a RAND royalty—all raised by Disney's claims here.  (Compl. ¶¶ 61-63 (alleging InterDigital has not offered Disney a RAND license); Compl. ¶¶ 98-107 (seeking a declaration that InterDigital's encoder patents are RAND-encumbered)).

Conversely, if Disney successfully shows it does not infringe InterDigital's asserted encoder claims, Disney does not need a license and its claim that such a license to those patents is not being offered on RAND terms—a claim core to the allegations in this antitrust case—will be moot.  Similarly, whether InterDigital's encoder claims are RAND encumbered is at issue in the Foreign Cases.  (Mach Decl. Ex. D ¶¶ 7-9; Mach Decl. Ex. E ¶¶ 8-9.)

### B.    A Stay Would Further Judicial Efficiency.

This case is in its most nascent stages.  No answer has been filed, and discovery has not started.  The CA Case, on the other hand, is well underway, with a trial date less than a year from now—September 8, 2026.  (C.D. Cal. Dkt. No. 60.)  Fact discovery in that case began months ago and will be concluded in April 2026.  (C.D. Cal. Dkt. No. 60 at 22.).  The parties took claim construction expert depositions, briefing is complete, and a *Markman* hearing will convene on October 24, 2025.  (C.D. Cal. Dkt No. 107.)  Similarly, in Brazil, a court-appointed expert issued a 217-page report on August 8, 2025, concluding that (1) Disney infringed the encoder patent claims asserted by InterDigital and (2) those encoder claims were not RAND encumbered.  (Mach Decl. Ex. D ¶¶ 7-9.)  On September 10, 2025, the Brazilian Court reached the same two conclusions as the objective expert and issued a preliminary injunction.  (Mach Decl. Ex. D ¶¶ 8-9.)  The trial in that case will likely occur in 2025 or early 2026.  (Mach Decl. Ex. D ¶ 10.)  Hearings in the German and UPC actions are scheduled for May and June of 2026, and final decisions in those cases will likely be made in or around August 2026.  (Mach Decl. Ex. E ¶¶ 5-7, 9.)

Discovery in this antitrust case is likely to be "voluminous, time-consuming, and expensive" and this Court can "avoid potential waste if the claims in the antitrust action are narrowed or mooted by the resolution of the patent infringement action[s]." *Eagle Pharms.*, 2018 WL 6201704, at *3; *see also DSM IP Assets, B.V.* v. *Honeywell Int'l, Inc.*, 2024 WL 639991, at *6 (D. Del. Feb. 15, 2024). As one example of the expansive discovery that litigating Disney's claims will require, Disney alleges that several companies submitted false patent declarations to the ITU. Thus, Disney's allegations will require delving into the subjective intent of multiple companies when they entered contracts as many as 22 years ago. (Compl. ¶ 54 (alleging that Thomson submitted declarations to the ITU between 2003 and 2018), ¶ 59 (alleging that InterDigital "made numerous proposals to the ITU" starting in 2011); ¶ 61 (alleging that InterDigital "concealed its true objectives from the ITU").) This and other voluminous discovery would be minimized or mooted entirely by a stay.

### C.    A Stay Will Not Unduly Prejudice or Tactically Disadvantage Disney.

As the trial in the CA Case is set for less than a year from now and the Foreign Cases are likely to be resolved even sooner, any stay in this action should be relatively short and will not unduly prejudice or tactically disadvantage Disney. *See Calamos*, 2020 WL 3470473, at *6. Disney does not seek emergency or injunctive relief in this case; rather it seeks only damages and various declarations that (1) InterDigital has violated antitrust laws, (2) all of InterDigital's video coding patent claims are unenforceable, (3) "any and all contracts and agreements that InterDigital has entered into" related to Disney's allegations are void, and (4) InterDigital's encoder claims are RAND-encumbered. (Compl. at p. 31-32.) A mere delay in proving any such relief to Disney is not undue prejudice. *See Calamos*, 2020 WL 3470473, at *6 (finding that a "mere delay in payment of damages for a company of [plaintiff's] size and resources does not demonstrate sufficient prejudice to overcome the factors weighing in favor of a stay"). Given the substantial

overlap between the issues Disney raises in both actions, the results of the CA Case and Foreign Cases may well resolve many issues that would otherwise be subject to duplicative litigation here. But insofar as some delay does result, Disney cannot claim unfair prejudice from its strategic decision to delay months before raising substantially similar claims in a separate court rather than proceed apace in California.

As a stay would simplify the issues for trial in this case, further judicial efficiency, and not unduly prejudice or tactically disadvantage Disney, InterDigital respectfully requests that this Court stay all claims that survive dismissal pending resolution of the CA Cases and the Foreign Cases.

## CONCLUSION

For the foregoing reasons, InterDigital respectfully requests dismissal of each of Disney's claims. In the alternative, InterDigital respectfully requests a stay of any surviving claim pending resolution of the CA Case and the Foreign Cases.

Dated: September 30, 2025

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

SULLIVAN & CROMWELL LLP
Garrard R. Beeney (*pro hac vice*)
Nicolas M. Britton (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 558-4000

beeneyg@sullcrom.com
brittonn@sullcrom.com

Andrei Iancu (*pro hac vice*)
Brittany S. Bruns (*pro hac vice*)
1700 New York Avenue, N.W. Ste 700
Washington, D.C. 20006
(202) 956-7500
iancua@sullcrom.com
brunsb@sullcrom.com

Kyle W. Mach (*pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
(650) 461-5600
machk@sullcrom.com

MCKOOL SMITH P.C.
Richard A. Kamprath (*pro hac vice*)
300 Crescent Court, Suite 1200
Dallas, Texas 75201
(214) 978-4000
rkamprath@mckoolsmith.com

Joshua W. Budwin (*pro hac vice*)
303 Colorado Street, Suite 2100
Austin, Texas 78701
(512) 692-8700
jbudwin@mckoolsmith.com

James Hartmann Smith (*pro hac vice*)
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 402-9400
jsmith@mckoolsmith.com

*Attorneys for Defendants InterDigital, Inc.,*
*InterDigital VC Holdings, Inc., InterDigital*
*Madison Patent Holdings, SAS, and*
*InterDigital CE Patent Holdings, SAS*