IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DISNEY ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted – Public Version** |
| | ) | |
| v. | ) | C.A. No. 25-996-MN |
| | ) | |
| INTERDIGITAL, INC., INTERDIGITAL | ) | ███████████████████████ |
| VC HOLDINGS, INC., INTERDIGITAL | ) | |
| MADISON PATENT HOLDINGS, SAS, | ) | |
| INTERDIGITAL CE PATENT HOLDINGS, | ) | |
| SAS, VID SCALE, INC., VID SCALE | ) | |
| PATENTS, LLC, THOMSON LICENSING | ) | |
| SAS, and TECHNICOLOR SA, | ) | |
| | ) | |
| Defendants. | ) | |

## THOMSON LICENSING SAS AND TECHNICOLOR SA'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendants Thomson Licensing
SAS and Technicolor SA*

OF COUNSEL:
Brett Schuman
GOODWIN PROCTER LLP
525 Market Street, 32nd Floor
San Francisco, CA 94105
(415) 733-6000

David D. Cross
Alexandra I. Russell
Jacqueline Genovese Bova
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000

Dated: October 31, 2025

**<u>TABLE OF CONTENTS</u>**

NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT .................. 1

STATEMENT OF FACTS ......................................................................................................... 2

    I.    The Thomson Defendants Are French Companies with No Ties to Delaware............. 2

    II.   The 2018 Patent Sale Agreement Transferred the Thomson Defendants' Video-Coding Patents to InterDigital, Subject to Existing RAND Encumbrances. ................ 3

    III.  Seven Years After the Thomson Defendants Sold the Video-Coding Patents to InterDigital, Disney Filed This Antitrust Action Against InterDigital and the Thomson Defendants. .................................................................................................... 4

LEGAL STANDARD............................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    The Thomson Defendants Are Not Subject to Personal Jurisdiction in Delaware. ...... 7

        A.   Disney Fails to Allege General Jurisdiction. ....................................................... 8

        B.   Disney Fails to Allege Specific Jurisdiction....................................................... 8

        C.   This Court's Exercise of Jurisdiction Over the Thomson Defendants Would Violate Due Process Requirements....................................................................... 9

        D.   The Clayton Act and Rule 4(k) Do Not Provide an Independent Basis for Personal Jurisdiction Over the Thomson Defendants....................................... 10

        E.   The Court Should Dismiss the Complaint Without Jurisdictional Discovery... 11

    II.   The Court Should Dismiss Count II with Prejudice. .................................................. 12

        A.   Disney's Allegation of Concerted Action Between InterDigital and the Thomson Defendants Is Implausible and Refuted by the 2018 Agreement. ..... 12

        B.   Disney Fails to Plausibly Allege That the Thomson Defendants' Conduct Produced Anticompetitive Effects. .................................................................... 15

        C.   Disney Fails to Allege a Relevant Product Market........................................... 16

    III.  Count III Should Be Dismissed Against the Thomson Defendants With Prejudice... 17

CONCLUSION...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.,*
   801 F. Supp. 1450 (E.D. Pa. 1992) ...................................................................15

*Alvin v. Suzuki,*
   227 F.3d 107 (3d Cir. 2000)...........................................................................18

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*
   480 U.S. 102 (1987) ......................................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................17

*In re Auto. Refinishing Paint Antitrust Litig.,*
   358 F.3d 288 (3d Cir. 2004)...........................................................................11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................6, 13

*Brillhart v. Excess Ins. Co. of Am.,*
   316 U.S. 491 (1942) ........................................................................................7

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997)......................................................................6, 13

*Chavez v. Dole Food Co.,*
   836 F.3d 205 (3d Cir. 2016).............................................................................8

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)..........................................................................................8

*Datatreasury Corp. v. Wells Fargo & Co.,*
   522 F.3d 1368 (Fed. Cir. 2008).................................................................13, 18

*Est. of Daher v. LSH Co.,*
   2021 WL 184394 (D. Del. Jan. 19, 2021)........................................................9

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.,*
   2018 WL 11426956 (D. Del. Feb. 28, 2018) .................................................14

*IND Holding, Inc. v. ReachOut Tech. NE Holdings, LLC,*
   2025 WL 2426683 (D. Del. Aug. 22, 2025) .....................................................3

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    956 F. Supp. 2d 925 (N.D. Ill. 2013) .................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)..............................................................12, 13, 14

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945)................................................................................6, 10

*Marnavi S.p.A. v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012) .............................................................2

*Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
    107 F.3d 1026 (3d Cir. 1997).....................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...........................................................................7, 18

