**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| Disney Enterprises, Inc., <br><br> *Plaintiff*, <br><br> v. <br><br> InterDigital Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, InterDigital CE Patent Holdings, SAS, VID SCALE, Inc., VID SCALE Patents, LLC, Thomson Licensing SAS, and Technicolor SA <br><br> *Defendants*. | C.A. No. 1:25-cv-00996-MN |

**DISNEY ENTERPRISES, INC.'S ANSWERING BRIEF IN OPPOSITION TO
<u>DEFENDANT INTERDIGITAL'S MOTION TO DISMISS</u>**

Of Counsel:

O'MELVENY & MYERS LLP
Shawnna Yashar
Brian P. Quinn
1625 Eye Street, N.W.
Washington, DC 20006
(202) 383-5300

O'MELVENY & MYERS LLP
Michael F. Tubach
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
(415) 984-8700

November 21, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff
Disney Enterprises, Inc.*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................1

COUNTERSTATEMENT OF FACTS.......................................................................3

LEGAL STANDARD ...............................................................................................5

ARGUMENT ...........................................................................................................6

I.      Disney plausibly alleges an injury in fact ...........................................6

      A.      Nearly identical injuries suffced in *Microsoft Mobile* ..............6

      B.      This case is ripe, and Disney alleges concrete harm................7

      C.      The *Noerr-Pennington* Doctrine does not shield InterDigital from liability or deprive Disney of Article III standing .....................8

      D.      The law does not require Disney to concede infringement to bring its claims.......................................................................10

II.     Disney adequately pleads the Relevant Technology Markets ............10

III.    Disney plausibly alleges a *Broadcom* claim .....................................12

IV.     Disney's Section 1 claim is timely....................................................13

V.      Disney plausibly pleads a Section 1 claim.........................................14

VI.     The first-filed rule does not compel the Court to dismiss or stay Count III ........16

VII.    The Court should deny InterDigital's request to stay this case .........17

      A.      A stay will not simplify the issues for trial .............................18

      B.      A stay will not further judicial efficiency ................................19

      C.      A stay will unduly prejudice and tactically disadvantage Disney ...........20

CONCLUSION .......................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10x Genomics, Inc. v. Vizgen, Inc.*,
    681 F. Supp. 3d 252 (D. Del. 2023) .................................................................. 9

*Apple, Inc. v. Motorola Mobility, Inc.*,
    2011 WL 7324582 (W.D. Wis. 2011) ............................................................... 8

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
    2025 WL 1005762 (D. Del. 2025) .................................................................. 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 5

*Bethel v. Jendoco Constr. Corp.*,
    570 F.2d 1168 (3d Cir. 1978) ........................................................................ 13

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ......................................................... 1, 2, 12, 13

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) .......................................................................... 14

*Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
    2020 WL 3470473 (D. Del. 2020) ............................................................ 18, 19

*Church of Universal Bhd. v. Farmington Twp. Supervisors*,
    296 F. App'x 285 (3d Cir. 2008) ..................................................................... 5

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................ 8

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962) ...................................................................................... 16

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
    2024 WL 639991 (D. Del. 2024) ................................................................... 20

*E.E.O.C. v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988) .......................................................................... 16

*Fuisz Pharma LLC v. Theranos, Inc.*,
    2012 WL 1820642 (D. Del. 2012) ................................................................. 17

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
  2018 WL 11426956 (D. Del. 2018) ........................................................................ 5

*Gotha v. United States*,
  115 F.3d 176 (3d Cir. 1997) ................................................................................... 5

*Grider v. Keystone Health Plan Cent., Inc.*,
  500 F.3d 322 (3d Cir. 2007) ................................................................................. 16

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................................... 9

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
  998 F.2d 1144 (3d Cir.1993) ........................................................................ 13, 14

*In re Twitter, Inc. S'holder Derivative Litig.*,
  2018 WL 3536085 (D. Del. 2018) ....................................................................... 18

*Lenovo (U.S.) Inc. v. Interdigital Tech. Corp.*,
  2021 WL 1123101 (D. Del. 2021) ................................................................. passim

*LG Elecs., Inc. v. ASKO Appliances, Inc.*,
  2010 WL 1377255 (D. Del. 2010) ....................................................................... 10

*Microsoft Mobile Inc. v. InterDigital, Inc.*,
  2016 WL 1464545 (D. Del. 2016) ................................................................. passim

*Nokia Corp. v. Qualcomm, Inc.*,
  2006 WL 2521328 (D. Del. 2006) ......................................................................... 8

*Nokia Techs. OY v. HP, Inc.*,
  2024 WL 1885683 (D. Del. 2024) ....................................................................... 10

*Peachlum v. City of York, Pa.*,
  333 F.3d 429 (3d Cir. 2003) ................................................................................. 8

*Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*,
  886 F.3d 332 (3d Cir. 2018) ................................................................................. 7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997) ............................................................................... 10

*Regeneron Pharms., Inc. v. Amgen Inc.*,
  2023 WL 1927544 (D. Del. 2023) ....................................................................... 20

*Smith v. S.E.C.*,
  129 F.3d 356 (6th Cir. 1997) ......................................................................... 16, 17

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*TGL Golf Holdings, LLC v. La Golf Partners, LLC*,
  2025 WL 1638353 (D. Del. 2025) ........................................................... 16

*Toshiba Samsung Storage Technology Korea Corp. v. LG Electronics, Inc.*,
  193 F. Supp. 3d 345 (D. Del. 2016) ......................................................... 19

