# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DISNEY ENTERPRISES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> INTERDIGITAL, INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, INTERDIGITAL CE PATENT HOLDINGS, SAS, VID SCALE, INC., VID SCALE PATENTS, LLC, THOMSON LICENSING SAS, AND TECHNICOLOR SA, <br><br> *Defendants*. | No. 25-cv-996-MN |

## INTERDIGITAL'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

Dated: December 19, 2025

**FARNAN LLP**
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**SULLIVAN & CROMWELL LLP**
Garrard R. Beeney (*pro hac vice*)
Nicolas M. Britton (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 558-4000
beeneyg@sullcrom.com
brittonn@sullcrom.com

Andrei Iancu (*pro hac vice*)
Brittany S. Bruns (*pro hac vice*)
1700 New York Avenue, N.W. Suite 700
Washington, D.C. 20006
(202) 956-7500
iancua@sullcrom.com
brunsb@sullcrom.com

Kyle W. Mach (*pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
(650) 461-5600
machk@sullcrom.com

**MCKOOL SMITH P.C.**
Richard A. Kamprath (*pro hac vice*)
300 Crescent Court, Suite 1200
Dallas, Texas 75201
(214) 978-4000
rkamprath@mckoolsmith.com

Joshua W. Budwin (*pro hac vice*)
303 Colorado Street, Suite 2100
Austin, Texas 78701
(512) 692-8700
jbudwin@mckoolsmith.com

James Hartmann Smith (*pro hac vice*)
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 402-9400
jsmith@mckoolsmith.com

*Attorneys for Defendants InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS, VID SCALE Patents, LLC, and VID SCALE, Inc.*

## **TABLE OF CONTENTS**

Page

ARGUMENT ............................................................................................................................. 1

I.      Disney Asks the Court to Apply a Long-Overturned Standard ........................................... 1

II.     Disney's Claimed Injuries Rely on a Misapplication of *Noerr-Pennington* ....................... 2

III.    Disney Points to No Substance to Support the Critical "Lie." ........................................... 4

IV.    Disney Slays a Strawman on Market Definition ................................................................ 6

V.     Disney's Section 1 Allegations Are Implausible and Time-Barred ..................................... 7

VI.    A Stay Would Streamline the Issues for Trial and Mitigate the Risk of Inconsistent Judgments ....................................................................................................... 9

CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*10x Genomics, Inc.* v. *Vizgen, Inc.*,
 681 F. Supp. 3d 252 (D. Del. 2023) ................................................................................4

*Bell Atl. Corp.* v. *Twombly*,
 550 U.S. 544 (2007) ............................................................................................2, 5, 8

*Bethel* v. *Jendoco Constr. Corp.*,
 570 F.2d 1168 (3d Cir. 1978) ...........................................................................................8

*Broadcom Corp.* v. *Qualcomm Inc.*,
 501 F.3d 297 (3rd Cir. 2007) ....................................................................................4, 5

*Burtch* v. *Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011) .............................................................................................7

*Clapper* v. *Amnesty Int'l USA.*,
 568 U.S. 398 (2013) ........................................................................................................3

*Eagle Pharms., Inc.* v. *Eli Lilly & Co.*,
 2018 WL 6201704 (D. Del. 2018) ...................................................................................9

*Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*,
 504 U.S. 451 (1992) ........................................................................................................2

*FTC* v. *AbbVie, Inc.*,
 976 F.3d 327 (3d Cir. 2020) ............................................................................................4

*Godo Kaisha IP Bridge 1* v. *TCL Commc'n Tech. Holdings Ltd.*,
 2018 WL 11426956 (D. Del. 2018) .......................................................................1, 7, 9

*Howard Hess Dental Lab'ys* v. *Dentsply Int'l*,
 602 F.3d 237 (3d Cir. 2010) ..................................................................................2, 5, 8

*Hynix Semiconductor Inc.* v. *Rambus, Inc.*,
 527 F. Supp. 2d 1084 (N.D. Cal. 2007) ...........................................................................4

*Ideal Dairy Farms, Inc.* v. *John Labatt, Ltd.*,
 90 F.3d 737 (3d Cir. 1996) ..............................................................................................2

*Lenovo (United States) Inc.* v. *InterDigital Tech. Corp.*,
 2021 WL 1123101 (D. Del. Mar. 24, 2021) .................................................................5, 9

*Nokia Techs. OY* v. *HP, Inc.*
    2024 WL 1885683 (D. Del. Apr. 29, 2024) ................................................................. 6

