IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DISNEY ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERDIGITAL, INC., INTERDIGITAL VC HOLDINGS, INC., INTERDIGITAL MADISON PATENT HOLDINGS, SAS, INTERDIGITAL CE PATENT HOLDINGS, SAS, VID SCALE, INC., VID SCALE PATENTS, LLC, THOMSON LICENSING SAS, and TECHNICOLOR SA, <br><br> Defendants. | Redacted - Public Version <br><br> C.A. No. 25-996-MN |

## THOMSON LICENSING SAS AND TECHNICOLOR SA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

OF COUNSEL:
Brett Schuman
GOODWIN PROCTER LLP
525 Market Street, 32nd Floor
San Francisco, CA 94105
(415) 733-6000

David D. Cross
Alexandra I. Russell
Jacqueline Genovese Bova
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000

Dated: December 19, 2025

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants Thomson Licensing SAS and Technicolor SA*

**TABLE OF CONTENTS**

**ARGUMENT** ................................................................................................................................ 1

I. **This Court Lacks Personal Jurisdiction Over Thomson.** ................................................... 1

   A. *Disney Fails to Allege Jurisdiction Under Delaware's Long-Arm Statute.* ..................... 2

   B. *Disney Fails to Allege Conspiracy Jurisdiction.* ............................................................. 3

   C. *Disney Alleges No Aggregate U.S. Contacts Under the Clayton Act.* ............................ 4

   D. *Disney Has Waived Any Argument That Jurisdiction Comports with Due Process.* ........ 5

II. **Disney's Declaratory Judgment Claim Fails as a Matter of Law.** ................................ 5

III. **Disney Has Failed to Plausibly Allege a Claim Under Section 1 of the Sherman Act.** 6

   A. *Disney Fails to Plausibly Allege Evidence of a Conspiracy.* ........................................... 6

   B. *Disney Has Failed to Plausibly Allege Anticompetitive Effects and Market Power.* ...... 9

   C. *Disney Fails to Plead a Properly-Defined Market.* ....................................................... 10

**CONCLUSION** ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 7, 9

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) ....................................................................................... 10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................................... 3

*Cap. Invs. Grp., Inc. v. Korban*,
  2014 WL 587363 (D. Del. Feb. 14, 2014) .................................................................. 3

*Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*,
  589 F. Supp. 2d 490 (D. Del. 2008) ............................................................................ 3

*Dreibelbis v. Scholton*,
  274 F. App'x. 183 (3d Cir. 2008) ................................................................................ 5

*Elgin Power v. Farmer*,
  2024 WL 456501 (D. Del. Feb. 6, 2024) .................................................................... 2

*Est. of Daher v. LSH CO.*,
  2021 WL 184394 (D. Del. Jan. 19, 2021) ................................................................... 2

*G & G LLC v. White*,
  535 F. Supp. 2d 452 (D. Del. 2008) ............................................................................ 4

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ....................................................................................... 8

*In re Auto. Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3d Cir. 2004) ....................................................................................... 4

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ....................................................................................... 6

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
  2004 WL 7338471 (D.N.J. Oct. 28, 2004) ................................................................. 4

*In re Fasteners Antitrust Litig.*,
  2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) ............................................................. 4

*In re Juul Labs, Inc., Antitrust Litig.*,
  555 F. Supp. 3d 932 (N.D. Cal. 2021) ........................................................................ 7

*In re NBR Antitrust Litig.*,
  2005 WL 8179729 (W.D. Pa. July 5, 2005) ................................................................. 4

*Int'l Constr. Prods., LLC v. Caterpillar Inc.*,
  2022 WL 4465376 (D. Del. Sept. 26, 2022) ............................................................... 8

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
  449 A.2d 210 (Del. 1982) ........................................................................................... 3

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  2014 WL 2813312 (E.D. Pa. June 23, 2014) ............................................................... 8

*Lenovo (United States) Inc. v. InterDigital Tech. Corp.*,
  2021 WL 1123101 (D. Del. Mar. 24, 2021) ............................................................... 10

*Microsoft Mobile Inc. v. InterDigital, Inc.*,
  2016 WL 1464545 (D. Del. Apr. 13, 2016) ............................................................... 10

*MIG Invs. LLC v. Aetrex Worldwide, Inc.*,
  852 F. Supp. 2d 493 (D. Del. 2012) ........................................................................ 2, 3