*MHB Distribs., Inc. v. Parker Hannifin Corp.*,
    800 F. Supp. 1265 (E.D. Pa. 1992) ............................................................15

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
    263 F. Supp. 3d 498 (D. Del. 2017).........................................................8, 11

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018)..................................................................12, 15, 16

*Parker v. Learn Skills Corp.*,
    530 F. Supp. 2d 661 (D. Del. 2008)..............................................................9

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
    819 F.2d 434 (3d Cir. 1987)....................................................................6, 10

*Queen City Pizza v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997).......................................................................16

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
    880 F. Supp. 2d 541 (D. Del. 2012)..........................................................11, 12

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
    844 F. Supp. 2d 571 (E.D. Pa. 2012) ..........................................................12

*United States v. Brown Univ.*,
    5 F.3d 658 (3d Cir. 1993)..........................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................................7

*Xactus, LLC v. Sike*,
  2024 WL 3947319 (Del. Ch. Aug. 27, 2024) ...................................................................9

*Yankees Ent. & Sports Network, LLC v. Hartford Fire Ins. Co.*,
  634 F. Supp. 3d 203 (D. Del. 2022), *aff'd* 2023 WL 6291784 (3d Cir. Sept.
  27, 2023) ...........................................................................................................................9

**Statutes**

10 Del. C. § 3104(c)(1) ..................................................................................................................8

15 U.S.C. § 1 ...................................................................................................... *passim*

15 U.S.C. § 22 ....................................................................................................8, 10, 11

28 U.S.C. § 2201(a) ......................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 4(k) ......................................................................8, 10, 11

Federal Rule of Civil Procedure 12(b)(2) ...................................................................1, 2, 6, 19

Federal Rule of Civil Procedure 12(b)(6) ...................................................................5, 6, 17, 19

**NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT**

This case arises from a multi-jurisdictional patent-licensing dispute between InterDigital and Disney that is unrelated to foreign Defendants Thomson Licensing SAS and Technicolor SA (collectively, the "Thomson Defendants"). Disney is attempting to transform that patent dispute between it and InterDigital into an antitrust case and has included the Thomson Defendants based solely on their entirely lawful 2018 sale of video-coding patents to InterDigital. Based on this lawful business transaction—the actual terms of which disprove any alleged "conspiracy"— Disney has sued the Thomson Defendants for antitrust violations under Section 1 of the Sherman Act ("Count II") and seeks a declaratory judgment that certain unidentified patents owned by InterDigital are RAND encumbered ("Count III"). The Court should dismiss with prejudice the claims against the Thomson Defendants for multiple, independent reasons:

*First*, Disney's claims against the Thomson Defendants—French entities lacking any contacts, presence, or business activities in Delaware—should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Disney's boilerplate allegations of jurisdiction fail to satisfy the suit-related minimum contacts required to exercise personal jurisdiction and fall well short of satisfying Due Process requirements.

*Second*, even if this Court had personal jurisdiction over the Thomson Defendants (and it does not), Count II should be dismissed because Disney fails to plead a plausible claim for violation of Section 1 of the Sherman Act. Disney's Section 1 claim hinges on its conclusory allegations that the Thomson Defendants' lawful sale of their video-coding patents to InterDigital constituted a "patent-transfer scheme" to "evade" alleged RAND commitments. But the actual terms of the parties' contract render Disney's allegations implausible. Far from enabling the parties to escape any alleged RAND commitments, the contract explicitly provides that the

1

Thomson Defendants sold and transferred the video-coding patents to InterDigital *subject to* the Thomson Defendants' RAND commitments. Absent any plausible allegation of an agreement between the Thomson Defendants and InterDigital to "evade" the alleged RAND commitments, Disney's claim of an anticompetitive conspiracy cannot stand. In addition to these fatal pleading deficiencies, which alone warrant dismissal of Count II, Disney's claim fails for other reasons. As the U.S. Department of Justice ("DOJ") remarked in its recent statement of interest, Disney has not sufficiently alleged (1) "joint conduct that might have restrained competition" (2) within a properly-defined relevant market. *See* D.I. 28 at 14 n.15.

*Finally*, there is no legal or factual basis for Disney's declaratory judgment claim against the Thomson Defendants, which seeks a declaration that various video-coding patents that InterDigital owns are RAND-encumbered. Count III has nothing to do with the Thomson Defendants, who sold their patents to InterDigital over seven years ago. Disney does not plead any "substantial controversy" involving the Thomson Defendants with respect to the patents at issue, as required to state a claim under the Declaratory Judgment Act. Count III should be dismissed against the Thomson Defendants with prejudice.