*Umland v. Planco Fin. Servs., Inc.*,
  542 F.3d 59 (3d Cir. 2008) ..................................................................... 5

*Vizio, Inc. v. Funai Elec. Co.*,
  2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ...................................... 14, 15

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) ..................................................................... 14

*Yeransian v. Markel Corp.*,
  2021 WL 979604 (D. Del. 2021) ............................................................. 6

**Other Authorities**

Herbert Hovenkamp et al., IP and Antitrust: An Analysis of Antitrust Principles
  Applied to Intellectual Property Law § 35.05 (3d ed. Supp. 2024) ................ 9

**Rules**

Fed. R. Civ. P. 8(c) ...................................................................................... 13

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Disney Enterprises, Inc. ("Disney") filed this action against Defendants InterDigital, Inc.; InterDigital VC Holdings, Inc.; InterDigital Madison Patent Holdings, SAS; InterDigital CE Patent Holdings, SAS; VID SCALE, Inc.; VID SCALE Patents, LLC (collectively, "InterDigital"), Thomson Licensing SAS and Technicolor SA (together, "Thomson," and collectively, "Defendants") on August 8, 2025, seeking damages and injunctive relief under Sections 4 and 16 of the Clayton Act and Sections 1 and 2 of the Sherman Act and declaratory relief. D.I. 1 ("Comp."). On September 30, 2025, InterDigital moved to dismiss or stay the claims. D.I. 24 ("Mot."). On October 31, 2025, Thomson moved to dismiss the claims. D.I. 31. Disney opposes both motions.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Disney brought this case to stop a scheme by InterDigital to monopolize markets for video-codec technology, which has been years in the making and is now coming to fruition. InterDigital laid the trap by lying to a standard-setting organization ("SSO"), repeatedly, to get it to adopt standards that would require a license to InterDigital's patents. Having succeeded, InterDigital then reneged on its promises to the SSO and embarked on a worldwide campaign demanding royalties from streaming providers, including Disney, that bear no relation to the "reasonable and non-discriminatory" ("RAND") terms InterDigital promised to offer. These extortionate demands threaten to foist higher costs and reduced quality on millions of consumers. Now, InterDigital seeks this Court's help in concluding its scheme, either by dismissing this case or staying it, presumably for years, in favor of litigation InterDigital has filed around the world for the purpose of forcing the streaming industry to capitulate.

The standardization process that InterDigital chose to build this scheme around was never supposed to work this way. As the Third Circuit explained in *Broadcom Corp. v. Qualcomm Inc.*,

1

501 F.3d 297 (3d Cir. 2007), most SSOs "require firms supplying essential technologies for inclusion in a prospective standard to commit to licensing their technologies on FRAND terms," precisely because "adoption of the standard eliminates alternatives to the [selected] technology" and confers immense leverage. *Id.* at 314. It's a fair deal for patent owners and implementers, unless a patent owner makes a RAND promise with no intention of keeping it, persuades the SSO to adopt its technology, and later excludes any implementer that refuses to capitulate to non-RAND terms. *Id.* In that scenario, the Sherman Act plays an essential role in preventing injuries to the competitive process created by such deceptive conduct. *Id.* And that is exactly what Disney's Complaint alleges in detail.

Time and again, courts in this District have rejected arguments that would neuter *Broadcom* and immunize patent hold-up. InterDigital's motion seeks to relitigate those issues and use this case as a vehicle to undercut *Broadcom*. But its recycled arguments are still wrong.

*First*, Disney's allegations establish Article III standing, and courts in this District have already rejected InterDigital's arguments to the contrary. In *Microsoft Mobile Inc. v. InterDigital, Inc.*, 2016 WL 1464545 (D. Del. 2016), the court rejected the *very same* arguments that InterDigital advances here: a party cannot sue until it accepts a non-RAND license, litigation costs are not cognizable injuries, and the *Noerr-Pennington* Doctrine immunizes abusive lawsuits that facilitate a patent hold-up scheme. This case is ripe, no immunity insulates InterDigital, and InterDigital cannot use standing to insulate its scheme.

*Second*, Disney adequately pleads relevant technology markets and a monopolization claim. Disney's pleadings provide the same (and even more) detail than allegations this Court has held sufficient in *Microsoft Mobile* and other cases involving InterDigital, including *Lenovo*

*(U.S.) Inc. v. Interdigital Tech. Corp.*, 2021 WL 1123101, at *5 (D. Del. 2021). InterDigital simply rehashes arguments that courts in this District have already rejected.

*Third*, Disney's Sherman Act Section 1 claim is timely and adequately pleaded. InterDigital never addresses the continuing nature of the antitrust violations that Disney alleges. That omission is baffling, because *Microsoft Mobile* invoked the continuing-violation doctrine to reject the same argument that InterDigital recycles here: that the statute of limitations bars Disney's claims. 2016 WL 1464545, at *4. InterDigital's plausibility arguments fare no better— they ignore relevant case law and the Complaint's allegations about the hold-up conspiracy.

*Fourth*, InterDigital cannot use the first-filed rule to sidestep Disney's declaratory judgment claim. The California case will not resolve all of the issues that this claim presents, nor is there complete overlap between the parties in the two cases.

*Finally*, staying this case in favor of the other cases InterDigital has filed would do little to streamline the issues but much to enable InterDigital's hold-up scheme. A stay would give InterDigital free rein to file yet another wave of lawsuits, seek more injunctions, and inflict staggering costs on Disney, other streamers, and consumers. Only this Court has the ability to bring InterDigital's vast scheme to an end.