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993) ..................................................................................... 8

*Lujan* v. *Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 2

*Microsoft Mobile Inc.* v. *InterDigital, Inc.*,
    2016 WL 1464545 (D. Del. Apr. 13, 2016) ............................................................... 2

*Poller* v. *Columbia Broad. Sys.*,
    368 U.S. 464 (1962) ................................................................................................... 2

*Rohm & Haas Co.* v. *Brotech Corp.*,
    770 F. Supp. 928 (D. Del. 1991) ............................................................................... 9

*Vizio, Inc.* v. *Funai Electric Co.*
    2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ......................................................... 7, 8

*Voda* v. *Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ................................................................................... 1

*W. Penn Allegheny Health Sys., Inc.* v. *UPMC*,
    627 F.3d 85 (3d Cir. 2010) ........................................................................................ 8

**Statutes**

35 U.S.C. § 281 ................................................................................................................. 1

Hovenkamp, et al., IP and Antitrust: An Analysis of Antitrust Principles Applied
    to Intellectual Property Law § 11.04[F] (3d ed. 2025 Supp.) .................................... 4

**Other Authorities**

Alliance for Open Media, Members, https://aomedia.org/about/members/ (last
    visited Dec. 18, 2025) ................................................................................................ 6

Disney is not a victim. Disney has been using InterDigital's innovations for years, without paying a dime, as it has built a nearly $200 billion dollar media empire. In the face of Disney's pervasive infringement of InterDigital's foundational video technology, the only way for InterDigital to obtain relief is to sue. Seeking such redress in litigation is a right granted by Congress and protected by the First Amendment. 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."). Moreover, as Disney's infringement is on a global scale, InterDigital has been forced to bring litigation in multiple fora. *Voda* v. *Cordis Corp.*, 476 F.3d 887, 899 (Fed. Cir. 2007) (explaining that patent rights are territorial and "our courts should not determine the validity and infringement of foreign patents"). Now, faced with the prospect of having to pay for the technology that it has long enjoyed for free, Disney cries foul. But rather than simply defend itself *in those cases* (including in California where it has made similar claims), Disney crossed the nation to this Court where it hopes that it can plead its way, through conclusory allegations, into an antitrust suit that it seeks to leverage in its patent disputes with InterDigital.

As explained in InterDigital's motion to dismiss, this case should be dismissed, and Disney's hand-waving opposition gives no reason to doubt that result. Disney asks the Court to evaluate the merits of its Complaint under a standard that was overruled decades ago, and then hinges its opposition on the superficial similarity between this case and two non-binding decisions in earlier cases—cases which Disney mimicked in an effort to use bare, unsubstantiated allegations to walk into discovery in an antitrust case. The law requires more.

## ARGUMENT

### I. Disney Asks the Court to Apply a Long-Overturned Standard.

Disney attempts to defend its conclusory pleading of its *Broadcom* claim by incorrectly contending that pre-trial motions in antitrust cases are subject to a "somewhat higher" standard than those in other cases, (D.I. 41, "Opp." at 5), citing *Godo Kaisha IP Bridge 1* v. *TCL Commc'n*

-1-

*Tech. Holdings Ltd.*, 2018 WL 11426956 (D. Del. 2018), which relies on *Poller* v. *Columbia Broad. Sys.*, 368 U.S. 464 (1962)). But the "slightly stricter standard of review when a summary judgment order was challenged in an antitrust case" set forth in *Poller* "was abandoned" over three decades ago in *Eastman Kodak Co.* v. *Image Technical Servs., Inc.*, 504 U.S. 451, 468-69 (1992). *Ideal Dairy Farms, Inc.* v. *John Labatt, Ltd.*, 90 F.3d 737, 747-48 (3d Cir. 1996).

Instead, "the ordinary standard applies." *Id.* at 748. Disney must meet the strict standards laid out in *Twombly*—itself an antitrust case—requiring that a complaint include "enough facts to state a claim to relief that is plausible on its face," and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007). The Court must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (citation omitted); *see also Howard Hess Dental Lab'ys* v. *Dentsply Int'l*, 602 F.3d 237, 258 (3d Cir. 2010) (disregarding allegation of specific intent because "that allegation, in its many iterations, is conclusory. There are no facts behind it, so it does not plausibly suggest" the requisite intent).