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ..................................................................................... 10

*Pfizer Inc. v. Johnson & Johnson*,
  333 F. Supp. 3d 494 (E.D. Pa. 2018) .......................................................................... 9

*Sage Chem., Inc. v. Supernus Pharms., Inc.*,
  2024 WL 2832453 (D. Del. May 31, 2024) ................................................................ 4

*Stimwave Techs. Inc. v. Perryman*,
  2020 WL 6735700 (Del. Ch. Nov. 17, 2020) .............................................................. 3

*Taylor v. Wayne Mem'l Hosp.*,
  2024 WL 5652436 (M.D. Pa. Aug. 2, 2024) ........................................................... 5, 6

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
  530 F.3d 204 (3d Cir. 2008) ....................................................................................... 9

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
  844 F. Supp. 2d 571 (E.D. Pa. 2012) ....................................................................... 6, 7

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) .................................................................................................... 9

*Vizio, Inc. v. Funai Elec. Co. Ltd.*,
  2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) .............................................................. 9

**Statutes**

10 Del. C. § 3104(c)(1) ............................................................................................................... 2

15 U.S.C. § 22 ............................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................... 2

Unable to establish personal jurisdiction over Thomson[1] or plead a viable antitrust conspiracy, Disney resorts to rhetoric and speculative theories that fail as a matter of law. It concedes this Court lacks general jurisdiction and it alleges no suit-related contacts to support specific jurisdiction under Delaware's Long-Arm Statute, conspiracy jurisdiction, or the Clayton Act. And Disney ignores Thomson's argument that exercising jurisdiction fails to comport with due process, thus waiving any rebuttal. Disney's Complaint cannot survive these fatal deficiencies.

On the merits, Disney's antitrust conspiracy and declaratory judgment claims fail on multiple grounds. Its theory of an "unwritten" RAND-evasion agreement between Thomson and InterDigital is implausible under binding precedent that all RAND encumbrances transferred with the patents to InterDigital. Disney does not rebut this point and has even conceded in the related California litigation that "RAND commitments run with any patent once it has been declared" and that "Thomson's declarations bind InterDigital." *See* Declaration of Alexandra I. Russell ("Russell Decl."), Ex. C, *InterDigital Inc. v. The Walt Disney Co.*, No. 2:25-cv-895 (C.D. Cal. Apr. 24, 2025), D.I. 50-1 at 9. Not only does this concession doom Disney's antitrust claim, it also establishes that Disney's RAND-encumbrance declaratory judgment claim is against InterDigital, not Thomson. Finally, Disney also fails to plausibly allege that this supposed agreement produced anticompetitive effects in a properly-defined market, relying on inapposite authority that underscores its flawed pleading. The Court should dismiss the Complaint with prejudice.

## **ARGUMENT**

### I.   **This Court Lacks Personal Jurisdiction Over Thomson.**

Disney's boilerplate jurisdictional allegations fail as a matter of law. D.I. 31 at 7-11.

---

[1] "Thomson" refers to Defendants Thomson Licensing SAS and Technicolor SA.

1

Disney concedes this Court lacks general jurisdiction, and its sparse allegations do not establish the required suit-related contacts between Thomson and Delaware or the United States as a whole under its Clayton Act theory. *See* 10 Del. C. § 3104(c)(1); 15 U.S.C. § 22. Nor does Disney address the "minimum contacts" required to satisfy due process. The Court should dismiss the Complaint with prejudice under Rule 12(b)(2).[2]

        A.      *Disney Fails to Allege Jurisdiction Under Delaware's Long-Arm Statute.*

Disney's assertion—without authority—that "[t]he fact that Thomson entered into an agreement with a Delaware entity and ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" D.I. 44 at 7 ("Opp'n") is meritless. Delaware courts have squarely rejected this argument. *See Est. of Daher v. LSH CO.*, 2021 WL 184394, at *6 (D. Del. Jan. 19, 2021) (holding that Delaware choice of law provision is not "a sufficient transaction of business in the State to confer jurisdiction" under the Long-Arm Statute); *see also Elgin Power v. Farmer*, 2024 WL 456501, at *1-3 (D. Del. Feb. 6, 2024) (rejecting personal jurisdiction based on Delaware arbitration and choice of law provisions). Disney's cited cases are distinguishable. *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493 (D. Del. 2012), held jurisdiction existed under the Long-Arm Statute because the defendant's act—incorporation of a Delaware entity—was "the very issue at the heart of [the] dispute," thus satisfying the requirement to show a suit-related transaction in Delaware. *Id.* at 504-05. By contrast, InterDigital's Delaware incorporation is unrelated to Disney's RAND-evasion allegations. And in *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, defendants "sent "7,600 form letters asserting billing error disputes to [plaintiff] in Delaware and represented at