## STATEMENT OF FACTS

### I.  The Thomson Defendants Are French Companies with No Ties to Delaware.

Thomson Licensing SAS and Technicolor SA are corporations organized under the laws of France, with their principal place of business in France.[1]  Declaration of Jim Shead ("Shead Decl.").  ¶¶ 3-6.  They are not registered to do business in Delaware.  *Id.* ¶¶ 7-9.  They have not filed articles of incorporation in Delaware and have no physical presence in Delaware.  *Id.* ¶¶ 7-12.

---

[1] "In considering a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), 'courts may rely upon matter outside the pleadings in determining jurisdictional facts.'"  *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 386 (D. Del. 2012) (citations omitted).

They do not own any property in Delaware, and do not retain any agents or employees in Delaware. *Id.* ¶ 12.

## II. The 2018 Patent Sale Agreement Transferred the Thomson Defendants' Video-Coding Patents to InterDigital, Subject to Existing RAND Encumbrances.

In July 2018, the Thomson Defendants entered into an agreement to sell their portfolio of approximately 18,000 patents and 3,000 worldwide video-coding patents to InterDigital (the "2018 Agreement").  D.I. 1 ("Compl.") ¶ 57.  The 2018 Agreement specifically states:



*See* Declaration of Alexandra Russell, Ex. A, July 30, 2018 Video Coding Patent Assignment and License Agreement, Section 2.2 (emphasis added).[2]  "███████████████" are defined as the "████████████████████████████████████████████████████████████████████████████████████████.  *Id.* § 1.1(y).  "████████████████" is defined broadly to include:  "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  *Id.* § 1.1(aaa) (emphasis added).  The "███████████" associated with ████████████████████████████

---

[2] "[A] court may consider documents incorporated by reference in the pleadings when deciding a motion to dismiss."  *IND Holding, Inc. v. ReachOut Tech. NE Holdings, LLC*, 2025 WL 2426683, at *2 n.1 (D. Del. Aug. 22, 2025) (considering agreement referred to, but not attached to, the complaint in deciding motion to dismiss).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    *See* Declaration of Alexandra Russell, Ex. B, VCP Seller Disclosure Letter,

Section 5.2(d).[3]

### III. Seven Years After the Thomson Defendants Sold the Video-Coding Patents to InterDigital, Disney Filed This Antitrust Action Against InterDigital and the Thomson Defendants.

On August 8, 2025, Disney filed this lawsuit against InterDigital and the Thomson Defendants, alleging three claims: Count I (Monopolization under Section 2 of the Sherman Act, against InterDigital alone); Count II (Unreasonable Restraint of Trade under Section 1 of the Sherman Act, against all Defendants); and Count III (Declaratory Judgment of RAND-Encumbrance against all Defendants).

With respect to Count II, Disney asserts that in 2018, "InterDigital reached an agreement with [the Thomson Defendants] to acquire patents for the purpose of coordinating to increase the total royalties obtained from licensing those patents." Compl. ¶ 91. Disney alleges that the Thomson Defendants entered into the purported "patent-transfer scheme" after they "began to encounter financial difficulties" at the end of 2017 and "[n]eed[ed] free cash flow to staunch these losses." *Id.* ¶ 55. Disney further alleges that the Thomson Defendants "negotiated to receive a share of the excessive royalties that InterDigital would collect" and "intended" that InterDigital would seek non-RAND royalties from video-streaming providers "far beyond what [the Thomson Defendants] could collect themselves in light of their RAND commitments." *Id.* ¶ 91. Disney

---

[3] ████████████████████████████████████████████████
████████████████████████████ "

does not allege *any* allegedly anticompetitive conduct by the Thomson Defendants beyond the 2018 patent sale. Disney does not allege, for example, that the Thomson Defendants have played any role in InterDigital's licensing negotiations with Disney, which allegedly did not begin until July 2022. *Id.* ¶ 62.[4]

On September 30, 2025, InterDigital filed a motion to stay this action or in the alternative, to dismiss Disney's Complaint under Rule 12(b)(6). *See* D.I. 24. InterDigital's motion asserts that it is party to an infringement lawsuit pending in federal court in California, in which Disney has asserted counter-claims seeking a declaration that InterDigital's video-coding patents are RAND-encumbered. *See id.* at 2-4; *see also* D.I. 25-3, Declaration of Kyle Mach, Ex. C, Disney Answer and Counterclaims.