The Court should deny InterDigital's motion outright, schedule a case management conference, and order the parties to propose a discovery and trial schedule.

## COUNTERSTATEMENT OF FACTS

The International Telecommunications Union ("ITU"), an SSO, carefully selects technologies for adoption into video codec standards. Comp. ¶¶ 5, 33-35. It adopted Defendants' patented technology into the H.264 and H.265 standards (the "Compression Standards") in lieu of adopting alternatives or declining to standardize. *Id.* ¶¶ 10, 33-35, 40, 54. In so doing, the ITU placed Defendants in a powerful position over the video-streaming market but required them to

license their standard-essential patents ("SEPs") on RAND terms. *Id.* ¶¶ 43-50. The RAND commitment promotes broad dissemination of standardized technologies while curtailing attempts to misuse them to extract exorbitant royalties. *Id.* ¶ 30. Defendants assured the ITU that they would adhere to RAND; the ITU would not have adopted their SEPs otherwise. *Id.* ¶¶ 30, 54, 59, 60.

But InterDigital lied. *Id.* ¶¶ 10-11, 61. It never intended to offer licenses on RAND terms. *Id.* ¶ 61. It knew that the ITU would never standardize its technology (and clear the competitive field) unless it facially committed to RAND. *Id.* ¶ 60. So it (repeatedly) told the ITU what it wanted to hear and then looked to capitalize on its lie. *Id.* ¶¶ 59, 61.

Enter Thomson. After losing over 300 million euros in under two years, Thomson agreed in 2018 to sell InterDigital its licensing business for $150 million. *Id.* ¶¶ 55-57. But Thomson knew that InterDigital intended to renege on its RAND commitments and start a hold-up campaign, and it understood that InterDigital—having acquired Thomson's patents—would enjoy even more leverage to extract supra-RAND royalties. *Id.* ¶¶ 55-56, 61. So Thomson negotiated for a cut—42.5% of all future cash receipts from InterDigital's worldwide operation of a patent-privateering scheme. *Id.* ¶ 57. With skin in the game, Thomson also agreed to send InterDigital key employees to help execute the scheme. *Id.*

When it approached Disney in July 2022, InterDigital was well-equipped to carry out its scheme. *Id.* ¶¶ 62-64. It offered Disney supra-RAND licensing terms. *Id.* ¶ 63. Disney painstakingly negotiated with InterDigital, *id.* ¶¶ 62-63, but InterDigital never intended to offer Disney a RAND license, *id.* ¶ 61. InterDigital broke off negotiations and sued Disney in the Central District of California, Brazil, Germany, and the Unified Patent Court. *Id.* ¶ 71; D.I. 25-2.

InterDigital's hold-up campaign subjects Disney to crushing litigation costs, the threat of market exclusion, and the inability to obtain standard-essential technology. Comp. ¶¶ 84-88. It threatens Disney's streaming market share and compromises its early-mover advantages, worldwide reputation, and customer goodwill. *Id.* And it foists higher prices for streaming services on consumers and denies them the benefits of standardization. *Id.* ¶¶ 89, 96.

## LEGAL STANDARD

Under Rule 12(b)(6), a court accepts factual allegations as true and views them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). The complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] "When addressing antitrust claims, the standard for dismissal is somewhat higher, because summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2018 WL 11426956, at *4 (D. Del. 2018).

The Rule 12(b)(6) standards apply to facial challenges under Rule 12(b)(1)—the court must accept all factual allegations in the complaint as true and consider only the complaint and documents referenced in it. *See Church of Universal Bhd. v. Farmington Twp. Supervisors,* 296 F. App'x 285, 288 (3d Cir. 2008). For factual Rule 12(b)(1) challenges, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

---

[1] Unless otherwise noted, all emphasis is added and internal quotations and citations are omitted.

## ARGUMENT

I.    **Disney plausibly alleges an injury in fact.**

InterDigital raises the same injury arguments that *Microsoft Mobile* rejected. To establish Article III standing, a party "must demonstrate: (1) an injury in fact (an invasion of a legally protected interest that is concrete and particularized and actual or imminent); (2) a causal connection between the defendant's action and the injury (that the injury is fairly traceable to the defendant's alleged unlawful conduct); and (3) redressability (that the injury is likely to be redressed by the relief requested)." *Yeransian v. Markel Corp.*, 2021 WL 979604, at *6 (D. Del. 2021). InterDigital challenges only injury in fact, a requirement that Disney plainly satisfies.

### A.    **Nearly identical injuries sufficed in *Microsoft Mobile*.**

*Microsoft Mobile* refutes InterDigital's argument that Disney failed to adequately plead a concrete injury. Facing a hold-up scheme with the same essential features as pleaded here, Microsoft alleged that InterDigital inflicted litigation costs on it; "prevented [it] from obtaining access to necessary technology in the relevant markets"; threatened it with exclusion from markets; seeded uncertainty as to Microsoft's line of cellular devices, and "threaten[ed] to erode [Microsoft's] customer loyalty, brand recognition, and customer goodwill[.]" 2016 WL 1464545, at *3. Consumers faced "higher prices, reduced innovation, and more limited choice[s]." *Id.*

As it does here, InterDigital argued that Microsoft failed to plead a cognizable injury. *Id.* Specifically, it argued that "[t]he Complaint allege[d] no injury-in-fact to Microsoft from alleged actions of InterDigital[,]" in part because "Microsoft ha[d] steadfastly refused to pay any royalties to InterDigital" and claimed to experience injury in the form of "litigation fees and costs necessary to avoid the payment of supra-competitive licensing terms and exclusion from the marketplace[.]" *See* Decl. of Shawnna M. Yashar, Ex. A at 18-19 ("*MM Brief*"). The court

disagreed and denied InterDigital's motion to dismiss. *Microsoft Mobile*, 2016 WL 1464545, at *3. It held that Microsoft pleaded "sufficient allegations of antitrust injury." *Id.*