**II.     Disney's Claimed Injuries Rely on a Misapplication of *Noerr-Pennington*.**

Article III demands a "concrete and particularized" injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). Disney barely engages with that standard or the cases that have properly applied it. Instead, Disney relies almost entirely on *Microsoft Mobile Inc.* v. *InterDigital, Inc.*, 2016 WL 1464545 (D. Del. Apr. 13, 2016)—a single, non-precedential district court decision that does not displace the Supreme Court's requirement of an *actual* injury-in-fact.

Applying the correct standard, Disney has no present, cognizable injury. The only harm it has suffered is the ordinary cost of defending litigation. Disney nowhere disputes this fact. It also identifies no dollars *already* spent, no customers *already* lost, no business changes *already* made,

-2-

or any present effects on competition. The other harms it invokes—higher costs, foreign injunctions, loss of market share, and being "forced to capitulate" to allegedly non-RAND rates—are framed almost exclusively in the future or conditional future tense. (D.I. 1, "Compl." ¶¶ 84-87.) This is because they are entirely conjectural. Under *Clapper* v. *Amnesty International USA*, such "[a]llegations of *possible* future injury" fail to satisfy Article III. 568 U.S. 398, 409 (2013) (citation omitted). Disney cannot explain how its allegations meet the requirement that harm be "*certainly impending*," *id.*, particularly while the merits of infringement and RAND issues are being actively adjudicated in California and foreign courts.

Disney's reliance on *Microsoft Mobile* cannot fill that gap. That decision did not relax *Lujan* or *Clapper*, and it certainly did not hold that combining litigation costs with speculative future harms is an alchemical recipe for standing. The complaint in *Microsoft Mobile* alleged more than is alleged here—and it alleged commercial distortions in the *present* tense. (*See generally* Ex. A. to the Declaration of Kyle Mach ("Mach Decl.")). Those allegations included, for example, that the defendant created entire licensing entities to "double dip" on royalties (*id.* ¶¶ 6, 62-64, 82), refused to accept tendered payments at its own demanded royalty rate to preserve the leverage of an ITC exclusion threat (*id.* ¶¶ 78, 79), and engaged in sham litigation (*id.* ¶¶ 70-77). Disney does not and cannot allege similar facts here. Disney's attempt to treat *Microsoft Mobile* as a substitute for the Supreme Court's binding legal standard simply underscores that it has no injury that could possibly confer standing.

Litigation costs cannot establish the requisite injury under the *Noerr-Pennington* doctrine, so Disney instead characterizes the infringement litigation as part of a broader "scheme." (Opp. at 8-10.) But federal courts do not recognize an "overall scheme" exception to *Noerr-Pennington*. The Supreme Court has never endorsed this theory; nor has the Third Circuit, which continues to

treat sham litigation and *Walker Process* fraud as the sole exceptions to *Noerr-Pennington*. *See, e.g.*, *FTC* v. *AbbVie, Inc.*, 976 F.3d 327, 346 (3d Cir. 2020). Nor does *Hynix Semiconductor Inc.* v. *Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007) help Disney. *Rambus* acknowledged the absence of controlling authority on whether protected petitioning can be part of an unlawful scheme and, even then, determined that protected petitioning can be considered only *after* an independent antitrust violation established on other grounds produced anticompetitive harms. *See id.* at 1091-97; *see also 10x Genomics, Inc.* v. *Vizgen, Inc.*, 681 F. Supp. 3d 252, 269 (D. Del. 2023) (denying motion to dismiss where Vizgen alleged "independent anticompetitive harms" separate from patent litigation costs). But Disney never identifies any non-litigation injury connected to its "scheme" theory and pleads no facts placing InterDigital's infringement suits within either of *Noerr-Pennington*'s exceptions for "sham litigation" or *Walker Process* fraud. (*See* Opp. at 9.) As the leading treatise explains, protected litigation cannot supply the antitrust violation itself and cannot be used to bootstrap liability through artful "scheme" pleading. Hovenkamp, et al., IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law § 11.04[F] (3d ed. 2025 Supp.) (attached as Mach Decl. Ex. B.). Accepting Disney's view would erase *Noerr-Pennington* entirely: any antitrust plaintiff could defeat immunity simply by invoking a broader "scheme" in conclusory terms. Unsurprisingly, the law does not allow a plaintiff to abrogate a defendant's constitutional rights with such ease.