---

[2] In the California patent litigation, Disney is already pursuing nonparty Hague Convention discovery into the patents and alleged RAND encumbrances at issue from Thomson and various standards-development organizations abroad. Those efforts confirm that Disney's bid for so-called "jurisdictional discovery" here is an improper attempt to circumvent foreign discovery limits in the California patent litigation. *See generally*, *InterDigital Inc. v. The Walt Disney Co.*, No. 2:25-cv-895 (C.D. Cal. Feb. 2, 2025).

2

least 30 Delaware residents in billing disputes against [plaintiff] in Delaware." 589 F. Supp. 2d 490, 498-99 (D. Del. 2008). Disney alleges no such acts by Thomson targeting Delaware residents.

Disney fails to support its speculation about Thomson's purported "long term, ongoing interactions" with InterDigital in Delaware (Opp'n at 6), and as Thomson has explained, Disney's reliance on the 2018 Agreement's ██████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Thomson's one-time patent transfer bears no resemblance to the "20-year interdependent relationship" with the plaintiffs' headquarters that established jurisdiction in Disney's cited case, and it does not support jurisdiction under the Long-Arm Statute here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

      B.      *Disney Fails to Allege Conspiracy Jurisdiction.*

Disney's Complaint offers no support for the conspiracy jurisdiction it now asserts. *See infra* at Section III. Even if it did, Disney pleads no specific facts that (1) Thomson "knew or had reason to know" that the alleged conspiracy would have an effect in Delaware, or (2) the Delaware effect was a "direct and foreseeable result of the conduct in furtherance of the conspiracy," as required under Delaware law. *See Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982). "Delaware courts construe this test narrowly and require a plaintiff to assert specific facts, not conclusory allegations, as to each element." *MIG*, 852 F. Supp. 2d at 506.

Contrary to Disney's argument, InterDigital's Delaware incorporation is irrelevant because incorporation "add[s] nothing to the [conspiracy] analysis" and only has "a metaphysical connection" with Delaware. *Cap. Invs. Grp., Inc. v. Korban*, 2014 WL 587363, at *9-10 (D. Del. Feb. 14, 2014); *Stimwave Techs. Inc. v. Perryman*, 2020 WL 6735700, at *5 (Del. Ch. Nov. 17, 2020) (rejecting conspiracy jurisdiction where sole Delaware tie was incorporation, which would "push conspiracy jurisdiction beyond constitutional limitations"). Without a substantial act by

Thomson furthering the conspiracy in Delaware, Disney's argument fails. *See Sage Chem., Inc. v. Supernus Pharms., Inc.*, 2024 WL 2832453, at *9 (D. Del. May 31, 2024) ("choice of law or forum selection provisions" do not constitute a "substantial act or substantial effect in furtherance of the conspiracy" in Delaware."). Disney's reliance on *G & G LLC v. White*, 535 F. Supp. 2d 452 (D. Del. 2008), is misplaced. That case involved a foreign defendant's active role in a scheme to effectuate and conceal a Delaware merger. *Id*. at 462-63. Disney alleges no similar acts or communications to establish that Thomson "knew or had reason to know" that the alleged conspiracy would have an effect in Delaware. *See id.* at 464.