On October 6, 2025, the DOJ filed a statement of interest in this action, which underscored multiple fatal deficiencies in Disney's pleading. *See* D.I. 28. The DOJ argued that "[i]n reviewing the Complaint here, the court should decline any invitation to rely on conclusory allegations to presume that the elements of a rule-of-reason claim are satisfied." *Id.* at 9. As is relevant to the Section 1 claim against the Thomson Defendants, the DOJ stated that "the Court should not find market power to be adequately alleged simply on the basis of SEP status; nor should it conclude that allegedly charging high prices, by itself, harms competition." *Id.* Notably, the DOJ expressly called out Disney's failure to "allege *any joint conduct* that might have restrained competition." *Id.* at 14 n.15 (emphasis added).

---

[4] Disney alleges that InterDigital acquired the Thomson Defendants' Research & Innovation organization in June 2019 (Compl. ¶ 58), but fails to explain how that acquisition relates to the purported "patent-transfer scheme."

## <u>LEGAL STANDARD</u>

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Disney "bears the burden of establishing" that the Court has jurisdiction over the Thomson Defendants. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, Disney "must establish either that the particular cause of action sued upon arose from [the Thomson Defendants'] activities within the forum state (specific jurisdiction) or that the [Thomson Defendants have] continuous and systematic contacts with the forum state (general jurisdiction)." *Id.* (internal quotations and citations omitted). The Court's exercise of jurisdiction over the Thomson Defendants must also satisfy Due Process, which requires that the Thomson Defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts in the antitrust context must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (internal quotations and citation omitted). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state a plausible conspiracy claim because "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57. Although courts generally do not look beyond the pleadings to decide a motion to dismiss, a "document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (internal quotations and citation omitted).

The Declaratory Judgment Act grants federal courts discretion to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).  The Court has discretion to rule on a substantial controversy but is "under no compulsion to exercise [] jurisdiction."  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

## ARGUMENT

### I.    The Thomson Defendants Are Not Subject to Personal Jurisdiction in Delaware.

Disney's Complaint alleges *no facts* tying the Thomson Defendants—foreign entities that Disney admits are headquartered in France (Compl. ¶¶ 22-23)—to this forum.  Nor could it: the Thomson Defendants have no presence, employees, or operations in Delaware.  Shead Decl. ¶¶ 11-12.  Disney's entire case for personal jurisdiction hinges on two vague, boilerplate allegations: that the Thomson Defendants "transact business" in Delaware and that "[a]ll Defendants have minimum contacts with this District or with the United States."  Compl. ¶¶ 25-26.  Disney's conclusory allegations fail to establish personal jurisdiction over the Thomson Defendants.  *First*, there are no allegations suggesting that the Thomson Defendants are "at home" in Delaware, as required to show general jurisdiction.  *Second*, Disney does not allege that the Thomson Defendants have any suit-related contacts with Delaware, as required for specific jurisdiction.  *Third*, Disney's bare allegations fail to satisfy Due Process requirements, which demand "minimum contacts" with Delaware, such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."  *See Walden v. Fiore*, 571 U.S. 277, 283

(2014) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). *Finally*, because Disney cannot show that the exercise of personal jurisdiction over the Thomson Defendants comports with Due Process requirements, its attempt to invoke the nationwide service provisions of Federal Rule of Civil Procedure 4(k) and the Clayton Act similarly fails.

### A. Disney Fails to Allege General Jurisdiction.

General jurisdiction is established when the foreign corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler*, 571 U.S. at 118. Disney makes no attempt to allege general jurisdiction, nor could it, as it admits the Thomson Defendants have their principal place of business in France. Compl. ¶¶ 22-23. Disney fails to allege that the Thomson Defendants have *any* connections to Delaware—much less the requisite continuous and systematic "ties between the companies and Delaware that render them essentially at home" in Delaware. *See Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 503 (D. Del. 2017). "Because [the Thomson Defendants'] nerve centers are in [France], and there are no ties between the companies and Delaware that render them essentially at home in this state, they cannot be subject to general jurisdiction here." *See id.* at 503.

### B. Disney Fails to Allege Specific Jurisdiction.

Disney contends this Court has specific personal jurisdiction over the Thomson Defendants pursuant to subsection (c)(1) of Delaware's Long Arm Statute. Compl. ¶ 25; *see* 10 Del. C. § 3104(c)(1). "Under § 3104(c)(1), specific personal jurisdiction is proper over any nonresident who, in person or through an agent, '[t]ransacts any business' in the State, so long as the claims in

question 'aris[e] from' that transaction of business." *See Yankees Ent. & Sports Network, LLC v. Hartford Fire Ins. Co.*, 634 F. Supp. 3d 203, 209 (D. Del. 2022), *aff'd* 2023 WL 6291784 (3d Cir. Sept. 27, 2023).