Disney's Complaint alleges nearly identical injuries. In addition to the litigation fees it must incur to stave off supra-RAND royalties and market exclusion, Disney plausibly alleges that it faces "higher costs for access to technologies necessary for the streaming of standardized video content"; the threat of "ero[sion] [of] [its] global market share for its streaming services, early-mover advantages including in foreign streaming markets, worldwide reputation, and customer goodwill"; the "threat of injunctions in foreign jurisdictions"; and the loss of customers and potential customers, product image, and goodwill. Comp. ¶¶ 84-88. It also alleges that InterDigital's scheme harms consumers. *Id.* ¶ 93 (InterDigital's conduct "substantially raised prices, restricted output, and resulted in other anticompetitive effects").

Those are "sufficient allegations of antitrust injury" for purposes of a motion to dismiss. *See Microsoft Mobile*, 2016 WL 1464545, at *3; *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018) ("[H]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact[.]"). Few if any victims of a hold-up scheme could ever satisfy InterDigital's contrived Article III standing test—that they must "accept[] a license, pa[y] royalties, or suffer … economic harm from [the violator's] license *proposals*" before seeking relief. Mot. 4. In short, InterDigital wants its victims to capitulate to its demands before seeking relief. But it "is already injuring [victims] by presently demanding supra-FRAND royalties and depriving [them] of access to [essential] technology[.]" *See Lenovo*, 2021 WL 1123101, at *5 (emphasis omitted). Article III requires nothing more.

**B.     This case is ripe, and Disney alleges concrete harm.**

InterDigital's remaining standing arguments deserve short shrift. It claims that Disney's injuries are not ripe, but never specifies which "litigation" or "key overlapping questions" must

come first. Mot. 4. Instead, it invokes the irrelevant proposition that courts favor *administrative* finality. *E.g.*, *Peachlum v. City of York, Pa.*, 333 F.3d 429, 434 (3d Cir. 2003) ("Where a dispute arises under circumstances that permit administrative review, as in the case here, final administrative determination is favored under the ripeness doctrine."). And it ignores decisions holding that "claims based on fair, reasonable and non-discriminatory licensing obligations are not contingent upon the results of patent infringement suits regarding the same patents." *E.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *5-7 (W.D. Wis. 2011) (rejecting argument that FRAND counterclaims are not ripe until patent-infringement disputes are resolved); *cf. Nokia Corp. v. Qualcomm, Inc.*, 2006 WL 2521328, *1-2 (D. Del. 2006).

Similarly, *Microsoft Mobile* rejected InterDigital's argument that Disney's injury is the "kind of speculative harm the Supreme Court has held fails to qualify as a concrete injury-in-fact[.]" Mot. 4-5; *see Microsoft Mobile*, 2016 WL 1464545, at *3. This is not a case in which Disney's injury hinges "on a highly attenuated chain of possibilities," *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or where there is no "real and immediate threat" that InterDigital will carry out its scheme, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Disney faces concrete threats *now*: infringement suits, injunctions, non-RAND offers, and a denial of standard-essential technology. Comp. ¶¶ 64, 71-74, 86-89, 97.

InterDigital's argument that Disney does not face any cognizable threat—as it piles on suit after suit—defies reality. Article III does not require Disney to wait for complete market exclusion or catastrophic losses. *See Apple*, 2011 WL 7324582, at *14.

### C. The *Noerr-Pennington* Doctrine does not shield InterDigital from liability or deprive Disney of Article III standing.

InterDigital says that *Noerr Pennington* protects its patent litigation (even its foreign patent litigation), that "the costs of defending litigation do not themselves constitute an injury-in-

fact[,]" and that there are only two exceptions to that rule that Disney does not satisfy. Mot. 5-6. These are not new arguments—InterDigital presented them in *Microsoft Mobile*. *MM Brief* at 19. And this Court should join *Microsoft Mobile* and others in rejecting them.

The *Microsoft Mobile* court refused to immunize InterDigital. It held that "litigation can be part of an 'anticompetitive scheme' claim" when "the other aspects of the scheme independently produce anticompetitive harms" and "the accused patent litigation [is] causally connected to these anticompetitive harms." 2016 WL 1464545, at *3; *accord Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1086 (N.D. Cal. 2007). InterDigital's "suits to enforce its purported SEPs," it noted, "are part of the way in which [it] accomplishes its alleged anticompetitive scheme[.]" *Microsoft Mobile*, 2016 WL 1464545, at *3; *accord 10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252, 268-69 (D. Del. 2023).

*Microsoft Mobile*'s reasoning is sound. InterDigital's newest scheme extends beyond its global litigation—it falsely promised to license on RAND terms; manipulated the standardization process; refused to honor its RAND commitments, demanded excessive royalties, and bundled its declared SEPs with undeclared patents through portfolio licenses. *E.g.*, Comp. ¶¶ 10-11. These acts "independently produce anticompetitive harms" that are "causally connected" to the litigation. *See Microsoft Mobile*, 2016 WL 1464545, at *3. InterDigital's foreign and domestic suits "are part of the way in which [it] accomplishes its alleged anticompetitive scheme," because "[t]he entire scheme is ineffective without the threat of litigation." *See id.*; *see also* HERBERT HOVENKAMP ET AL., IP AND ANTITRUST: AN ANALYSIS OF ANTITRUST PRINCIPLES APPLIED TO INTELLECTUAL PROPERTY LAW § 35.05 (3d ed. Supp. 2024) ("[A]n antitrust theory based on an overall course of anticompetitive conduct is not subject to *Noerr* merely because

9

filing a lawsuit is one part of that course of conduct."). InterDigital's *Noerr-Pennington* argument was wrong when it raised it in *Microsoft Mobile*, and it is wrong now.