**III.     Disney Points to No Substance to Support the Critical "Lie."**

The crux of Disney's Section 2 claim is that InterDigital "lied" to the ITU to gain admission into the AVC and HEVC standards. (Opp. at 4.) But this purported lie—an essential element of the *Broadcom* claim, *Broadcom Corp.* v. *Qualcomm Inc.*, 501 F.3d 297, 314 (3rd Cir. 2007)—is pled only in the most conclusory fashion. (See D.I. 28, "DOJ Statement," at 13.) Disney points to other allegations, such as that InterDigital made declarations to the ITU on which the ITU relied

-4-

(Opp. at 12-13), but those do nothing to shore up its threadbare allegation that those declarations were *intentionally false when made*. None of those allegations make it plausible that InterDigital made an "intentionally false promise," as precedent requires. *Broadcom*, 501 F.3d at 314. "At bottom, the Plaintiffs' allegations of specific intent rest not on facts but on conclusory statements strung together with antitrust jargon. It is an axiom of antitrust law, however, that merely saying so does not make it so for pleading-sufficiency purposes." *Dentsply*, 602 F.3d at 258.

Disney's unsupported allegation of a lie distinguishes this case from *Microsoft Mobile* and *Lenovo (United States) Inc.* v. *InterDigital Technology Corp.*, 2021 WL 1123101 (D. Del. Mar. 24, 2021). In those cases, the allegations of duplicity before the standard setting organization had *something* to shore them up. In *Microsoft Mobile*, the plaintiff alleged facts related to a cohesive scheme to mislead the standard setting organization, which included not just allegations of false patent declarations, but also allegations that "InterDigital appropriated to its own name technologies proposed by other parties and made known to InterDigital's employees in the course of technology discussions at ETSI." (Mach Decl. Ex. A ¶ 47.) Similarly, in *Lenovo*, the plaintiff additionally alleged facts related to a scheme, including that the defendant "declar[ed] thousands of its patents as essential to the Cellular Standards without regard to whether those patents are actually—or reasonably may become—essential[.]" (Mach Decl. Ex. C ¶ 10.) Setting aside the sufficiency of those allegations, in this case, Disney makes no similarly specific non-conclusory allegations of duplicity in InterDigital's behavior before the ITU or in developing its patent portfolio. Simply saying "InterDigital lied" is not enough. *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions, and a formulaic recitation of the elements").[1]

---

[1] Disney argues that there will be no groundswell of meritless antitrust cases should this Court deny InterDigital's Motion (Opp. at 13) but ignores that *this case* is indicative of the ills of relaxing the pleading standard for *Broadcom*-type claims. Disney's allegation of a lie—without any

### IV. Disney Slays a Strawman on Market Definition.

Disney ignores InterDigital's argument on market definition: that Disney must consider the existence of alternative *compression methods* other than AVC and HEVC and feature the relevant facts in the Complaint. (D.I. 24 at 7-8; *see also* D.I. 28, "DOJ Statement" at 11.) Sidestepping this argument, Disney instead addresses a strawman argument about alternative technologies the ITU may have been considered for inclusion in the AVC or HEVC standards. (Opp. at 10-12.) The three cases cited by Disney are similarly misplaced. The first, *Nokia Technologies OY* v. *HP, Inc.*, concluded that the market definition in that case was legally insufficient and dismissed the Section 2 counterclaim. 2024 WL 1885683, at *4 (D. Del. Apr. 29, 2024). The other two cases relied on by Disney—*Microsoft Mobile* and *Lenovo*, which feature market definitions that Disney copied almost verbatim in this case—are silent as to InterDigital's argument that a market definition that arbitrarily includes two codecs and excludes others is insufficient.

Disney provides a gerrymandered market definition that arbitrarily includes two video compression standards with no explanation of its exclusion of other codecs, including those Disney itself promotes.[2] To survive a motion to dismiss, Disney must provide some factual support for its market definition beyond just copying that definition from other cases. Absent an appropriate market definition, Disney cannot, and does not, adequately allege that InterDigital has the requisite market power to sustain either of its antitrust claims. (DOJ Statement at

---

pleaded factual support—is simply a regurgitation of that element under *Broadcom*. Allowing such a conclusory allegation to satisfy *Broadcom* would permit a relaxed standard applicable only to *Broadcom* claims.

[2] For example, Disney is a "promoter member" of the Alliance for Open Media ("AOM") and contributed to AOM's AV1 video codec. Alliance for Open Media, Members, https://aomedia.org/about/members/ (last visited Dec. 18, 2025) (attached as Mach Decl. Ex. D).

V.      **Disney's Section 1 Allegations Are Implausible and Time-Barred.**

In its opposition, Disney repeats its speculative allegations that InterDigital's acquisitions in 2018 and 2019 were an unlawful agreement that harmed competition and increased royalty rates. (Opp. at 14-16.)  Disney's Section 1 claim remains impermissibly conclusory and time-barred.