      C.      *Disney Alleges No Aggregate U.S. Contacts Under the Clayton Act.*

Lacking any alleged Delaware contacts, Disney retreats to an untenable "nationwide contacts" theory under the Clayton Act, based on its boilerplate allegation that "[a]ll Defendants have minimum contacts with . . . the United States." D.I. 1 ¶ 25. That is not enough. Disney alleges no specific Thomson contacts with the United States, much less any tied to this suit, as required to satisfy due process. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 299 (3d Cir. 2004). Disney's claim that Thomson directed licensing activity toward the U.S. fails for the same reason it does under the Delaware Long-Arm Statute: ███████████████████████████████████████████████████████████████████████ Disney's cases further underscore its flawed argument. *In re Bulk [Extruded] Graphite Products Antitrust Litigation* involved a defendant that sold $4.2 million worth of products into the United States, unlike here, where Disney does not allege Thomson sold anything into this country. 2004 WL 7338471, at *6-7 (D.N.J. Oct. 28, 2004). Likewise, *In re NBR Antitrust Litigation,* 2005 WL 8179729, at *4 (W.D. Pa. July 5, 2005), and *In re Fasteners Antitrust Litigation,* 2011 WL 3563989, at *13 (E.D. Pa. Aug. 12, 2011), involved allegations that defendants attended specific meetings to further conspiracies targeting the United States. Disney alleges no meetings involving Thomson, much

4

less any targeting the United States that could possibly support jurisdiction under the Clayton Act.

        D.    *Disney Has Waived Any Argument That Jurisdiction Comports with Due Process.*

Disney fails to address Thomson's argument (D.I. 31 at 9-10) that the exercise of jurisdiction here violates due process, which is an independent ground for dismissal. "The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim." *Taylor v. Wayne Mem'l Hosp.*, 2024 WL 5652436, at *2 (M.D. Pa. Aug. 2, 2024) (citing *Dreibelbis v. Scholton*, 274 F. App'x. 183, 185 (3d Cir. 2008)). Disney has thus waived any claim that exercising personal jurisdiction over Thomson comports with due process, an essential prerequisite to jurisdiction.

## II. Disney's Declaratory Judgment Claim Fails as a Matter of Law.

Thomson's patent transfer included all existing RAND encumbrances, and Disney's attempt to manufacture a RAND-encumbrance dispute involving Thomson fails on the facts and the law. Disney does not dispute the law cited by Thomson that an assignee like InterDigital acquires a patent subject to its legal encumbrances. *See* D.I. 31 at 18 (citing authority). ███████

████████████████████████████████████

████████████████████████

Even if the law and contract were unclear—and they are not—Disney's concessions in the California litigation are dispositive. In addressing the patents at issue here, Disney argued that "RAND commitments run with any patent once it has been declared" and "Thomson's declarations bind InterDigital." *See* Ex. C at 9. Disney cannot credibly argue that Thomson has any involvement in Disney's RAND encumbrance dispute with InterDigital, when Disney has said the exact opposite in support of its RAND counterclaims pending before another court.[3] Count III

---

[3] As discussed in Section III, Disney's allegations of Thomson's purported financial interest and "cooperation" fail to connect Thomson to InterDigital's sole enforcement of the patents.

should be dismissed with prejudice.

**III.     Disney Has Failed to Plausibly Allege a Claim Under Section 1 of the Sherman Act.**

   A.     *Disney Fails to Plausibly Allege Evidence of a Conspiracy.*

Disney has not alleged direct or circumstantial evidence of a conspiracy as a matter of law. "Direct" evidence is "explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999). "[C]ourts refer to direct evidence of an agreement as the proverbial 'smoking gun'"—for example, a "direct threat to the plaintiff from a competitor that if he or she went into business his competitors would do anything they could to stop him." *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 593 (E.D. Pa. 2012). Disney's citations to the 2018 Agreement and an InterDigital press release are not "smoking guns"—Disney concedes this, arguing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp'n. at 12. This is dispositive.

Disney's alternative theory of an "unwritten" agreement is equally flawed. The 2018 Agreement and binding precedent make Disney's imagined "unwritten" RAND-evasion agreement implausible. *See* D.I. 31 at 12-13. RAND encumbrances travel with the patent as a matter of law, and Disney's effort to recast the transfer as a complex "web" of agreements ignores the controlling authority confirming this principle and its statements in the California litigation. *See supra* at p. 5. The Court need not parse the 2018 Agreement's language because case law resolves the issue. *See* D.I. 31 at 12-13. Disney offers no response to this argument, thus waiving any opposition. *See Taylor*, 2024 WL 5652436, at *2.