Disney's entirely conclusory allegations that the Thomson Defendants "transact business" (Compl. ¶ 26) in Delaware and have "minimum contacts" with Delaware (*id*. ¶ 25) are insufficient to establish specific jurisdiction. *See, e.g.*, *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 673 (D. Del. 2008) (granting motion to dismiss for lack of personal jurisdiction where "the allegations asserting personal jurisdiction merely recite the Delaware long arm statute"). Disney fails to allege any suit-related contacts connecting its claims against the Thomson Defendants to Delaware—nor can it, as none exist. Shead Decl. ¶¶ 7-12. The Thomson Defendants have not engaged in conduct that could qualify as "transacting business" under the Delaware Long-Arm Statute—such as being registered to do business in Delaware or retaining employees or agents in Delaware. *See Est. of Daher v. LSH Co.*, 2021 WL 184394 at *5 (D. Del. Jan. 19, 2021); Shead Decl. ¶¶ 7-12. Disney does not allege otherwise.

On top of this fatal flaw, Disney also fails to identify *any* nexus between the alleged anticompetitive conduct (i.e., the "patent-transfer scheme") and the Thomson Defendants' (non-existent) contacts with Delaware. Nor can Disney impute InterDigital's Delaware contacts to the Thomson Defendants. *See Est. of Daher*, 2021 WL 184394, at *6; *see also Xactus, LLC v. Sike*, 2024 WL 3947319, at *6-7 (Del. Ch. Aug. 27, 2024). The Court should reject Disney's boilerplate allegations as insufficient to establish specific jurisdiction.

### C. This Court's Exercise of Jurisdiction Over the Thomson Defendants Would Violate Due Process Requirements.

This Court's exercise of personal jurisdiction over the Thomson Defendants would "offend traditional notions of fair play and substantial justice" in violation of the Due Process clause of the

U.S. Constitution. *See Int'l Shoe Co.*, 326 U.S. at 316 (citation omitted). Due process requires that the cause of action arise out of the defendant's purposeful contacts with the forum state, such that the defendant "should be reasonably able to anticipate being haled into court in the forum state." *See Provident Nat'l Bank*, 819 F.2d at 437. "Great care and reserve should be exercised" when considering whether the court should exercise personal jurisdiction over foreign entities, such as the Thomson Defendants. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113-15 (1987). In this situation, the Court must undertake "a careful inquiry into the reasonableness of the assertion of jurisdiction" and avoid the exercise of personal jurisdiction over foreign entities where "the serious burdens on an alien defendant [are not] outweighed by minimal interests on the part of the plaintiff or the forum State." *See id.*

As discussed above, Disney fails to allege any suit-related conduct by the Thomson Defendants in Delaware. Requiring the Thomson Defendants to defend themselves in this complex antitrust case in Delaware—thousands of miles away from where they are based and in a forum where they have no contacts or presence—would impose a substantial burden. The "serious burdens" placed on the Thomson Defendants to litigate in Delaware, where they do not regularly transact business or have sufficient minimum contacts, warrants dismissal of the claims against them. *See id.*

### D. The Clayton Act and Rule 4(k) Do Not Provide an Independent Basis for Personal Jurisdiction Over the Thomson Defendants.

Disney's reliance on the nationwide service provisions of the Clayton Act and Rule 4(k) is unavailing. Rule 4(k) provides that serving a summons or filing a waiver of service establishes personal jurisdiction over a foreign defendant so long as "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The Clayton Act, which allows nationwide service of process, permits the Court to exercise personal jurisdiction over a foreign

defendant "on the basis of [its] aggregate contacts with the United States as a whole." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) (citations omitted). As with Rule 4(k), the exercise of personal jurisdiction over the Thomson Defendants under the Clayton Act must be constitutional. *See id.* at 299 ("personal jurisdiction under Section 12 of the Clayton Act is as broad as the limits of due process under the Fifth Amendment"). Disney does not allege that the Thomson Defendants have "aggregate contacts" with the United States as a whole, nor do such contacts exist. *See* Shead Decl. ¶¶ 7-12. Moreover, as discussed *supra*, Section I.C, exercising personal jurisdiction over the Thomson Defendants in Delaware would violate Due Process. Accordingly, neither the Clayton Act nor Rule 4(k) confers personal jurisdiction over the Thomson Defendants.

### E. The Court Should Dismiss the Complaint Without Jurisdictional Discovery.

Jurisdictional discovery is not warranted because Disney's boilerplate allegations fail to "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the Thomson Defendants] and the forum state." *Nespresso*, 263 F. Supp. 3d at 506 (internal quotations and citation omitted).