**D.  The law does not require Disney to concede infringement to bring its claims.**

Finally, InterDigital is wrong that Disney's "position in the CA Case [that it does not infringe] eviscerates any theory of standing[.]" Mot. 7. InterDigital cites no case so holding, and this *ipse dixit* would require a hold-up victim to concede infringement as a predicate to bringing a claim. Moreover, the California case concerns only *five* patents; this action challenges InterDigital's conduct with respect to its entire video codec portfolio of approximately 3,000 worldwide patents and applications. Comp. ¶ 57; D.I. 25-2 ¶ 1. "InterDigital's contention that [Disney] should be held to arguably-contradictory assertions it made in other litigations does not provide a meritorious basis to dismiss [Disney's] claims." *See Lenovo*, 2021 WL 1123101, at *8.

**II.  Disney adequately pleads the Relevant Technology Markets.**

InterDigital's argument that Disney did not define relevant technology markets is premature and wrong. While there is no "*per se* prohibition against dismissal of antitrust claims for failure to plead a relevant market," courts recognize "that in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, 2010 WL 1377255, at *4 (D. Del. 2010) ("[C]ourts will not usually define a relevant market on a motion to dismiss.").

InterDigital argues, as it has before unsuccessfully, that Disney needed to allege specific alternative "video encoding options." Mot. 8. But "in the Third Circuit, a plaintiff does not need to identify a specific competing alternative technology to state a claim for violation of Section 2 of the Sherman Act." *Nokia Techs. OY v. HP, Inc.*, 2024 WL 1885683, at *3 (D. Del. 2024). Two courts in this District have sustained market definitions nearly identical to Disney's (in cases

10

involving InterDigital). *Compare* Comp. ¶ 75 (defining "the markets for technologies covered by the Thomson and/or InterDigital codec patents … that are essential, or are alleged to be essential, to the 'Compression Standards,' together with all other alternative technologies to the Thomson and/or InterDigital patents that could have been used in the Compression Standards"), *with Microsoft Mobile*, 2016 WL 1464545, at *2 (sustaining definition of "markets for technologies covered by the InterDigital patents … that are essential, … , together with all other alternative technologies to the InterDigital patents that could have been used in the cellular standards"); *and Lenovo*, 2021 WL 1123101, at *8 (sustaining markets for "technologies covered by the [InterDigital] patents issued in the United States that are essential, or are alleged to be essential, to the Cellular Standards, together with all other alternative[s]").

Neither the *Microsoft Mobile* nor the *Lenovo* court required the plaintiffs to identify specific alternative technologies at the pleading stage, rejecting the very same argument that InterDigital reprises here. *See MM Brief* at 8 ("Microsoft refuses to identify any of the 'other alternative technologies' that were not adopted by ETSI as a result of the alleged anticompetitive conduct … as the law requires."). InterDigital never addresses either of these holdings.

InterDigital's fallback argument is even thinner. It accuses Disney of saying nothing about "why the unidentified alternative technologies are not interchangeable" with the relevant ones. Mot. 8. But Disney alleged that "[w]hen the ITU specified InterDigital's and [Thomson's] technologies in the Compression Standards and accompanying releases … the ITU eliminated competition to those technologies," leading "implementers [to] bec[ome] locked in" without recourse to "reasonably interchangeable substitute technologies with InterDigital's SEPs[.]" Comp. ¶ 76; *see also, e.g.*, *id.* ¶¶ 7, 40, 64, 80. This feature of standardized markets is not a secret: "When a patented technology is incorporated in a standard, adoption of the standard

eliminates alternatives to the patented technology." *Broadcom*, 501 F.3d at 314. The Court should follow *Microsoft Mobile* and *Lenovo* in rejecting InterDigital's relevant-markets arguments.

## III.     Disney plausibly alleges a *Broadcom* claim.

InterDigital does not identify any coherent distinction between Disney's *Broadcom* allegations and those that sufficed in *Microsoft Mobility* or *Lenovo*. Instead, InterDigital argues (as it did in *Microsoft Mobility*) that Disney did not adequately plead that (1) InterDigital intended to deceive the ITU and (2) the ITU relied upon false RAND commitments. *Compare* Mot. 10-11 & n.4, *with MM* Brief at 9 ("Nothing in Microsoft's complaint reveal[s] … how ETSI was deceived into adopting any particular standard incorporating any particular patent.").

Disney' Complaint includes multiple declarations that InterDigital or its predecessors-in-interest submitted to the ITU, that "identify when the false FRAND declarations were made, by whom, and for which patents." *See Microsoft Mobile*, 2016 WL 1464545, at *4. The Complaint also specifically describes how the ITU relied on InterDigital's false RAND promises in adopting InterDigital's technologies. *E.g.* Comp. ¶¶ 43-45, 60, 82 (noting, *inter alia*, that the ITU's Intellectual Property Rights ("IPR") Policy precludes it from adopting patent technology if the patent holder is not willing to license on RAND terms). Assessing analogous pleadings, the *Microsoft Mobile* court rejected InterDigital's arguments and held that the complaint and accompanying declarations satisfied Microsoft's pleading obligations. *See* 2016 WL 1464545, at *4. So did the *Lenovo* court. *See* 2021 WL 1123101, at *7.