*First*, Disney still fails to plead a plausible Section 1 conspiracy.  At this stage, Disney "bears the initial burden of showing that the alleged [agreement] produced an adverse, anticompetitive effect within the relevant [] market."  *Burtch* v. *Milberg Factors, Inc.*, 662 F.3d 212, 222 (3d Cir. 2011) (citations omitted).  But nowhere does Disney allege how the acquisitions were a concerted action that resulted in anticompetitive harm.  By Disney's own anemic allegations, any purported harm arose during license negotiations beginning in 2022 (Opp. at 15; Compl. ¶¶ 11, 12, 71-72, 96), not from a lawful patent transfer that occurred years prior.

Disney's reliance on *Vizio, Inc.* v. *Funai Electric Co.* is misplaced.  2010 WL 7762624 (C.D. Cal. Feb. 3, 2010).  There, a patent transfer separated two previously commonly owned patents, enabling defendants to charge a second "duplicative" royalty and price fix, per plaintiff. *Id.* at *2, *6.  In contrast, InterDigital acquired Thomson's patents, combining two previously separate portfolios—the opposite of the conduct alleged to be anticompetitive in *Vizio*.  (Compl. ¶¶ 57, 94.)  *Vizio* itself explains that "the transfer of a valid patent 'has no antitrust significance,' but 'merely shifts a lawful monopoly into different hands.'"  *Id.* at *4 (citation omitted).  *Godo Kaisha* from within this circuit remains much more instructive.  2018 WL 11426956.[3]  There, the plaintiff alleged that a patent transfer and the transferee's subsequent refusal to negotiate a RAND license rate amounted to a Section 1 conspiracy.  *Id.* at *8.  The Court rejected that theory as a

---

[3] As mentioned *supra* at 2, the *Godo Kaisha* court applied an incorrect standard for dismissal in antitrust cases.  However, given the *Godo Kaisha* court held in favor of defendants even under an incorrect relaxed pleading standard, *Godo Kaisha* remains relevant on other points.

"conclusory allegation [that] does not support the inference that [transferor] and [transferee] agreed to seek supra-FRAND royalties in this action" and determined any conduct by transferee was "at most, unilateral." *Id.* The Court should do so here as well.

Further, Disney's hope for distinction by pointing to the "continuing stake" Thomson retained as part of the patent transfer falls flat. (Opp. at 15-16.) Disney fails to allege how that continuing stake would permit the charging of a duplicative royalty or otherwise lead to any anticompetitive harm. A mere allegation of shared economic interests is insufficient to assert a Section 1 conspiracy. *See Twombly*, 550 U.S at 553-54; *see also Dentsply*, 602 F.3d at 255, 258 (holding mere allegations of being "economically motivated" and the "sign[ing] of a bilateral dealing agreement" insufficient to support a Section 1 conspiracy).

*Second*, Disney's Section 1 claim remains time-barred. At the outset, it is not premature for InterDigital to raise the statute of limitations because Disney's untimeliness is indeed apparent "on the face of the [C]omplaint." *Bethel* v. *Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Disney alleges that InterDigital agreed "to transfer Thomson's and Technicolor's patents to InterDigital" in 2018 and 2019. (Compl. ¶¶ 57-58, 93.) Therefore, according to Disney, when InterDigital acquired the patents (i.e., July 2018) is the *latest* that the alleged conspiracy began, and it is well outside the four-year limitations period.

The continuing violation doctrine does not help Disney. Disney identifies no conduct that could plausibly support the creation of a Section 1 conspiracy. No amount of reaffirming could revive a non-existent conspiracy. Disney's own authorities confirm the point: in *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1171-73 (3d Cir. 1993) and *W. Penn Allegheny Health System, Inc.* v. *UPMC*, 627 F.3d 85, 106-08 (3d Cir. 2010), plaintiffs alleged coordinated, exclusionary acts that created a Section 1 conspiracy and alleged that the conspiracies then

persisted by overt acts furthering the unlawful agreements that took place within four years of plaintiffs initiating each lawsuit. Here, the only conduct alleged by Disney involving InterDigital, Thomson, and Technicolor consists of lawful acquisitions and patent transfers—not an initial conspiracy capable of being continued. The only alleged later conduct is InterDigital's unilateral licensing activity, which, being unilateral, cannot continue the alleged conspiracy, even if there had been one. *See Godo Kaisha*, 2018 WL 11426956 at *8. Disney's reliance on *Microsoft Mobile* is also misplaced because that case involved no Section 1 claim.