Disney's attempt to circumvent the 2018 Agreement and settled patent law fails. First, it cites an irrelevant ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

theory. ▮▮▮▮▮▮▮▮▮▮ Second, its claim that "conspiracies can include 'unwritten understandings' conflicting with written terms" misstates the law and distorts the out-of-circuit case it cites. *In re Juul Labs, Inc., Antitrust Litig.* held that plaintiffs plausibly alleged that an "unwritten term" was "key to the deal" based on "specifically identified facts," including "facts known about the negotiations, the parties involved" and "the acts and explanations [defendant] contemporaneously provided." 555 F. Supp. 3d 932, 960 (N.D. Cal. 2021). By contrast, Disney identifies no facts to make its "unwritten" RAND-evasion theory plausible. Nor could it, as its theory conflicts with the 2018 Agreement, patent law, and its own position in related litigation.

Disney also fails to plausibly allege any circumstantial evidence. The only "plus factor" it claims—motive to conspire—rests on its allegation that Thomson faced financial difficulties and decided to sell its patent portfolio for cash. Opp'n at 13. That is textbook unilateral conduct in Thomson's own interest, not evidence of collusion. *See TruePosition*, 844 F. Supp. 2d at 598 (rejecting conspiracy claim based on allegations that the defendant "wished to preserve its profits that it earned through royalties"). Similarly, the alleged royalty provision alone does not establish a motive to conspire because Disney alleges no facts establishing it was tied to any "RAND-evasion" scheme. *See supra* at p. 6. Rather, the alleged motive associated with the royalty—Thomson's need for cash to address financial difficulties—is "indicative of unilateral, independent behavior," and Disney "has not alleged facts that it is more likely that the conduct was done pursuant to an agreement." *TruePosition,* 844 F. Supp. 2d at 598. Because Disney has "not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Disney's cited cases are unavailing. *King Drug Co. of Florence, Inc. v. Cephalon, Inc.* directly supports Thomson's argument—the court granted summary judgment for defendants,

7

finding that similar provisions across separate settlement agreements did not support an inference of a conspiracy because circumstantial evidence suggested independent, not concerted action. 2014 WL 2813312, at *14 (E.D. Pa. June 23, 2014). *Int'l Constr. Prods., LLC v. Caterpillar Inc.* is an inapposite summary judgment decision involving allegations that Caterpillar and its dealers had a strong economic incentive to eliminate another entity's price-cutting competition, where the court found defendants' combined incentives supported an inference of concerted action. 2022 WL 4465376, at *20-21 (D. Del. Sept. 26, 2022). Disney alleges no such combined incentives.

Disney's failure to allege any plausible link between Thomson's lawful patent transfer and InterDigital's alleged supra-RAND royalty demands confirms that Thomson acted unilaterally and forecloses its conspiracy claim. Disney concedes it has not alleged that Thomson participated in InterDigital's licensing negotiations and instead relies on wholly conclusory allegations that Thomson somehow was "aware" of the scheme's "essential nature." Opp'n at 15. Disney asks this Court to assume the implausible—that Thomson transferred the patents knowing that InterDigital would, years later, violate the parties' agreement and patent law. Disney's wild speculation that Thomson somehow foresaw and agreed to InterDigital's future alleged misconduct fails as a matter of law. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254-55 (3d Cir. 2010) (rejecting "conclusory" allegations that "every [defendant] knew that every other [defendant] agreed, or would agree, to th[e] same [allegedly unlawful] plan.").

Finally, the Court should reject Disney's attempt to conjure a conspiracy from its vague reference to other "components" of the purported scheme. Opp'n at 14. Disney's conclusory allegation that Thomson "knew, intended, and agreed" that InterDigital would "threaten to enjoin implementers' services and products to increase its leverage in licensing negotiations" (D.I. 1 ¶ 92)

8

is insufficient.  *See Twombly*, 550 U.S. at 654 n.10 (conspiracy allegations which "mention[] no specific time, place or persons" fail).  And as InterDigital explained, its lawful petitioning activity is immune from antitrust scrutiny under *Noerr-Pennington*.  *See* D.I. 24 at 5-6.  Disney's failure to plausibly allege an anticompetitive agreement requires dismissal with prejudice.

        B.       *Disney Has Failed to Plausibly Allege Anticompetitive Effects and Market Power.*

Disney alleges none of the joint conduct affecting the standards-setting process that courts have recognized as anticompetitive.  *See* D.I. 31 at 15.  Disney's sole authority, *Vizio, Inc. v. Funai Elec. Co. Ltd.*, is inapposite.  2010 WL 7762624 (C.D. Cal. Feb. 3, 2010).  *Vizio* involved a scheme to split essential patents for one device between two companies that then colluded to charge duplicative royalties and share the proceeds.  *Id.* at *2.  Under these facts, competition "[was] impeded to a greater degree than where a single patentee fixes prices for his licensees."  *Id.* at *6.  Disney alleges the opposite: Thomson sold its patents as a single package to InterDigital, and there is no alleged patent split, second royalty, or ongoing licensing by both alleged co-conspirators.