The Third Circuit has rejected similar conclusory allegations as insufficient to warrant jurisdictional discovery. *See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (unsupported allegations of contacts or doing business in the forum is "clearly frivolous" as jurisdictional support); *see also Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 548 (D. Del. 2012) (denying jurisdictional discovery where plaintiff "presented no evidence indicating that defendant conducts business within Delaware"). "To grant [Disney's] request for a period of jurisdictional discovery under such circumstances would be to allow [Disney] to undertake a fishing expedition based only upon bare allegations, under the guise

of jurisdictional discovery." *Registered Agents*, 880 F. Supp. 2d at 548 (internal quotations and citation omitted). If jurisdictional discovery were permitted based on Disney's boilerplate pleading, then any foreign entity could be forced into costly, burdensome, and invasive jurisdictional discovery based on bare allegations—this would render meaningless any existing due process limitations on jurisdiction over foreign defendants. The Constitution prohibits such a fundamentally unjust outcome and the Court should deny any request for jurisdictional discovery and dismiss the claims against the Thomson Defendants with prejudice.

## II.    The Court Should Dismiss Count II with Prejudice.

Even if Disney could establish personal jurisdiction over the Thomson Defendants, the Court should dismiss Count II for failure to plausibly allege a Section 1 violation of the Sherman Act. To plead such a claim, Disney must allege, among other elements, (1) illegal concerted action by Defendants that (2) produced anticompetitive effects (3) within the relevant product and geographic markets. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010).[5] Disney fails to plausibly allege any of these required elements.

### A. Disney's Allegation of Concerted Action Between InterDigital and the Thomson Defendants Is Implausible and Refuted by the 2018 Agreement.

Disney does not allege any direct evidence of conspiracy, and its claim therefore rests on circumstantial evidence alone. "[W]here a plaintiff fails to plead direct evidence of an agreement and relies instead upon indirect or circumstantial evidence, such evidence must 'plausibly show the existence of an agreement.'" *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 594 (E.D. Pa. 2012) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 226-27 (3d Cir.

---

[5] Because Disney has not alleged conduct that calls for a *per se* analysis, the Court must evaluate Count II under the rule of reason, which requires a "fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) (internal citations omitted).

2011)).  To state a Section 1 claim, Disney must allege "some form of concerted action, . . . in other words, a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 315 (internal quotations and citation omitted).  Disney's "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *See Twombly*, 550 U.S. at 556-57.

The crux of Disney's conspiracy claim is its theory that InterDigital and the Thomson Defendants entered into an alleged "patent-transfer scheme" in order to "evade" alleged RAND commitments.  Compl. ¶¶ 55, 94.  But what Disney flamboyantly characterizes as a "patent-transfer scheme" is actually just a perfectly lawful patent purchase agreement.  Disney's allegation that InterDigital acquired the patents "for the purpose of coordinating to increase the total royalties obtained from licensing those patents" (*id*. ¶ 91) is implausible based on the plain terms of the 2018 Agreement, which this Court may consider on a motion to dismiss, and which explicitly state that InterDigital acquired the patents "subject to" all existing RAND commitments.  *See* Ex. A; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.  This requirement is consistent with well-settled law that RAND commitments travel with the patent, further undermining the plausibility of Disney's allegations.  *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) ("an assignee takes a patent subject to the legal encumbrances thereon").  The 2018 Agreement thus directly forecloses Disney's allegation that the Thomson Defendants "knew, intended, and agreed with InterDigital" that InterDigital would seek non-RAND royalties for the patents at issue.  Compl. ¶ 92.  Absent any plausible agreement between the Thomson Defendants and InterDigital to "evade" the alleged RAND commitments, Disney's conspiracy claim cannot stand.

Even if the alleged scheme to "evade" RAND commitments were plausible (and it is not, for the reasons discussed above), Disney's pleading still fails because it does not allege facts which "tend to rule out the possibility that the defendants were acting independently." *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 321. "Unilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2018 WL 11426956, at *8 (D. Del. Feb. 28, 2018) (citation omitted). Disney fails to plausibly allege a "meeting of the minds" between the Thomson Defendants and InterDigital—specifically, that the Thomson Defendants transferred the video-coding patents intending that InterDigital would (years later) allegedly seek non-RAND royalties from its licensees. Disney's only specific allegations concerning the Thomson Defendants' involvement in the purported conspiracy are that they (1) sold the video-coding patents to InterDigital in 2018; (2) received $150 million in cash plus an entitlement to a percentage of future licensing revenue; and (3) sold their Research & Innovation organization to InterDigital in June 2019. Compl. ¶¶ 55-58. From these alleged facts, Disney leaps to the conclusion that the Thomson Defendants "knew, intended, and agreed" that InterDigital would "demand non-RAND royalties from implementers of the Compression Standards and threaten to enjoin implementers' services and products to increase its leverage in licensing negotiations." *Id*. ¶ 92. But Disney alleges *no facts* showing that the Thomson Defendants were involved in—or even aware of—the negotiations between InterDigital and Disney (or any other potential licensees). Accordingly, "to the extent [InterDigital]'s demand for a reasonable royalty allegedly results in a supra-FRAND rate from [Disney], this cannot constitute anticompetitive activity under Section 1 because it is, at most, unilateral action on the part of [InterDigital]." *See Godo*, 2018 WL 11426956, at *8. Disney's