InterDigital's assertion that "its acquisitions and RAND declarations were public and extensively reported" and that Disney did not allege "fraudulent concealment" is equally unavailing. Mot. 9 n.4. "Fraudulent concealment" is a basis for tolling the statute of limitations, not an element of a *Broadcom* claim. And neither *Microsoft Mobile* nor *Lenovo* hinged on whether the defendant made public RAND commitments. Public RAND promises are a *feature*

of a *Broadcom* scheme. The perpetrator's public promise baits the hook—it makes the SSO and

other participants "less likely to be wary of deception and [to] detect such conduct and take

measures to counteract it until after lock-in has occurred." *See Broadcom*, 501 F.3d at 312.

Experience disproves InterDigital's separate argument—that the Court can expect a

groundswell of meritless antitrust cases should it deny InterDigital's Motion. Mot. 11. The

complaints in *Microsoft Mobile*, *Lenovo*, *and Nokia* did not set off an antitrust Armageddon. The

argument is really a stalking horse for InterDigital to assert that the Third Circuit erred in

*Broadcom*. *See* Mot. 9. But that argument is wrong and irrelevant, as the *Microsoft Mobile* court

held. *See* 2016 WL 1464545, at *2 n.1; *see also Lenovo*, 2021 WL 1123101, at *7 n.3. That

InterDigital is a repeat party to *Broadcom* cases says more about its anticompetitive business

practices than any alleged defect in Third Circuit law.

## IV.     Disney's Section 1 claim is timely.

InterDigital's truncated argument that Disney's Section 1 claim is barred by the Sherman

Act's four-year statute of limitations fails for at least two reasons. *First*, it is premature. The

statute of limitations is an affirmative defense to an action. FED. R. CIV. P. 8(c); *Bethel v. Jendoco

Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). A limitations defense may only be raised on a

Rule 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of

action has not been brought within the statute of limitations." *Bethel*, 570 F.2d at 1174. Here,

nothing "on the face of the [C]omplaint" shows Disney's Section 1 to be untimely. *See id*.

*Second*, regardless of when the limitations period began, InterDigital's repeated refusal to

license on RAND terms constitutes a continuing violation of the Sherman Act. Under the

continuing violation doctrine, an anticompetitive agreement need not occur within the limitations

period. *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1172 (3d Cir.1993). A

new cause of action accrues every time a defendant's anticompetitive act injures the plaintiff. *See*

*id.* at 1172-73 (finding statute of limitations did not run from the earliest impact of a continuing violation of the Sherman Act, as the conspiracy continued into the limitations period); *accord W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106, 108 (3d Cir. 2010).

InterDigital began its hold-up campaign against Disney in 2022, less than four years ago. Comp. ¶ 62. And every time InterDigital refused to license its SEPs to Disney on RAND terms, a new cause of action accrued. *See Microsoft Mobile*, 2016 WL 1464545, at *4 (rejecting InterDigital's argument that the statute of limitations barred Microsoft's claim, and invoking the continuing-violation doctrine to hold that InterDigital "engaged in an ongoing scheme that has resulted in continuing injury"). Even if InterDigital's refusals merely "reaffirm[ed]" its unlawful agreement with Thomson and Technicolor, they constitute continuing antitrust violations. *See W. Penn*, 627 F.3d at 106. The Court should deny the motion to dismiss on this ground.

## V.     Disney plausibly pleads a Section 1 claim.

Disney's Section 1 Count explains how InterDigital's scheme with Thomson produced anticompetitive harm, and challenges more than only "unilateral activity by InterDigital." Mot. 14. A Section 1 case must plead: (1) "the defendant was a party to a contract, combination ... or conspiracy;" and (2) "the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). InterDigital does not contest the first element. And allegations of a scheme between a patent holder and its predecessor-in-interest to circumvent RAND satisfy the second. *See, e.g.*, *Vizio, Inc. v. Funai Elec. Co.*, 2010 WL 7762624, at *6 (C.D. Cal. Feb. 3, 2010).

Consider *Vizio*. Thomson owned certain SEPs, including the '074 patent and the '611 patent. *Id*. at *1. It later sold the '074 patent to Funai, but not the '611 patent. *Id*. at *2. Before selling the '074 patent, Thomson had licensed it as part of a package to Vizio. *Id*. Funai—after it obtained the '074 patent from Thomson—demanded that Vizio pay a duplicative royalty at

supra-RAND rates. *Id*. Vizio sued under Section 1, alleging that Thomson and Funai conspired to circumvent Thomson's RAND commitment and charge excessive rates. *Id*. at *1. The court held that Vizio adequately pleaded harm to competition. *Id*. at *6 ("Thomson and Funai shared a commitment to a common scheme to circumvent Thomson's FRAND commitment to the [relevant SSO] by agreeing that Funai would collect a second royalty[.]").

That analysis applies here. Disney's Section 1 claim does not "rest solely on [InterDigital's] acquisition" of the patents. *See id.* at *6. Rather, the Complaint alleges that InterDigital and Thomson agreed that InterDigital would acquire Thomson's SEPs, renege on its RAND commitments, hold up streaming services for supra-RAND royalties, and share the spoils with Thomson. Comp. ¶ 91. The facts are not even disputed—InterDigital issued a press release acknowledging that it would pay Thomson 42.5% of all future cash receipts from the hold-up campaign. Comp. ¶ 57 & nn.18-19. InterDigital and Thomson "commit[ed] to a common scheme to circumvent [Thomson's] FRAND commitment[s]." *See Vizio*, 2010 WL 7762624, at *6.