### VI. A Stay Would Streamline the Issues for Trial and Mitigate the Risk of Inconsistent Judgments.

Cases in this district, including a case heavily relied on by Disney elsewhere in its opposition, have held that Section 2 claims like those brought by Disney "arise[] out of the same facts and occurrences as the patent infringement claims filed by InterDigital in the earlier action" and that "the two actions are logically related, and have evidentiary overlap." *Lenovo*, 2021 WL 1123101, at *9. This is the case even where the antitrust suit involves additional parties and patents beyond those involved in the patent suit. *See Rohm & Haas Co.* v. *Brotech Corp.*, 770 F. Supp. 928, 933 (D. Del. 1991) ("[L]ater filed antitrust and fraud claims alleging fraud on the PTO, are logically related to the patent claims at issue in the earlier filed suit" and should have been brought as compulsory counterclaims, a conclusion that is not "undermined by the fact that the [antitrust] action involves six additional . . . patents and several additional parties."). For these reasons, it is "common practice" to stay "an antitrust case until after resolution of a related patent case." *Eagle Pharms., Inc.* v. *Eli Lilly & Co.*, 2018 WL 6201704, at *2 n.3 (D. Del. 2018).

Disney argues there is no overlap between its allegations in this case and the issues it has injected into the infringement cases. But even a cursory reading of Disney's Complaint here and its answer in the CA case shows obvious overlap. In both cases, Disney alleges:

-9-

- InterDigital refused to offer RAND licenses (Compl. ¶¶ 11, 62; CA Answer (attached as Mach Decl. Ex. E) ¶¶2, 56);

- InterDigital engaged in a hold-up scheme through global litigation (Compl. ¶¶ 7, 9, 12, 64-74; Mach Decl. Ex. E ¶¶ 2, 58);

- InterDigital manipulated the standard setting process by making false promises to the ITU (Compl. ¶¶ 10-12, 31, 33-40, 51-61; Mach Decl. Ex. E ¶¶ 41-55);

- InterDigital seeks royalties on already licensed devices (Compl. ¶ 65; Mach Decl. Ex. E ¶¶ 139-168);

- InterDigital's encoding claims are standard essential (Compl. ¶¶ 71-74, 50-52; Mach Decl. Ex. E ¶¶ 49-55, 58); and

- harm from the threat of injunctions (Compl. ¶¶ 86-88; Mach Decl. Ex. E ¶¶ 65-75, 80-81).

The California court's adjudication of any of these issues, *pleaded by Disney* in that case, would simplify this case. The risk of inconsistent judgments is similarly high—if a district court in California decides that InterDigital's encoding patents are standard essential and a district court in Delaware decides that they are not, it leaves the parties further from resolution of their dispute, not closer. A stay would preserve judicial resources and provide an orderly path to resolution.

## CONCLUSION

For the foregoing reasons, InterDigital respectfully requests dismissal of each of Disney's claims. In the alternative, InterDigital respectfully requests a stay of any surviving claim pending resolution of the CA Case and the Foreign Cases.

Dated: December 19, 2025

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

SULLIVAN & CROMWELL LLP
Garrard R. Beeney (*pro hac vice*)
Nicolas M. Britton (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 558-4000
beeneyg@sullcrom.com
brittonn@sullcrom.com

Andrei Iancu (*pro hac vice*)
Brittany S. Bruns (*pro hac vice*)
1700 New York Avenue, N.W. Ste 700
Washington, D.C. 20006
(202) 956-7500
iancua@sullcrom.com
brunsb@sullcrom.com

Kyle W. Mach (*pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
(650) 461-5600
machk@sullcrom.com

MCKOOL SMITH P.C.
Richard A. Kamprath (*pro hac vice*)
300 Crescent Court, Suite 1200
Dallas, Texas 75201
(214) 978-4000
rkamprath@mckoolsmith.com

Joshua W. Budwin (*pro hac vice*)
303 Colorado Street, Suite 2100
Austin, Texas 78701

(512) 692-8700
jbudwin@mckoolsmith.com

James Hartmann Smith (*pro hac vice*)
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
(212) 402-9400
jsmith@mckoolsmith.com

*Attorneys for Defendants InterDigital, Inc., InterDigital VC Holdings, Inc., InterDigital Madison Patent Holdings, SAS, and InterDigital CE Patent Holdings, SAS*