Disney's conclusory allegation that the imagined RAND-evasion scheme "threaten[s] to manifest in higher prices" (Opp'n at 16) fails because charging high prices does not itself constitute anticompetitive conduct—and the "threat[]" is entirely speculative.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  Disney's cases do not involve RAND encumbrances or the standards-setting process and are therefore inapposite.  *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 225-26 (3d Cir. 2008); *Pfizer Inc. v. Johnson & Johnson*, 333 F. Supp. 3d 494, 501 (E.D. Pa. 2018).  Finally, Disney fails to rebut Thomson's argument (also made by the DOJ) that the alleged RAND obligations limit market power.  Opp'n at 16-17.  Disney's response that this "misses the point" because InterDigital is supposedly "ignoring its RAND commitments," *id.* at 17, merely repackages Disney's breach-of-

RAND counterclaim from the California litigation, which is not even asserted here. And even if it were, such a claim does not establish market power as a matter of law, and Disney cites no authority to the contrary. *Broadcom Corp. v. Qualcomm Inc.* does not help Disney: it addressed a Section 2 monopolization claim based on the alleged monopolist's false promises to a standards body. 501 F.3d 297, 315-16 (3d Cir. 2007). Disney cites no authority extending *Broadcom*'s holding to a Section 1 conspiracy claim, and the Court should decline to do so.

      C.      *Disney Fails to Plead a Properly-Defined Market.*

Disney's market definition is a moving target, proving the Complaint's inadequacy. Disney asserts it has pled "separate" relevant "'markets for technologies covered by' the Defendants' SEPs," and this excuses its failure to allege interchangeability between Compression Standards. Opp'n at 17-18. But the Complaint identifies no separate markets tied to any specific standard, patent, or technology. Rather, it vaguely references technologies tied to "Compression Standards," defined to include both H.264 and H.265. D.I. 1 ¶¶ 9, 75. Thomson should not be left to guess the contours of Disney's relevant market(s), and Disney cannot redefine the market in its opposition. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Disney's cases are distinguishable: neither addressed a challenge to a plaintiff's failure to allege interchangeability within a relevant product market. *Microsoft Mobile Inc. v. InterDigital, Inc.*, 2016 WL 1464545, at *2 (D. Del. Apr. 13, 2016); *Lenovo (United States) Inc. v. InterDigital Tech. Corp.*, 2021 WL 1123101, at *8 (D. Del. Mar. 24, 2021).

## CONCLUSION

For the foregoing reasons, Thomson Licensing SAS and Technology SA respectfully request that the Court grant the motion to dismiss Counts II and III with prejudice.

|  |  |
|---|---|
| OF COUNSEL:<br>Brett Schuman<br>GOODWIN PROCTER LLP<br>525 Market Street, 32nd Floor<br>San Francisco, CA 94105<br>(415) 733-6000<br><br>David D. Cross<br>Alexandra I. Russell<br>Jacqueline Genovese Bova<br>GOODWIN PROCTER LLP<br>1900 N Street NW<br>Washington, DC 20036<br>(202) 346-4000<br><br>Dated: December 19, 2025 | */s/ Nathan R. Hoeschen*<br>Karen E. Keller (No. 4489)<br>Nathan R. Hoeschen (No. 6232)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>nhoeschen@shawkeller.com<br>*Attorneys for Defendants Thomson Licensing SAS and Technicolor SA* |

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 19, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Rodger D. Smith | Shawnna Yashar |
| Cameron P. Clark | Brian P. Quinn |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | O'MELVENY & MYERS LLP |
| 1201 North Market Street | 1625 Eye Street, N.W. |
| P.O. Box 1347 | Washington, DC 20006 |
| (302) 658-9200 | (202) 383-5300 |
| rsmith@morrisnichols.com | syashar@omm.com |
| cclark@morrisnichols.com | bquinn@omm.com |

Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111-3823
(415) 984-8700
mtubach@omm.com

      */s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants Thomson Licensing SAS and Technicolor SA*