implausible and conclusory allegations against the Thomson Defendants require dismissal of Count II with prejudice.

### B. Disney Fails to Plausibly Allege That the Thomson Defendants' Conduct Produced Anticompetitive Effects.

Disney "bears an initial burden under the rule of reason of showing that the alleged combination or agreement produced adverse, anti-competitive effects within the relevant product and geographic markets." *United States v. Brown Univ.*, 5 F.3d 658, 668 (3d Cir. 1993). As the DOJ remarked, Disney fails to allege "any joint conduct that might have restrained competition" as it is required to plead a Section 1 claim under the rule of reason. *See* D.I. 28 at 14 n.15. "An injury to competition within an industry may be proven by an appreciable reduction in the number of competitors or by some other outward sign of adverse effects on competitive conditions." *MHB Distribs., Inc. v. Parker Hannifin Corp.*, 800 F. Supp. 1265, 1271 (E.D. Pa. 1992). Anticompetitive effects can also be established through proof of the defendants' market power within the relevant market. *See Am. Express Co.*, 585 U.S. at 542.

"[U]nder the law of the Third Circuit, plaintiff must show an anticompetitive effect beyond injury to their particular business." *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1462 (E.D. Pa. 1992). The alleged joint conduct here—a "patent-transfer scheme" to "evade" RAND commitments and extract supra-RAND royalties *after* the standards-development process—does not constitute cognizable anticompetitive conduct under the antitrust laws. *See* D.I. 28 at 14 n.15 (collecting various examples of alleged joint conduct found to restrain competition in the standards-development process, such as manipulating the process to thwart a new rival or deciding which products, from which competitors, would be sold in the market.). As the DOJ correctly recognized, Disney's allegations "fail to establish harm to competition as they are aimed at conduct that occurred after the competitive period of standard adoption" specifically,

15

"InterDigital's allegedly supra-RAND licensing demands" to Disney. *Id.* at 13. Disney's alleged harm to its own business does not constitute "harm to competition" and cannot serve as a basis to invoke the federal antitrust laws.

Disney also fails to plausibly allege that Defendants exercised market power within the alleged Relevant Technology Market. Disney alleges that InterDigital possesses "market power over technology essential to implementing the Compression Standards." Compl. ¶ 65. At the same time, Disney alleges that the video-coding patents at issue are subject to RAND commitments, which "ensure[] that patent holders do not 'hold up' implementers after standardization by refusing to license such patents at all, or by insisting on a non-RAND or supra-RAND royalty." *Id.* ¶ 6. As alleged—and as the DOJ has also argued in its statement of interest— the purported RAND commitments thus inherently "limit InterDigital's ability to exercise market power." *See* D.I. 28 at 11-12.

### C. Disney Fails to Allege a Relevant Product Market.

Under the rule of reason, Disney has the "burden of defining the relevant market." *Queen City Pizza v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *Am. Express Co.*, 585 U.S. at 542-43 ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, . . . the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc.*, 124 F.3d at 436. Disney has failed to plead a valid relevant market in terms of reasonable interchangeability.[6] Disney's proposed product market includes "technologies covered by the

---

[6] Disney has also failed to allege that the AVC and HEVC compression methods are not interchangeable with other compression methods *excluded* from the proposed market. *See Queen City Pizza, Inc.*, 124 F.3d at 436.

Thomson and/or InterDigital codec patents issued in the United States and elsewhere that are essential, or are alleged to be essential, to the 'Compression Standards,' together with all other alternative technologies to the Thomson and/or InterDigital patents that could have been used in the Compression Standards and accompanying releases." Compl. ¶ 75. Disney's proposed market improperly combines two distinct Compression Standards—H.264 (Advanced Video Coding) and H.265 (High Efficiency Video Coding)—without alleging interchangeability. *Id.* ¶¶ 35, 75. Moreover, Disney's own allegations, accepted as true, suggest that the Compression Standards are *not* interchangeable: H.264 is "the predominant, and therefore the most compatible, video-coding standard in current use for streaming services," and by contrast, H.265 is used "to encode ultra-high-definition content." *Id.* ¶¶ 36, 37. In the absence of a properly-defined market, Count II fails as a matter of law.