InterDigital's parting shot—that the Complaint fails to allege a "causal link" between the scheme and harm to competition—also falls flat. Mot. 13-14. InterDigital deceived the ITU; persuaded it to standardize around its patents; and then entered into an agreement with Thomson to magnify the impact of its deception, exert even more leverage against its victims, and split the spoils. The scheme inflicted unjustified costs and burdens on Disney and other companies that practice the Compression Standards; hindered broader adoption of those Standards; and threatened to manifest in higher prices for consumers. Comp. ¶¶ 11-12, 56, 71-72, 91-92, 96.

Atomizing that scheme or characterizing it as "unilateral" will not solve InterDigital's (or Thomson's) problem. "[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole[,]" and

15

antitrust conspiracy "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). Even InterDigital's demand for supra-RAND royalties cannot be recast as unilateral. Here, unlike in *Godo Kaisha*, Disney alleges that Thomson bargained for and received a continuing stake in InterDigital's hold-up campaign. Comp. ¶ 57.

## VI.    The first-filed rule does not compel the Court to dismiss or stay Count III.

Neither the first-filed rule nor the Declaratory Judgment Act require the Court to dismiss Disney's declaratory judgment claim. "[C]ourts have consistently recognized that the first-filed rule 'is not a rigid or inflexible rule to be mechanically applied[.]'" *TGL Golf Holdings, LLC v. La Golf Partners, LLC*, 2025 WL 1638353, at *3 (D. Del. 2025). "District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988). For the first-filed rule to apply, "the later-filed case must be truly duplicative" of the first-filed case. *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007). A case "must be materially on all fours" with the first-filed case, such that "a determination in one action leaves little or nothing to be determined in the other." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997).

*First*, as InterDigital acknowledges, there is little risk of inconsistent rulings here given the stage of the two cases. Mot. 17. "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *Univ. of Pa.*, 850 F.2d at 971. If there is any substantive overlap between the relevant claims, this Court can ensure consistent rulings.

*Second*, the counterclaims in the California case and the declaratory judgment claim in this action are not "materially on all fours," such that "a determination in [California] will leave little or nothing to be determined" here. *See Smith*, 129 F.3d at 361. The cases involve different

plaintiffs and defendants and different promises and patents. The defendants in the California case assert counterclaims against four InterDigital entities[2] and seek a declaration that InterDigital breached its promises to the ITU by refusing to offer them RAND terms. D.I. 25-3 at 104, ¶ 88. In contrast, Claim III asserts a declaratory-judgment claim against all of the California counterclaim defendants and four additional entities. Comp. ¶¶ 1, 98-107. It seeks a declaration that those Defendants' RAND promises apply to their encoding patents. A finding in California that the counterclaim defendants breached RAND may never reach the encoding question and will say nothing about patents held or promises made by the other entities. Without complete substantive and party overlap, the actions are not "truly duplicative" and a determination in one will not "leave[] little or nothing to be determined in the other." *See Smith*, 129 F.3d at 361.

Yes, the first-filed rule does not always require an exact identity of parties. *Fuisz Pharma LLC v. Theranos, Inc.*, 2012 WL 1820642, at *4 (D. Del. 2012). But "in many cases where courts have used their discretion to decline to follow the first-filed rule, it is because the parties in the first-and-later-filed actions were different," *id.*, as is the case here. Neither the first-filed rule nor the Declaratory Judgment Act warrant staying or dismissing Count III.

## VII.    The Court should deny InterDigital's request to stay this case.

InterDigital's motion for a stay rests on exaggerated overlap and speculation about what other tribunals may decide and when. But staying this case would empower InterDigital to withhold essential technology, file new patent cases, and bend Disney over a barrel. The Court should reject InterDigital's request to be left alone to complete its hold-up scheme.

---

[2] Those entities are InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS. D.I. 25-3 at 84. The counterclaimants are The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., BAMTech, LLC, Hulu, LLC, and ESPN, Inc. *Id.*

"Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Bausch & Lomb Inc. v. SBH Holdings LLC*, 2025 WL 1005762, at *2 (D. Del. 2025). "In considering these factors, courts should be mindful of the consequences of the stay on the non-moving party." *In re Twitter, Inc. S'holder Derivative Litig.*, 2018 WL 3536085, at *2 (D. Del. 2018). None of these factors favor a stay here.

### A.    A stay will not simplify the issues for trial.

InterDigital's central premise—that the California case and foreign proceedings will "simplify" or "moot" Disney's claims—misapprehends the nature and scope of the issues in this action. A stay would not simplify the issues in this case for three main reasons.

*First*, a stay pending the resolution of the California case is entirely unwarranted given the different parties to the actions. While some of the InterDigital entities overlap, Disney, Technicolor, Thomson, VID SCALE Patents, LLC; and VID SCALE, Inc. do not. D.I. 25-2 ¶¶ 5-17. The California and foreign cases will say nothing about Disney's claims against them.