### III.    Count III Should Be Dismissed Against the Thomson Defendants With Prejudice.

Disney's "naked assertions devoid of further factual enhancement" are insufficient to state a RAND-encumbrance claim against the Thomson Defendants and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Count III of the Complaint, which Disney brings against all Defendants, seeks a judicial declaration that certain unidentified patents owned by InterDigital are RAND-encumbered. Disney describes the allegedly RAND-encumbered patents as "encoding patents" without any further details. Compl. ¶ 107. As Disney alleges, InterDigital acquired the portfolio of patents and applications owned by Thomson Licensing SAS, Technicolor SA's patent licensing business. *Id.* ¶¶ 56, 57. When the deal closed in 2018, InterDigital announced that it had acquired approximately 18,000 patents and applications from Thomson Licensing SAS. *Id.* ¶ 57. Of the 18,000 patents and applications acquired, 3,000 were related to worldwide video coding patents and applications. *Id.* ¶ 57.

Disney has no cognizable claim for declaratory relief against the Thomson Defendants. *See id.* ¶ 107. An essential element for a declaratory judgment action is the existence of a "substantial controversy" between the parties. *MedImmune*, 549 U.S. at 127. Disney fails to allege any "substantial controversy" with the Thomson Defendants regarding whether the video-coding patents are RAND encumbered. Nor can it, as Disney's RAND-encumbrance dispute is exclusively with InterDigital, the owner of the patents at issue. Disney does not allege that the Thomson Defendants have any ownership, control, or liability with respect to the alleged patents. Once InterDigital acquired the alleged patents at issue, it was bound by all RAND-encumbrances that would have traveled with the patents under the terms of the 2018 Agreement (*see supra*, Section II.A), and by law. *See Datatreasury Corp.*, 522 F.3d at 1372 (acknowledging that it is well-established that "an assignee takes a patent subject to the legal encumbrances thereon); *see also In re Innovatio IP Ventures*, *LLC Patent Litig.*, 956 F. Supp. 2d 925, 929-33 (N.D. Ill. 2013) (finding that prior patent owner's RAND commitments were binding on the current patent owner).

The Court need not answer the question of *whether* the patents are RAND encumbered to dismiss Count III against the Thomson Defendants. Even if the "encoding patents" (whichever those are) were found to be RAND encumbered, Disney does not allege that the Thomson Defendants own the patents or are involved in or parties to any licensing agreement that has or may occur. On this basis alone, Count III should be dismissed as to the Thomson Defendants.

Finally, this Court should deny any request by Disney to amend Count III. "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). There is no basis as a matter of law for Disney's RAND-encumbrance claim to continue against the

Thomson Defendants, who do not own the patents at issue, and therefore Count III should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants Thomson Licensing SAS and Technicolor SA respectfully request that this Court dismiss Disney's Complaint against them with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

|  |  |
|---|---|
| | */s/ Nathan R. Hoeschen* |
| | Karen E. Keller (No. 4489) |
| | Nathan R. Hoeschen (No. 6232) |
| | Emily S. DiBenedetto (No. 6779) |
| | Virginia K. Lynch (No. 7423) |
| OF COUNSEL: | SHAW KELLER LLP |
| Brett Schuman | I.M. Pei Building |
| GOODWIN PROCTER LLP | 1105 North Market Street, 12th Floor |
| 525 Market Street, 32nd Floor | Wilmington, DE 19801 |
| San Francisco, CA 94105 | (302) 298-0700 |
| (415) 733-6000 | kkeller@shawkeller.com |
| | nhoeschen@shawkeller.com |
| David D. Cross | edibenedetto@shawkeller.com |
| Alexandra I. Russell | glynch@shawkeller.com |
| Jacqueline Genovese Bova | *Attorneys for Defendants Thomson Licensing* |
| GOODWIN PROCTER LLP | *SAS and Technicolor SA* |
| 1900 N Street NW | |
| Washington, DC 20036 | |
| (202) 346-4000 | |

Dated: October 31, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2025, this document was served on the persons listed

below in the manner indicated:

**<u>BY EMAIL</u>**

Rodger D. Smith
Cameron P. Clark
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
(302) 658-9200
rsmith@morrisnichols.com
cclark@morrisnichols.com

Shawnna Yashar
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
(202) 383-5300
syashar@omm.com
bquinn@omm.com

Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
(415) 984-8700
mtubach@omm.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendants Thomson Licensing SAS*
*and Technicolor SA*