*Second*, in this action, Disney challenges InterDigital's anticompetitive practices with respect to its entire video-codec SEP portfolio. Comp. ¶ 62, 65. Conversely, InterDigital seeks a finding of patent infringement in California as to *five* patents; in Brazil as to *two* patents; and in Europe as to *eight* patents. *See* D.I. 25-2 at ¶ 1; D.I. 25-4 at ¶ 3; D.I. 25-5 at ¶¶ 5, 7. A decision in those cases would have no bearing on whether InterDigital violated the antitrust laws. InterDigital glosses over this discrepancy by citing *Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2020 WL 3470473 (D. Del. 2020). *See* D.I. 24 at 16. But in *Calamos*, the

court held that, "a stay would obviate the need … to determine a novel issue of state law while the *same issue* [wa]s pending before the state court of last resort." *Id.* That will not happen here.

*Toshiba Samsung Storage Technology Korea Corp. v. LG Electronics, Inc.*, 193 F. Supp. 3d 345 (D. Del. 2016), is a closer analogue. Although some claims in *Toshiba* overlapped with a separate Patent Trial and Appeal Board ("PTAB") proceeding, the court declined to grant a stay. *Id.* at 348-49, 353. While the PTAB's decisions could have "drastically alter[ed] (or, at a minimum, at least ha[d] some effect on)" pending claims, the court noted that a PTAB decision that was "totally favorable" to the moving party would still "leave behind a lot to (at least potentially) be litigated." *Id.* at 349. That is the case here. Even assuming that another tribunal makes infringement findings, the broader antitrust elements will need to be resolved.

*Finally*, InterDigital's attempt to import outcomes from foreign proceedings lacks merit. Foreign legal frameworks and competition-law doctrines differ materially from those that apply in U.S. courts. A decision abroad will not resolve U.S. antitrust liability. This Court—not a foreign tribunal—must adjudicate U.S. antitrust issues under Third Circuit standards. There is no basis to halt this action in favor of foreign cases.

### B.    A stay will not further judicial efficiency.

InterDigital contends that this case is "nascent" and discovery will be "voluminous, time-consuming, and expensive." Mot. 17-18. That is a reason to *manage* the case, not stay it. Discovery is ongoing in the California case with trial 9 months away. *Compare Toshiba*, 193 F. Supp. 3d at 351 (denying stay where proceedings would not be resolved for seven months and potentially "two years or more" considering appeals), *with Calamos*, 2020 WL 3470473, at *6 (granting stay where oral argument necessitating stay was less than three months away). Similarly, the foreign cases—by InterDigital's own account—will require multiple hearings and

staged decisions. Mot. 17. Granting a stay risks a significant, open-ended delay that would effectuate InterDigital's scheme and prejudice Disney.

Finally, proceeding with this case would not create waste, because "resolution of the patent infringement issue in [the patent] cases is [not] likely to significantly simplify resolution of the [antitrust] claims." *See DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 2024 WL 639991, at *5 (D. Del. 2024). Disney intends to seek discovery on topics that are not at issue in the other cases, including InterDigital's deception during the standardization process, portfolio-licensing practices, and privateering agreement with Thomson. Judicial economy favors moving forward with discovery, not letting this case languish for years while InterDigital completes it scheme.

### C.    A stay will unduly prejudice and tactically disadvantage Disney.

Although InterDigital minimizes the prejudice to Disney (Mot. 18-19), a stay would exacerbate the leverage InterDigital seeks through serial litigations and injunctions, enhance its ability to extract supra-RAND terms, and postpone judicial scrutiny of its conduct. That is a concrete disadvantage. *See Regeneron Pharms., Inc. v. Amgen Inc.*, 2023 WL 1927544, at *8 (D. Del. 2023) (denying motion to stay antitrust action where "[t]he potential prejudice to [the antitrust plaintiff] by delaying the ultimate resolution of this case [wa]s significant" given its allegation "that it [wa]s being driven out of the market").

InterDigital is wrong that Disney made a "strategic decision to delay months" before filing in this District. Mot. 19. After performing due diligence, Disney promptly brought its antitrust claims in this forum—home to several Defendants. Comp. ¶¶ 16, 17, 20-21. InterDigital chose to sue around the world. It cannot wield those actions to handcuff the forum best positioned to adjudicate the antitrust issues. The Court should deny the motion for a stay.

### CONCLUSION

For the foregoing reasons, the Court should deny InterDigital's motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

OF COUNSEL:

Shawnna Yashar
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
(202) 383-5300

Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA  94111-3823
(415) 984-8700

November 21, 2025

Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 21, 2025, upon the following in the manner indicated:

Brian E. Farnan                                      VIA ELECTRONIC MAIL
Michael J. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

Richard A. Kamprath                                  VIA ELECTRONIC MAIL
MCKOOL SMITH P.C.
300 Crescent Court
Suite 1200
Dallas, TX 75201
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

James Hartmann Smith                                 VIA ELECTRONIC MAIL
MCKOOL SMITH P.C.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

1

Joshua Budwin                                          VIA ELECTRONIC MAIL
MCKOOL SMITH P.C.
303 Colorado Street
Suite 2100
Austin, TX 78701
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

Garrard R. Beeney                                      VIA ELECTRONIC MAIL
Nicolas M. Britton
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

Andrei Iancu                                           VIA ELECTRONIC MAIL
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067-1725
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

Kyle W. Mach                                           VIA ELECTRONIC MAIL
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, CA 94301-2010
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*

Brittany S. Bruns                                    VIA ELECTRONIC MAIL
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006-5215
*Attorney for Defendants InterDigital CE Patent*
*Holdings, SAS, InterDigital Madison Patent*
*Holdings, SAS, InterDigital VC Holdings, Inc.,*
*InterDigital, Inc., VID SCALE Patents, LLC, and*
*VID SCALE, Inc.*


                                            */s/ Rodger D. Smith II*

                                            _____
                                            Rodger D. Smith II (#3778)