# Exhibit A

    

**MM. JUDGMENT OF THE ___BUSINESS COURT OF THE DISTRICT OF THE CAPITAL OF THE STATE OF RIO DE JANEIRO**

**GRERJ electronic no. 03831700689-91**

**INTERDIGITAL VC HOLDINGS, INC.** ("InterDigital" or Plaintiff), a private legal entity with headquarters at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809, Delaware, United States, respectfully, through its attorneys[1], who indicate the email address intimacoes@lickslegal.com , based on art. 207 of the Industrial Property Law (LPI); art. 300 of the Code of Civil Procedure (CPC); Article 927 of the Civil Code (CC); and other applicable legal provisions, to file this

**PATENT INFRINGEMENT ACTION BY COMMON PROCEDURE**
<span style="color:red">**with a request for urgent provisional relief.**</span>

against **THE WALT DISNEY COMPANY (BRAZIL) LTDA.** ("Disney" or Defendant), a private legal entity registered with the CNPJ under No. 73.042.962/0001-87, headquartered at Av. das Nações Unidas, 12.551,
12.555 and 12.559, 10th and 11th floors, suites 1.103 to 1.108, Brooklin Paulista, São Paulo – SP, CEP 04.578-903, and email address intl.ltam.brsp.tributario@disney.com , for the reasons of fact and law set forth below.

The Plaintiff hereby informs that it is exempt from paying the bond provided for in art. 83, § 1, I, of the CPC, as the country in which it is headquartered (United States) is a signatory to the Paris Convention (CUP) for the protection of industrial property, which ensures parity between nationals and foreigners with regard to the protection of industrial property.

---

[1] Power of attorney attached as Doc. 1.

[2] "Injunction – obligation not to do – combined with claims for damages for trademark infringement. Granting of urgent relief, but with a requirement for the co-plaintiff, a foreign company, to provide security, based on Article 83 of the Code of Civil Procedure. Interlocutory appeal. Company headquartered in the United States of America, signatory to the Paris Convention for the Protection of Industrial Property, which provides for parity between nationals and foreigners, in order to authorize an exception to the requirement of security based on the joint application of Article 83, § 1, I, of the current procedural legislation and Article 2 of the Convention. Decision overturned. Appeal granted." ( AI 2184169-59.2021.8.26.0000, Judge Cesar Ciampolini, 1st Reserved Chamber of Business Law of the TJSP, j. 09/08/2021).

**SUMMARY**

1.  **PATENT INFRINGEMENT ACTION – IRREPARABLE DAMAGES RESULTING FROM INDUSTRIAL PROPERTY VIOLATION – REMOVAL OF ILLEGAL ACT** ........................................................................3

2.  **JURISDICTION OF THIS COURT TO HEAR AND DECIDE THE CASE** .......................................................7

3.  **CONDITIONS OF THE ACTION** ............................................................................................9

4.  **FACTS** ............................................................................................................10

    4.1.  THE PARTIES TO THE DISPUTE – INTERDIGITAL'S HISTORY OF INNOVATION IN CONTRAST TO DISNEY'S PARASITIC BEHAVIOR ........................................................................................10

    4.2.  PATENT BR 112012031160-3 – NON-MANDATORY USE – UNEQUIVOCAL INFRINGEMENT 12

5.  **OF THE LAW** .......................................................................................................15

    5.1.  INJUNCTIVE RELIEF – SPECIFIC REMEDY ...............................................................15

    5.2.  COMPENSATORY RELIEF – SUBSIDIARY SOLUTION ....................................................18

6.  **URGENT PRELIMINARY INJUNCTION** ...............................................................................20

    6.1.  *FUMUS BONI IURIS* ........................................................................................22

    6.2.  *PERICULUM IN MORA* ......................................................................................24

    6.3.  ABSENCE OF IRREVERSIBILITY ...............................................................................26

7.  **REQUESTS** ........................................................................................................27

    7.1.  PRELIMINARY INJUNCTION ..................................................................................27

    7.2.  MERIT REQUEST ............................................................................................28

    7.3.  PROCEDURAL PROVISIONS ..................................................................................29

**LIST OF ATTACHED DOCUMENTS** ........................................................................................30

## 1.  PATENT INFRINGEMENT ACTION – IRREPARABLE DAMAGES RESULTING FROM INDUSTRIAL PROPERTY VIOLATION – REMOVAL OF ILLEGAL ACT

1.      The Plaintiff InterDigital files this lawsuit with the objective of **stopping the unauthorized use (infringement) of the invention protected by its patent BR 112012031160-3 by the Defendant Disney**. The Defendant infringes the Plaintiff's patent by encoding and distributing video files that can be decoded by decoders compatible with the H.265/HEVC format using the tool claimed in the patent *sub judice.*

2.      In general terms, encoding is the act of transforming visual information (a sequence of images, for example) into digital format files (a video file). The invention protected by patent BR 112012031160-3 refers to a technology called "**quantization parameter prediction**," which serves to improve the efficiency of video encoding by reducing signaling redundancy and increasing the efficiency and quality of the video resulting from the digital video "creation" process.

3.      This technology is entirely **optional** to implement—that is, Disney could cease infringement of the patent *in question* by disabling the patented method without further ado, using a simple command. This is because, as is public knowledge, Disney uses the x265 encoder on its *streaming* platform*,* which can be configured so that there is no variation in the quantization parameter throughout the video file a n d , consequently, the method patented by the Plaintiff is not implemented.

4.      Instead, Disney has chosen to implement InterDigital's technology, even though it has not acquired the necessary license that would make such use lawful. Disney does not have authorization to use the patent *sub judice,* despite InterDigital's efforts over the past three years to negotiate a license. The unauthorized use of the Plaintiff's quantization parameter prediction technology **constitutes patent** infringement—a civil a n d  criminal offense, it should be noted.

5.      Article 42 of the LPI defines acts considered patent infringement: producing, using, offering for sale, selling, or importing a patented product or a product/process obtained directly by a patented process. All of these acts are deliberately practiced by the Defendant in Brazil.

6.      In this specific case, the Defendant is **using** the patented invention by encoding (i.e., **producing**) its video content using InterDigital's quantization parameter prediction technology, associated with the creation of *bit* streams compatible with the H.265/HEVC format. Similarly, it is **offering for sale, selling, and importing** products (encoded video) obtained directly through the use of this patented invention in its *streaming* service*.*

7.      Disney also **contributes to the infringement** (Art. 42, §1, of the LPI) of patent BR 112012031160-3 when it provides a service (Disney+) that, upon receiving the infringing digital video to be played by its subscribers' equipment (televisions, personal computers, phones, tablets, and other devices), as directed and intended by Disney, incurs the use of InterDigital's technologies.

8.      The patented technology is **not** mandatory for encoding videos in HEVC format (or any other format). **The Defendant may encode any video, in any format (even HEVC), without using InterDigital's technology**. The patent infringement alleged in this initial petition

stems from Disney's mere market choice, which may cease at any time without impacting it in any way. It is a voluntary and deliberate act.

9.      The Defendant's illegal behavior causes irreparable damage to the Plaintiff's main economic activity, which consists of remuneration for the exploitation of its inventions by third parties. InterDigital depends on the licensing of its patents in order to obtain the necessary consideration to continue investing in the development of innovative technologies.

10.     When a market giant (*big tech*) such as Disney uses patented technologies without authorization or compensation, its competitors are deeply discouraged from maintaining their licenses with InterDigital. **There is a clear risk that other players in the industry will feel authorized and motivated to start using the Plaintiff's inventions without authorization, refusing to obtain or renew their licenses**.

11.     Compensation for the use of patented technologies is essential to enable innovators to remain competitive in innovation cycles. When a prominent company such as Disney refuses to license patented technologies, even though it implements them in its products and services, this creates a negative ripple effect that causes irreparable damage to InterDigital's ability to invest in cutting-edge innovations that ultimately promote social and technological development.

12.     Thus, the misappropriation of InterDigital's industrial property is parasitic behavior that has two harmful consequences:

   **1)**   It places the parties in **a** clear **imbalance**. If the Defendant can simply continue to use the technology without paying anything, it will have no incentive to obtain a license—on the contrary, **the incentive will be for it to continue ᵗᵒ profit illegally from this parasitism.** After all, those who benefit from their own wrongdoing assume an undue advantage over the party that is being harmed by the situation; and

   **2)**   It creates a **market distortion** capable of causing irreparable damage not only to InterDigital, but also to the Defendant's competitors who are duly licensed, which ultimately jeopardizes such licenses, aggravating the irreparable damage to the Plaintiff. After all, by using patented technologies without a proper license, Disney obtains an undue economic advantage over its competitors who comply with the rules of the industrial property system. InterDigital, in turn, depends on remuneration for the use of its inventions to continue investing in research and innovation. The improper and cost-free use of these technologies creates a **commercial incentive for other competitors to adopt the same behavior.**

13.     InterDigital has been attempting to negotiate a license with Disney since mid-2022—three years ago. Before filing this lawsuit, InterDigital sought to resolve the issue non-contentiously with Disney.

---

3      *"And the danger in delay, on your part, is in re ipsa, insofar as **the inherent slowness of the process will benefit, if the preliminary injunction is not granted, precisely those who, by all indications, are infringing on the patent**. It is necessary to minimize the negative effects of procedural delays. [ ...] The above ruling invokes the **theory of unlawful profit,** based on the observation of the distinguished President, Judge PEREIRA CALÇAS. This theory also serves to support this decision. **The aim is to prevent patent infringements, in the defense of which it is always possible to argue, as the defendant does here, issues of apparent complexity for laymen, from persisting throughout the long duration of the proceedings, under the pretext of evidentiary investigation in which expert evidence must be produced."* (Interlocutory appeal No. 2017998-49.2020.8.26.0000, Judge Cesar Ciampolini, 1st Reserved Chamber of Business Law, j . 06/02/2021)

Disney. In fact, 97% of all licenses for the use of essential patents are obtained without the need for <sup>litigation</sup>. The exceptions (3%) are rare and occur when one of the parties decides to act abusively, preferring to use someone else's technology without paying for as long as possible.

14.    However, instead of choosing to make lawful use of the Plaintiff's inventions, the Defendant prefers to profit from the use of these technologies (which allow Disney to gain efficiency in encoding the videos it sells) at zero cost. The fact is that, **without a license, the Defendant is not authorized to use any of the Plaintiff's patented technologies**.

15.    With Disney's resistance to resolving the situation out of court, InterDigital had no alternative but to file this lawsuit to protect its rights, mainly through the **preventive injunction granted**, which is the legal remedy to be applied in cases of patent infringement, pursuant to Article 209, § 1, of the LPI.

16.    In fact, the Superior Court of Justice has already considered the importance of this provision, having unanimously ruled that injunctive relief (Article 42 of the LPI), granted as <u>**a preventive measure**</u> **(**Art. 209, §1, of the LPI), is the **specific injunction** intended to protect the legal interest underlying invention patents, and that the obligation can only be replaced by "damages" when specific relief **is impossible** (Arts. 497 and 499 of the CPC). All these legal provisions were weighed by the E. STJ, which thus stated on the matter:

> *"It is well known that **Brazil has <u>not</u> adopted the punitive system of civil reparations**. [...] Going further, it should be noted that this movement of de-patrimonialization has succeeded in establishing the **prevalence of <span style="color:red">inhibitory and preventive relief</span>**, aimed at achieving a result equivalent to compliance with the protected right. This is because **injunctive relief** is understood **to be the most effective way to protect legal interests**, since **subsequent reparations are not capable of restoring the parties to the actual status quo**. [...] At the same time, the <span style="color:red">**power and duty**</span> of the judge to prevent irreparable or difficult-to-repair **damages** was established**, pursuant to Article 209 of the aforementioned legal document.***
> (Special Appeal No. 1.315.479/SP, Reporting Justice Marco Aurelio Bellizze, 3rd Panel, March 14, 2017)

17.    The case law of the Court of Justice of Rio de Janeiro (comprising dozens of decisions) unanimously recognizes that failure to observe the patent holder's right to prevent unauthorized third parties from commercially exploiting their invention causes **irreparable damage,** which **must be prevented as soon as possible** through the granting of urgent relief expressly provided for in the first paragraph of Article 209 of the Industrial Property Law. *Verbis:*

> *"In turn, the risk of irreparable damage or difficult and uncertain redress stems from the very manufacture and marketing of products using the aggravated party's technology, without a license or authorization to do so. **Waiting until the end of the lawsuit to determine that the aggravating parties should refrain from exploiting the use of the invention would constitute the perpetuation of the unlawful act, which cannot be endorsed by the Judiciary**."*
> (Interlocutory appeal No. 0015914-36.2022.8.19.0000, Judge Mauro Pereira Martins, 21st Chamber of Private Law, j. 09/29/2022)

18.    The requested injunction aims to remove the patent infringement and, to that end, has a very restricted scope, limited to **the minimum core** of industrial property rights, without the

---

4    *"A study published at the same time found that the overall incidence of litigation in SEP licensing is low, with just 0.01 - 0.03 SEP litigations per SEP license concluded by major SEP holders and a maximum of 0.1 SEP litigations per patent pool license."* MATTIS, Julia; SCHMIDT, Josh. Intervention Is Threatening The Standards Ecosystem. Washington, D.C.: Sidley Austin LLP, 2023. Available at:lesi.org/wp-content/uploads/2025/06/LN_11_5346-Mattisp.181-184.pdf . Accessed on: Oct. 24, 2025.

which the right itself is <sup>distorted</sup>. The request is that, as of its granting, the Defendant cease to implement, in Brazil, the technology owned by the Plaintiff when encoding and distributing video files decodable by decoders compatible with the H.265/HEVC format using the quantization parameter formation tool claimed in the patent *sub judice*.

19.    This means that the Defendant will not need to interrupt its operations, but simply cease to implement the patented technology, or else acquire the appropriate license, and begin to adequately compensate the Plaintiff for its inventions, as its competitors already do.

20.    If this Court Court understands, *ad argumentandum,* that in order to grant a preliminary injunction preventing the use of technologies essential to the 5G standard protected by the Plaintiff's patents, confirmation of the infringement by a court expert would be necessary, InterDigital hereby requests that the innovative solution adopted by the Commercial Courts of Rio de Janeiro be adopted, which has proven to be extremely efficient in cases such as this one.

21.    In fact, since the end of 2023, the Commercial Courts have, when appropriate, **anticipated technical expertise, stipulating a timetable for its completion, in a decision handed down at the very beginning of the proceedings (on a preliminary basis, therefore),** in order to allow (**i**) compliance with the provision of Article 209, paragraph 1, of the Industrial Property Law, which establishes the power and duty of the judge to urgently suspend the infringement of industrial property rights, and, at the same time, (**ii**) the magistrate to render his decision with certainty and firmness.

22.    The rationale for the measure is the possibility for the judge to analyze the request for provisional relief upon prior justification (Article 300, paragraph 2, of the CPC [7] ), which may occur through the presentation of an expert report produced quickly, in addition to the judge's power to "*alter the order of production of evidence, adapting it to the needs of the conflict **in order to make the protection of the right more effective***" (Art. 139, VI, of the CPC).

23.    See below for examples of decisions in this regard:

> *"The general power of caution, an unshakeable power and duty of the judge, is best exercised in **the anticipation of expert evidence, in order to ensure a prompt response to highly technical questions that are detrimental to the determination of the best law.**
> With this, in the time that was previously devoted to debating only the emergency injunction, the process will be concluded,
> scheduled since the initial order.*"
> (Case No. 014729-98.2025.8.19.0001, 3rd Business Court, decided on 10/01/2025)

****

> *"Furthermore, **considering the need to make the protection of rights more effective, as well as to ensure the reasonable duration of the proceedings, based on Article 139, VI, CPC, I anticipate the evidentiary phase and order the performance of expert evidence** to analyze the existence of a violation of IP 0211263-9 by*

---

[5]    *"As a principle expressly enshrined in the Constitution or as an inherent constitutional postulate, **the principle of protection of the essential core (Wesensgehaltsgarantie) is intended to prevent the emptying of the content of fundamental rights through the establishment of unreasonable, excessive, or disproportionate** restrictions"* (MENDES, Gilmar Ferreira. Constitutional doctrine and constitutionality control as a guarantee of citizenship: declaration of unconstitutionality without pronouncement of nullity in Brazilian law. Revista de Direito Administrativo, Rio de Janeiro, v . 191, p . 46, Jan./Mar. 1993).

Case No. 0811901-50.2025.8.19.0001, 7th Business Court of the Capital District, decided on February 11, 2025; Case No. 0947617-20.2023.8.19.0001, Hon. Judge Maria Cristina de Brito Lima, 6th Business Court, decided on 12/18/2023; Case No. 0834763-49.2024.8.19.0001, 6th Business Court of the Capital District, decided on 07/05/2024.

Art. 300, §2, of the CPC: "Emergency relief may be granted preliminarily or **after prior justification**."

*Defendants when encoding and offering video content on the Paramount+ streaming platform using patented technology.*"
(Case No. 0931785-73.2025.8.19.0001, 1st Business Court, decided on September 3, 2025)

**\*\*\*\***

"***The most recent approach adopted by the capital's business courts has proven to be quite effective in dealing with similar cases***.

*This is because **it anticipates** not the obligation not to do something, but rather **the production of technical evidence itself**, thus **implementing the rule set forth in Article 209, §1 of the LPI in conjunction with Articles 300, §2 and 139, I of the CPC**. Incidentally, it is worth noting that the resolution of this case requires technical expertise.*

*All of this, **scheduled as authorized by Article 191 of the CPC**, ensures the speedy conduct of procedural acts, with full respect for the procedural and constitutional rights of the parties, **with a view to reaching a decision based on greater evidence to be adopted in a much more reasonable time frame**. That said, <span style="color:red">**I anticipate the production of the technical expertise, to be carried out promptly**</span>*."
(Case No. 0912896-71.2025.8.19.0001, 6th Commercial Court, decided on August 14, 2025)

**\*\*\*\***

"*Upon reviewing the case files, **I find that it is possible and convenient to apply procedural scheduling, pursuant to Article 191 of the Code of Civil Procedure, with a view to streamlining and improving the efficiency of the proceedings**, bearing in mind that the judge is the conductor of the proceedings and is responsible for adopting measures that benefit the proceedings, without neglecting the rights of the parties.*

*Considering the technical issue present in the case files, as well as the **power to direct the proceedings granted to the Judge, pursuant to Article 139, I, CPC**, as stated, <span style="color:red">I anticipate the evidentiary phase</span> and hereby designate the performance of expert evidence, due to the peculiarities of the case and the need for a swift resolution of the legal issue at hand, under penalty of forfeiture of rights.* (Case No. 0883548-08.2025.8.19.0001, 1st Business Court, decided on July 11, 2025)

24.    One such precedent, incidentally, was handed down in a previous lawsuit filed by InterDigital against Disney to discuss the infringement of its patents PI 0305519-1 and PI 0318825-6, culminating in a sound and enlightening expert report that served as the basis for the granting of provisional relief in the form of evidence ordering the cessation of the illegal activity found there:

"***The general power of caution, an unshakeable power and duty of the judge, is therefore better invested in <span style="color:red">anticipating the expert opinion</span>, in order to ensure a prompt response to highly technical questions that are detrimental to the definition of the best law.*** [...]
*In light of the foregoing:* [...] iii) *I APPOINT Dr. David Moura, whose qualifications are known to the court, to **conduct the expert examination that I hereby grant and <span style="color:red">anticipate</span>**. [...] Within the response period, the plaintiff and defendant shall appoint technical assistants and submit their questions, under penalty of preclusion.*"
(Case No. 0811901-50.2025.8.19.0001, 7th Business Court, decided on 02/11/2025)

25.    Finally, in the context of exhaustive cognition, the Plaintiff hereby requests, in addition to confirmation of the provisional injunction, compensation for **(i)** damages already caused by the infringing acts committed by the Defendants, as provided for in Article 44 of the LPI; and **(ii)** damages caused by any infringing acts committed until the conclusion of the proceedings.

## 2.   JURISDICTION OF THIS COURT TO HEAR AND DECIDE THE CLAIM

26.    This action is filed to put an end to the continuation of the illegal act that is currently being perpetrated and to seek compensation for the damages caused by the practice of this illegal act in the past. It is, therefore, an action with cumulative requests of an **inhibitory** and **reparatory** nature.

27.    Art. 53, IV, "a," and V, of the CPC grants the plaintiff the right to file a lawsuit for damages. resulting from an unlawful act in the place of the harmful act or event. The Defendant notoriously markets digital videos

created using the inventions covered by InterDigital's patent in this district, as documented in the evidence accompanying this ^initial petition.

28.     The STJ has a consolidated understanding that, *"if the damage is caused in several places, the plaintiff may, at his or her discretion, file a lawsuit in any of the ^corresponding courts,"* including in cases of patent infringement, *verbis*:

> *"the local court ruled in line with the jurisprudence of the Superior Court of Justice, which understands that, under the terms of art. 53, IV and V, "a" of CPC/2015 (100, V, "a" and sole paragraph of CPC/1973), the* **plaintiff in an action for damages for infringement of trademark and patent rights may choose the jurisdiction of the place where the event occurred,** *in addition to the jurisdiction of the plaintiff's domicile."*
> (AgInt in REsp No. 2.321.814/RJ, Reporting Justice Ricardo Villas Boas Cuêva, June 21, 2023)

****

> *"From the understanding established in the STJ:* **The jurisprudential orientation of the STJ is that, under the terms of art. 53, IV, "a," and V of the CPC (corresponding to art. 100, V, "a," and sole paragraph of CPC/73), the plaintiff in an action for damages for violation of industrial property rights may choose the jurisdiction of the place where the event occurred or the jurisdiction of the plaintiff's domicile.** *In this sense: AgInt in REsp 1.405.217/PR (Third Panel, DJe 10/3/2016) and AgInt in AgInt in AREsp 936.318/SP (Fourth Panel, DJe 6/19/2018). Thus, since the appealed judgment is in line with the guidance of this Court, its reform is not feasible.* (REsp No. 2138960/RJ, Rel. Min. Nancy Andrighi, j. 03/26/2025)

29.     This position has been widely applied by this Court of Justice of the State of Rio de Janeiro:

> *"Preliminary ruling of lack of jurisdiction by the lower court, which should not be upheld. - Article 53, items III, subitem "a," IV, subitem "a," and V, of CPC/15, which expressly allows* **the filing of remedial actions both at the plaintiff's place of residence and at the defendant's place of residence, as well as at the place where the damage occurred,** *the latter being the option chosen by the plaintiff/aggrieved party. - Downloading and dissemination of works over the internet, as well as the purchase of electronic products, which* **can occur anywhere in Brazil (and the world),** *can be considered as the place of damage or the state of the federation where the original lawsuit was filed. [...]* **even though the appellant and the appellee do not, in fact, have their headquarters in the State of Rio de Janeiro, the mere fact that the harmful act occurred in national territory and can be verified in the State of Rio de Janeiro at any location with internet access, in itself, already allows the original action to be filed in this Court,** *and it is not possible for the judge a quo to impose a decline of jurisdiction to another court, especially under penalty of preliminary dismissal of the complaint."*
> (AI No. 0089262-87.2022.8.19.0000, Judge Tereza Cristina Sobral Bittencourt Sampaio, 27th Civil Chamber, March 7, 2023)

****

> *"Thus, the practice of* **advertising the products manufactured by the Defendant via the internet** *is recognized, which certainly reaches internet users in the State of Rio de Janeiro. On the other hand, there is an established understanding in the higher courts recognizing the rule of triple jurisdiction, according to which* **the Plaintiff** *may* **choose the jurisdiction of his own domicile or the place where the unlawful act occurred.** *In the event of establishing territorial jurisdiction in actions for damages resulting from an illegal act (forum comissi delicti),* **the rule set forth in Article 53, item V, of the Code of Civil Procedure prevails, which establishes concurrent jurisdiction between the plaintiff's domicile and the place where the act occurred,** *[...] In the present case, as already stated, the* **place of the event may be any of the places where the product is advertised on the internet,** *especially given the recognized power of the internet to disseminate and massify information."*
> (AI No. 0032596-08.2018.8.19.0000. Judge Fabio Dutra, 1st Civil Chamber, June 3, 2019)

---

Doc. 9.

[9] REsp 209.242/ES, Rel. Minister Barros Monteiro, 4th Panel, j. 09/02/2003. In the same sense: AgInt in REsp No. 1.773.999/RS, Rel. Minister Nancy Andrighi, 3rd Panel, j. 08/31/2020; Embargos de Divergência in AI No. 783.280/RS, Reporting Justice Nancy Andrighi, 2nd Section, j. 04/19/2012; AgInt in REsp No. 1.686.393/MG, Reporting Justice Maria Isabel Gallotti, 4th Panel, j. 08/23/2018; AgInt in REsp No. 1.405.217/PR, Rel. Minister Paulo de Tarso Sanseverino, 3rd Panel, j. 09/20/2016.

30.    This special rule does not apply even if the defendant is a legal entity based in a different location, as seen in the precedents cited above and in the case law of the Superior Court of Justice:

> *"once counterfeiting or unfair competition has been established, pursuant to Articles 129 and 189 of Law 9.279/96, the understanding that the action for damages shall be brought in the jurisdiction where the act or fact occurred shall apply, **even if the defendant is a legal entity headquartered elsewhere.**"* (EAg 783.280/RS, Rel. Min. Nancy Andrighi, Second Section, j. 02/23/2011)

> ****

> *"In the event of a cumulative claim for damages and a claim for abstention from the improper use of a trademark or patent, **the rule set forth in Article 100, V, a, sole paragraph, of CPC/73 shall prevail, and both the court of the defendant's domicile and the court of the plaintiff's domicile and the court of the place of the act or fact shall have jurisdiction to hear the case**."*
> (AgInt no REsp 1.405.217/PR, Rel. Min. Paulo de Tarso Sanseverino, Third Panel, j. 09/20/2016)

31.    As this is a case relating to industrial property, the Commercial Courts are competent to hear and judge this action, pursuant to Article 69, "f," of the Law on Judicial Organization and Division of the State of Rio de Janeiro (State Law No. 10,633/24).

32.    It is ᵂᵒʳᵗʰ noting that the Commercial Courts of Rio de Janeiro have renowned expertise in cases involving technology patents. The first of these cases was filed in 2012, when only the Court of Justice of Rio de Janeiro had specialized courts in this area. Since then, the Rio de Janeiro Court has developed a fruitful and prolific jurisprudence on the subject, making the Rio de Janeiro business jurisdiction one of the most respected in the world in patent matters, praised for handling this type of litigation in a technical and fearless manner. Also due to their renowned experience with the subject, the Commercial Courts of this district have jurisdiction (in both senses of the term) to prosecute and judge this action.

33.    Finally, it is important to clarify that the previous lawsuit filed by InterDigital against Disney, pending before the 7th Business Court of ᵗʰⁱˢ ᵈⁱˢᵗʳⁱᶜᵗ, is not related to the present lawsuit by connection or contingency, and there is no risk of conflicting decisions being handed down. This is because that case concerns the infringement of patents PI 0305519-1 and PI 0318825-6, whereas this case concerns the infringement of patent BR 112012031160-3. On this point, the understanding of these Commercial Courts is that "*the connection motivating prevention will only be characterized if both cases focus on the same patent*" – which is not the case.

## 3.   CONDITIONS OF THE ACTION

34.    Pursuant to Article 42 of the LPI, InterDigital is the owner of the industrial property rights conferred by patent BR 112012031160-3, which is in full force and effect. This fact is attested to by the attached documents proving ownership of the patent *sub judice,* in particular the patent letter issued by ᵗʰᵉ ᴵᴺᴾᴵ. Its **interest in acting and** its **standing** to seek the cessation of the unauthorized use of these patents are therefore irrefutable.

---

[10]   Case No. 0373121-63.2012.8.19.0001, heard before the 2nd Commercial Court of this District.

[11]   Case No. 0811901-50.2025.8.19.0001.

   Doc. 3.

35.     Disney, in turn, is responsible for providing, in Brazil, the Disney+ *streaming* service (which includes channels such as ESPN and Star+), through which videos encoded with the quantization parameter technology claimed by the patent *sub judice* are made available in [Brazil]. Since the Defendant is solely responsible for the acts of patent infringement typified in Articles 42, *caput and* § 1, 183, and 184 of the LPI and now charged, its **legitimacy to appear as the defendant** in this case is unequivocal.

## 4.  FACTS

### 4.1.  THE PARTIES INVOLVED IN THE DISPUTE – INTERDIGITAL'S HISTORY OF INNOVATION IN CONTRAST TO DISNEY'S PARASITIC BEHAVIOR

36.     InterDigital is an innovative company whose business activity consists of researching and developing important technologies in the digital arena. Founded in 1972 in the United States, InterDigital is responsible for several advances in the areas of (**i**) video (such as the two patents *sub judice)*, (**ii**) cellular networks (such as 5G and 6G), and (**iii**) cutting-edge technologies (such as artificial intelligence and *machine learning)*. For example, InterDigital was the first to design the base systems for [3G] cellular networks.

37.     Today, InterDigital's focus remains on researching and developing innovations that benefit the global high-tech industry and, by extension, consumers themselves. InterDigital's contributions have culminated in one of the largest and strongest patent portfolios in the world, comprising approximately 30,000 (thirty thousand) patents in force. A good illustration of InterDigital's efforts and commitment to innovation is its prominent position in the Brazilian National Institute of Industrial Property (INPI) *ranking* of entities with the most patent filings in [Brazil].

38.     Its investments in the development of video coding technologies are of great importance to the industry and consumers. Without coding techniques, it would be impossible to share videos efficiently and effectively, as there would be no files compatible with internet transmission (*streaming*, forwarding via messaging apps, etc.) and storage on portable devices (phones, tablets, notebooks, etc.). In other words, without innovations in encoding, consumers would have to spend much more on internet and storage plans in order to consume video content.

39.     InterDigital can only recoup its enormous investments in promoting innovation by licensing its patented inventions to companies such as Disney, which use them and profit from them. Without proper compensation for the use of its inventions, InterDigital is unable to reinvest in future technologies, posing a real threat of disrupting the virtuous cycle of innovation that benefits the market as a whole, including Disney.

---

[13]   Docs. 8 and 9.

[14]  InterDigital was one of the pioneers in the development and patenting of WCDMA (*Wideband Code Division Multiple Access*) technologies, which became the basis for the UMTS (*Universal Mobile Telecommunications System*) standard, widely adopted as the 3G standard. More at: www.interdigital.com/history_videos/creation-of-3g

[15]        www.gov.br/inpi/pt-br/central-de-conteudo/estatisticas/arquivos/estatisticas-preliminares/ranking-de-depositantes-nao-residentes-2023.pdf

40.     Disney, in turn, needs no introduction, being one of the most famous producers of children's entertainment content (films, cartoons, toys) and related services (parks, hotels, cruises). Disney does not hold a significant number of patents in any country, which suggests that the Defendant's business activities are not focused on the development of new technologies, including those related to video content encoding, which enable its entire *streaming* business. Its focus is on content production.

41.     The focus of its activities is legitimate: there is no problem in focusing on content production and using third-party technologies for its distribution. The problem arises when proprietary technologies are exploited without the proper authorization of those who own them. **Just as no one can copy Disney movies, Disney cannot copy third-party patents**.

42.     After Disney established itself in the *streaming* market, InterDigital made a license offer so that the exploitation of its technologies in the Disney+ service could continue legally. For the past three years or so, InterDigital has been seeking, through negotiations, a mutually beneficial solution, as it does with all players in this market who have obtained the proper license to implement the [Plaintiff's] technologies.

43.     However, the Plaintiff has encountered recalcitrance on the part of Disney, which has consistently and unjustifiably refused to engage in meaningful negotiations toward a licensing agreement to legalize the use of InterDigital's technologies, which it already implements in Brazil.

44.     Incidentally, this recalcitrance led InterDigital to file a first infringement lawsuit against Disney in February of this year, covering patents PI 0305519-1 and PI 0318825-6, also infringed by [the Defendant]. In that lawsuit, a conclusive expert report was produced which, **in addition to confirming the infringement, stated that it was committed by Disney in an absolutely <u>deliberate</u> manner, since the technologies are <u>optional</u>** – just like the technology discussed in the present lawsuit.

45.     The expert report supported the decision to grant provisional relief based on the evidence, with the MM. Court of the 7th Business Court of this district ordered Disney to "*refrain from encoding or distributing, in Brazil, video content in AVC and HEVC formats using the weighted prediction tool (scope of patents PI 0305519-1 and PI 0318825-6), under penalty of a daily fine of R$100,000.00 (one hundred thousand reais).*"

46.     This was not the first time that the Defendant was ordered to cease the unauthorized use of third-party technology in Brazil. In fact, in July of this year (2025), the 13th Chamber of Private Law of [the] E. [TJRJ18] confirmed the provisional emergency injunction granted by the 5th Business Court[19] of this district to order Disney to cease infringing on Adeia's patent related to a technology called "reallocation feature," which allows users of the service to 5th [Business Court19] of this district to order Disney to cease infringing on Adeia's patent related to a technology called "reallocation feature," which allows users of the Defendant's *streaming* service to watch videos continuously on different devices without losing progress, due to the storage of viewing information (*i.e.,* time watched) on the server.

---

[16]   InterDigital's contractual obligations to Disney prevent it from disclosing additional details about communications between the parties.

[17]   Case No. 0811901-50.2025.8.19.0001, pending before the 7th Business Court of this district.

[18]   AI No. 0103767-15.2024.8.19.0000, Rel. Des. Gilberto Matos, C. 13th Chamber of Private Law, j. 07/24/2025.

       Case No. 0951630-28.2024.8.19.0001, Judge Elisabete Franco, 5th Commercial Court, j. 11/14/2024.

47.     Everything indicates that Disney's behavior of resorting to piracy of third-party technologies in the process of consolidating its *streaming* service in Brazil is symptomatic – conduct that has been harshly repressed by the Rio de Janeiro Judiciary, in a commendable effort to curb patent infringement.

48.     Although Disney stated in the records of that first lawsuit filed by InterDigital that it had begun preparations to comply with the injunction, the fact is that the Defendant is not authorized to use any of the technologies patented by InterDigital – not just those disputed in that lawsuit. The defendant's unwillingness to engage in good faith negotiations to obtain a license for InterDigital's portfolio makes it impossible for it to implement any of the patents owned by the plaintiff in its services, as is the case with the technology protected by BR 112012031160-3, discussed in this lawsuit.

49.     The Plaintiff remains open to negotiating a license agreement, but was forced to resort to the courts in view of Disney's reluctance to resolve the issue. After all, InterDigital could not continue to stand idly by while a company of Disney's stature continues to profit from its inventions, jeopardizing its entire licensing business and undermining the cycle of innovation.

50.     Nor can the Judiciary turn a blind eye to the illegal practice denounced in this complaint. Certainly, the Defendant cannot be allowed to continue adopting patent infringement as a business model, artificially increasing its profit margins and causing real distortion in the market, while competing unfairly with companies in the same industry.

## 4.2. PATENT BR 112012031160-3 – NON-MANDATORY USE – UNEQUIVOCAL INFRINGEMENT

51.     As explained in detail in **Annex A**, which forms part of this initial petition for all intents and purposes, patent BR 112012031160-3 claims a non-transitory computer-readable storage method with video signal data encoded using a quantization parameter predictor determined based on multiple quantization parameters of previously encoded neighboring portions, encoding only the difference between the current quantization parameter and the predictor for signaling to the corresponding decoder.

52.     In practical terms, the method claimed by the patent *sub judice* optimizes the video file encoding process, promoting a balance between the compression rate (video file size) and image quality and increasing the efficiency and quality of the resulting video. The technology is thus one of the main tools for improving the performance of video codecs such as H.265/HEVC.

53.     The infringement of the patent *sub judice* occurs when Disney, through its Disney+ *streaming* service, encodes video files that can be decoded by decoders compatible with the H.265/HEVC format using the quantization parameter formation tool specified in claim 1 of patent BR 112012031160-3, owned by InterDigital.

54.     At this point, it is important to clarify that BR 112012031160-3 cannot be considered an essential standard patent, as its implementation is **entirely optional**. Although it claims inventions related to the decoding process (claims 5 onwards), the present lawsuit concerns the infringement of claim 1, which refers to the provision of encoded video content

coded video content to a media-containing device (such as mobile devices, computers, and televisions).

55.    As defined in the "*Guidelines for the Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC,*" published by the ITU, "Patent" means "*the claims contained and identified by patents* [...] *only to the extent that such claims are essential for the implementation of a Recommendation | Delivery.*" Thus, to the extent that it is possible to provide video content in H.265/HEVC format without using the technology patented by the Plaintiff, there is no question of the patent's essentiality. Its use by Disney is merely a market choice. This can be explained.

56.    It is known that Disney implements the x265 encoder to encode the video content provided by the Defendant in Brazil. This fact was confirmed by the Defendant itself in the records of the first lawsuit filed by InterDigital against Disney:

> 16. Considerando que a DISNEY utiliza os codificadores x264 e x265 para seu serviço Disney+ para atendimento aos padrões de decodificação H.264 e H.265 respectivamente, e que os códigos-fonte destes codificadores podem ser encontrados, respectivamente, nos seguintes links (link 1 | link 2), queira o Sr. Perito, por gentileza, responder aos quesitos subsequentes. [20]

57.    The x265 encoder allows the encoding process to be performed <u>without</u> implementing the invention claimed by BR 112012031160-3. In other words, Disney can configure its encoder so that it does not vary the quantization parameter block by block, using instead a fixed quantization parameter for the entire frame, disabling the adaptive features with a simple command. This avoids the use of neighboring blocks to predict the quantization parameter and ignores the encoding of the difference between the parameters of neighboring blocks.

58.    Considering that claim 1 covers precisely the use of the specific method for predicting the quantization parameter and encoding according to the difference between the predicted parameters, it is possible for this bitstream to be encoded without using the method patented by InterDigital by implementing the aforementioned simple command to use a fixed quantization parameter, which would not constitute an infringement of the patent *in question.*

59.    Although it is possible to perform video encoding without implementing the Plaintiff's technology—which is optional—the use of the method protected by patent BR 112012031160-3 was verified in the bitstreams sent by Disney to Brazilian consumers through its *streaming* platform:

> Input #0, mov,mp4,m4a,3gp,3g2,mj2, from 'map-3500K.mp4': Metadata:
> major_brand: iso6
> minor_version: 0
> compatible_brands: mp41mp42isomiso6dashcmfcchhd
> creation_time: 2022-06-08T17:04:12.000000Z Duration:
> N/A, bitrate: N/A

---

[20] Id. 180545512 of case no. 0811901 -50.2025.8.19.0001, pending before the 7th Business Court of this district (Doc. 6).

Stream #0:0[0x1](und): Video: hevc (Main 10) (hvc1 / 0x31637668), yuv420p10le(tv, bt709), 1280x720 [SAR 1:1 DAR 16:9], 23.98 tbr, 48k tbn (default)
Metadata:
creation_time: 2022-06-08T17:04:12.000000Z handler_name:
BAMTech video
vendor_id: [0][0][0][0] encoder:
HEVC Coding
[...]

| [trace_headers @ 0000021452a72240] 30 | cu_qp_delta_enabled_flag | 1 = 1 |
|---|---|---|

60.     Professor Lisandro Lovisolo (UERJ), consulted by the Author, conducted tests on HEVC videos provided by the Defendant in Brazil and attested to the use of the quantization parameter prediction technique in that format, confirming that Disney infringes patent BR 112012031160-3:



**PROFESSOR LISANDRO LOVISOLO (UERJ)**

*"Any encoder that generates a bitstream decodable by an H.265/HEVC decoder will implement the precepts of the invention disclosed in patent BR 112012031160-3*, contributing to the infringement of independent claims 5 and 9. As we have seen, the **encoded video signal** offered in Disney's streaming service has all the technical characteristics of the encoded video signal protected by claim 1 of patent BR 112012031160-3.*

*As seen, **the use of the invention protected by the patent by a H.265/HEVC encoder is optional**, since a streaming provider (such as Disney) may encode the video content to be delivered without forming a QP predictor based on multiple neighboring blocks (e.g., `a 49 left and above) and encoding only the difference between the current QP and that predictor, with a fallback rule when neighbors are not available. For example, the x265 encoder (used by Disney) can be configured to operate with a fixed QP per frame, without variation per encoding unit, and without using neighbor-based predictors.*

*In conclusion, we contend* **that Disney infringes patent BR 112012031160-3** *by providing encoded video signal data comprising encoded image data for at least a portion of an image using a quantization parameter predictor for a current quantization parameter to be applied to the image data, the quantization parameter predictor being determined using multiple quantization parameters from previously encoded neighboring portions, wherein a difference between the current quantization parameter and the quantization parameter predictor is encoded for signaling to a corresponding decoder, and wherein the quantization parameter predictor is determined by finding an average of the quantization parameters of the previously encoded neighboring portion to the left and the previously encoded neighboring portion above the portion currently being encoded when those neighboring portions are available, and if at least one of the neighboring portions is unavailable, basing the quantization parameter predictor on a quantization parameter for a current slice."*([21])

61.     It is clear, therefore, that although it is not mandatory and is not essential for the reproduction of videos in H.265/HEVC format, **patent BR 112012031160-3 is being voluntarily infringed by Disney by providing video content in Brazil encoded using the quantization parameter technology patented by the Plaintiff**. The purpose of this action is to

---

[21]    Doc. 7.

to put an end to this unauthorized use in order to stop the irreparable damage caused by this parasitic practice.

## 5.  RIGHT

### 5.1.  INJUNCTIVE RELIEF – SPECIFIC REMEDY

62.    Article 42 of the LPI establishes that the owner of a patent has the right to prevent any third party from exploiting the patented invention. In the insightful words of the STJ, "***an infringement of the rights of the owner of the invention will be characterized whenever, without the owner's authorization, a claim contained in the patent in force is present in a product manufactured or marketed by a third party without*** authorization."

63.    This is a real and constitutional right (Article 5, XXIX, of the Federal Constitution), which imposes on third parties the duty to refrain from unauthorized use of the patented technology.

64.    The substantive right provided for in the LPI, if violated, authorizes the granting of **urgent relief, in the form of an injunction** by the Judiciary, in order to order the infringer to cease violating industrial property rights or any act that gives rise to such violation (Article 209, paragraph 1, of the LPI)[23]. This is the **specific injunction** intended to protect the asset underlying the invention patent. And, as is well known, the Brazilian legal system enshrines the **primacy of specific injunctions,** according to the literal wording of art. 497, *caput,* of the CPC.

65.    Thus, the appropriate procedural instrument for protecting InterDigital's right is injunctive relief and, more specifically, the anticipation of such relief by means of a preliminary injunction, as sought in this action.

66.    The jurisprudence of the E. TJRJ [24] is unanimous in the sense that, once the verisimilitude of the right of the holder of the infringed patent and the risk to the useful outcome of the proceedings have been demonstrated

---

REsp No. 2.046.456/SP, Rel. Min. Nancy Andrighi, 3rd Panel, j. 10/17/2023.

"*The injured party reserves the right to claim damages in compensation for losses caused by acts of infringement of industrial property rights and of acts of unfair competition not provided for in this Law, which tend to damage the reputation or business of others, to create confusion between commercial, industrial, or service establishments, or between products and services placed on the market. § 1 **The judge may, in the proceedings of the action itself, in order to avoid irreparable or difficult to repair damage, preliminarily determine the suspension of the infringement or act that gives rise to it, before the defendant is summoned,** by means of, if deemed necessary, a cash deposit or surety bond.*

[24] AI No. 0010313-78.2024.8.19.0000, Judge Geórgia de Carvalho Lima, **7th Chamber of Private Law,** j. 10/01/2024; AI No. 0038614-35.2024.8.19.0000, Judge Fernando Cerqueira Chagas, **20th Chamber of Private Law,** j. 09/04/2024; AI No. 0018126-59.2024.8.19.0000, Judge Mafalda Lucchese, **21st Chamber of Private Law,** j. 08/21/2024; Interlocutory Appeal No. 0101528-72.2023.8.19.0000, Rel. Jds. Marcelo Marinho, **21st Chamber of Private Law,** j. 08/13/2024; AI No. 0101529-57.2023.8.19.0000, Rel. Des. André Luiz Cidra, **11th Chamber of Private Law,** j. 08/08/2024; AI No. 0106001-04.2023.8.19.0000, Rel. Jds. Marcelo Marinho, **21st Chamber of Private Law,** j. 06/18/2024; AI No. 0074809-53.2023.8.19.0000, Rela. Desa. Sirley Abreu Biondi, **6th Chamber of Private Law,** j. 03/04/2024; AI No. 0012886-26.2023.8.19.0000, Rel. Des. Fernando Cerqueira Chagas, **20th Chamber of Private Law,** j. 28/06/2023; AI No. 0056257-74.2022.8.19.0000, Rel. Des. Cláudio Luis Braga Dell'Orto, **3rd Chamber of Private Law,** j. 09/28/2022; AI No. 0081946-91.2020.8.19.0000, Rel. Des. Agostinho Teixeira, **5th Chamber of Private Law,** j. 05/27/2022; AI No. 0061872-79.2021.8.19.0000, Rel. Des. Renata Machado Cotta, **2nd Chamber of Private Law,** j. 11/17/2021; AIs No. 0050607-80.2021.8.19.0000 and 0051843-67.2021.8.19.0000, Reporting Judge Antonio Carlos Arrábida Paes, **10th Chamber of Private Law,** j. 09/14/2021; AI No. 0070451-55.2017.8.19.0000, Rel. Des. Fernando Foch, **2nd Chamber of Private Law,** j. 08/08/2018; AI No. 0047197-87.2016.8.19.0000, Reporting Judge Peterson Barroso Simão, **2nd Chamber of Private Law,** j. 11/30/2016; AI No. 0022777-86.2014.8.19.0000, Reporting Judge Marco Antonio Ibrahim, **16th Chamber of Private Law,** j. 06/11/2014; AI No. 0009772-31.2013.8.19.0000, Reporting Judge Inês da Trindade Chaves de Melo, **15th Chamber of Private Law,** j. 09/10/2013.

Due to the continuation of the acts of infringement, **it is essential to grant a preliminary injunction to stop the patent infringement**.

67.    By way of example, we cite recent judgments in patent infringement cases similar to the one discussed in the case files, which state, in particular, **(i)** the impossibility of allowing the perpetuation of patent infringement with illegal enrichment (illicit profit) and **(ii)** the inadequacy of adopting other measures, such as the deposit of a bond by the defendant:

> *"With regard to the aforementioned absence of periculum in mora to support the present emergency injunction, given the violation of the plaintiff's property rights, **it is the duty of the Judiciary to intervene in order to eliminate or, at least, minimize the resulting damages, since this is not a simple financial loss for the patent holder, but rather the negative repercussions that such misuse generates in the market, as there are other companies that pay for licenses while the appellants use it without paying the holder the appropriate remuneration, in addition to the discouragement caused to those who invest in the discovery of new technologies.** Thus, there is no evidence, prima facie, of the abuse of patent rights alleged by the appellants to justify the reversal of the appealed decision. **As for the subsidiary request to replace the emergency injunction with a bond in the amount of R$ 5,000,000.00 (five million), to be offered by SEMP TCL, it cannot be accepted, given the lack of legal support, since the aforementioned guarantee can be determined as a consequence of the granting of the emergency injunction, and not because of its rejection, as the appellant now claims.**"*
> (AI No. 0010313-78.2024.8.19.0000, Judge Georgia de Carvalho Lima, 7th Chamber of Private Law, j. **10/01/2024**)

****

> *"Temporary monopoly, with protection against possible copying or unauthorized use by the owner, contributes to the recovery of investment made in the new product or process and encourages reinvestment in new technological efforts. [...] In fact, **one must even consider the negative repercussions for those competitors who pay for the use of the protected technology, as they will be at an economic disadvantage compared to those who use the patent without due compensation. Once the matter has been submitted to the judiciary, it is its duty to stop the violation of the right, preventing its perpetuation and the increase of the damage already caused to those who seek to protect their rights protected by law.**"*
> (AI No. 0101602-29.2023.8.19.0000, Judge Ricardo Alberto Pereira, 15th Chamber of Private Law, j. **03/04/2024**)

****

> *"From reading the decision that is the subject of the appellants' appeal, it appears that **the appellants were not prevented from manufacturing and marketing their products, but rather that the Court simply ruled that they should refrain from using the patented technology without prior authorization**. Therefore, the conclusion reached is that there is no possibility of reverse danger, since the appellants themselves affirm, with conviction, that they do not use the aforementioned technology. Furthermore, **the request for a security deposit cannot be accepted either, as there is no evidence in the case file that the amount offered is sufficient for the security deposit to be effectively considered adequate**. It is true that the appellants provided their own calculation, which would be 60 (sixty) times greater than the amount due for the patent until the end of its term. However, there is no factual basis for the calculations presented, so that the argument that the proposed amount would, in fact, be sufficient and suitable cannot be accepted. (AI No. 0074809-53.2023.8.19.0000, Rel[a] ·Des[a] ·Sirley Abreu Biondi, 6th Chamber of Private Law, j. **03/04/2024**)*

68.    Similarly, all Commercial Courts in Rio de Janeiro have a settled understanding regarding the indispensability of granting preliminary injunctions in cases of [patent] infringement.

---

[25] **1st Commercial Court**: Case No. 0958336-61.2023.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, 1st Commercial Court, j. 12/01/2023; Case No. 0813303-40.2023.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, j. 02/08/2023; Case No. 0010664-19.2022.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita,

69.    The STJ has also ruled that the preliminary injunction preventing the continued use of patented technology **is not irreversible**:

> *"As can be seen, the lower courts **based their decision on the likelihood of the plaintiff's right to a registered patent and on technical opinions, even though produced unilaterally, which attest to the defendant's use of the invention, which, at this stage of the proceedings, sufficient to grant the injunction,** especially considering that the probability of the right invoked in matters of industrial property is based, as a rule, on the presumption of validity of the administrative act embodied in the registration of the patent owned by the respondent. [...] Therefore, contrary to the appellant's claim, **there is no lack of evidence of the likelihood of the right invoked.** As for the risk of damage, the local court stated that the **continued use of the technology could have negative repercussions on the economic segment operated by the defendant, as there are other agents operating in the same market** who, as far as is known, are already committed to licensing, assuming higher costs, which could lead to a **competitive imbalance,** a situation that highlights a **risk of damage** that goes beyond that resulting solely from the patent infringement through use, serving as grounds for the emergency measure. [...] It should be added **that reliance on technical expertise (which has already been included in the case file) for the complete resolution of the case is not, in itself, a reason for rejecting the preliminary injunction,** if there are other elements of conviction capable of convincing the judge in the preliminary judgment of probability characteristic of provisional remedies. On the other hand, it is not denied that the analysis of the preliminary injunction must take into account the danger of damage to both parties, especially with regard to the irreversibility of the measure (Art. 300, §§ 1 and 3 of the CPC). However, in the case under review, **it does not** appear, at least from the factual analysis made by the lower courts, that the cessation of the use of the patented technology would lead to the complete impossibility that, in the event of a*

February 16, 2022; Case No. 0126658-32.2021.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, June 21, 2021; Case No. 0126658-32.2021.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, dated June 17, 2021; Case No. 0109154-13.2021.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, dated June 7, 2021; Case No. 0210345-09.2018.8.19.0001, Honorable Judge Alexandre de Carvalho Mesquita, dated September 10, 2018.

**2nd Business Court**: Case No. 0907787-47.2023.8.19.0001, Honorable Judge Marcelo Mondego de Carvalho Lima, j. 08/24/2023; Case No. 0489343-17.2012.8.19.0001, Honorable Judge Marcia Cunha Silva Araújo de Carvalho, dated January 17, 2013; Case No. 0373121-63.2012.8.19.0001, Honorable Judge Marcia Cunha Silva Araújo de Carvalho, dated September 26, 2012.

**3rd Business Court**: Case No. 0853498-96.2025.8.19.0001, Honorable Judge Caroline Rossy Brandão Fonseca, 3rd Business Court, May 23, 2025; Case No. 0958559-14.2023.8.19.0001, Honorable Judge Luiz Alberto Carvalho Alves, 3rd Business Court, dated 12/04/2023; Case No. 0953148-87.2023.8.19.0001, Honorable Judge Luiz Alberto Carvalho Alves, dated November 27, 2023; Case No. 0179474-88.2021.8.19.0001, Honorable Judge Luiz Alberto Carvalho Alves, j. 08/13/2021.

**4th Business Court**: Case No. 0145291-57.2022.8.19.0001, Honorable Judge Paulo Assed, dated 12/06/2022; Case No. 0145291-57.2022.8.19.0001, Honorable Judge Paulo Assed, j. 11/30/2022; Case No. 0200051-87.2021.8.19.0001, Honorable Judge Paulo Assed Estefan, dated 01/24/2022; Case No. 0207683-04.2020.8.19.0001, Honorable Judge Paulo Assed Estefan, j. 11/20/2020; Case No. 0230687-12.2016.8.19.0001, Honorable Judge Paulo Assed Estefan, j. 07/25/2016.

**5th Commercial Court**: Case No. 0804050-57.2025.8.19.0001, Honorable Judge Elisabete Franco Longobardi, dated January 23, 2025; Case No. 0838717-06.2024.8.19.0001, Honorable Judge Elisabete Franco Longobardi, dated 04/08/2024; Case No. 0855029-28.2022.8.19.0001, Honorable Judge Maria da Penha Nobre Mauro, dated 07/11/2022; Case No. 0214224-53.2020.8.19.0001, Hon. Judge Maria da Penha Nobre Mauro, j. 04/11/2020 ; Case No. 0126070-69.2014.8.19.0001, Hon. Judge Maria Penha Nobre Mauro, j . 15/04/2014 .

**6th Commercial Court**: Case No. 0809129-51.2024.8.19.0001, Honorable Judge Maria Cristina de Brito Lima, dated February 7, 2024; Case No. 0947617-20.2023.8.19.0001. Judge Maria Cristina de Brito Lima, dated February 7, 2024; Case No. 0947617-20.2023.8.19.0001, Honorable Judge Maria Cristina de Brito Lima, dated November 9, 2023; Case No. 0938160-61.2023.8.19.0001, Honorable Judge Maria Cristina de Brito Lima, dated 10/19/2023; Case No. 0081472-49.2022.8.19.0001, Judge Maria Cristina de Brito Lima, dated 04/06/2022; Case No. 0035629-71.2016.8.19.0001, Honorable Judge Maria Cristina De Brito Lima, j. 05/03/2017; Case No. 0834763-49.2024.8.19.0001, Hon. Judge Alexandre de Carvalho Mesquita, j. 03/27/2024.

**7th Business Court**: Case No. 0231970-70.2016.8.19.0001, Honorable Judge Fernando Cesar Ferreira Viana, j. 09/29/2016.

*dismissal        of        lawsuit        filed,        it        returned        to        be        used again."* (Special Appeal No. 2.074.392/RJ, Reporting Justice Ricardo Villas Bôas Cueva, 3rd Panel, decided on November 16, 2023 [26] )

70.      Having clarified that injunctive relief is the specific remedy to cease the patent infringement, below we will demonstrate the presence of the requirements for the preliminary granting of injunctive relief. In this case, the following is evident: (**i) the** probability of InterDigital's right; (**ii) the** danger of damage and the risk to the useful outcome of the proceedings, as well as (**iii) the** absence of danger of irreversibility of the effects of the desired injunction. All of these elements are fully verifiable *prima facie* based on the foregoing in this initial petition and the documents that support it.

### 5.2.  COMPENSATORY INJUNCTION – SUBSIDIARY SOLUTION

71.      As mentioned above, the remedies established by law in the event of patent infringement are: (**i)** preferably, injunctive relief, aimed at curbing further acts of infringement (Art. 209, § 1, of the LPI), and, **only if this is not possible**, **(ii)** compensation for past damages. InterDigital trusts that this Court will, in light of **the principle of the primacy of specific relief (**Art. 497 of the CPC), grant preliminary injunctive relief to cease the infringement of the patents *sub judice* being practiced by the Defendant.

72.      One should not be confused with the other: it is well known that monetary compensation is not adequate to deter the continuation of unlawful acts of patent infringement, nor to adequately compensate the patent owner for the unauthorized use of his invention. The doctrine of "damages" is only applicable when (**a) the** infringement has already occurred (i*.e., the* defendant has already implemented the patented technology in its products before the infringement lawsuit was filed) or (**b)** when t h e  term of said patent has already expired.

73.      In any other scenario, such as in the present case—where the patent is still in force and is being infringed—preliminary injunction relief is the appropriate and specific remedy to safeguard the rights of patent holders. In the words of Professor Luiz Guilherme Marinoni, *"specific relief is preferable to monetary relief.*"

74.      Although unlikely, since the data on the infringement is only in the possession of the infringer, the possibility of quantifying the damage after a decision on the merits should be equally

---

[26] Recently, the STJ had another opportunity to examine a patent infringement case, in which it also upheld the preliminary injunction granted by these Commercial Courts. Business Courts: "*Therefore, the judgment is not contradictory, as it partially reversed the first-instance decision and found that, in that part, there was no prima facie case or danger of delay (requirements necessary for the recognition of preliminary relief) and, I emphasize, maintained the preliminary relief only for the prohibition of use of the technology. Furthermore, it is not silent, as it recognized that there are negotiations between the parties in its reasoning; as for the value of these negotiations, it did not issue a value judgment, since it was not necessary for the recognition of the requirements in summary proceedings. This is because, it should be reiterated, the state court examined, in a reasoned manner, the issues submitted for judicial review to the extent necessary to resolve the controversy, even if contrary to the appellant's claim. As for the granting of preliminary relief, pursuant to Article 300 of the CPC, MULTILASER argued that the requirements were not met, as recognized in the judgment itself. However, as stated above and in the single-judge decision, the requirements for granting preliminary relief are met.* [...] The *judgment partially reversed the appealed decision, taking into account that it needed to justify that it was not necessary to prohibit the import, assembly, manufacture, offer for sale/advertising, use, and/or commercialization of telephone devices, but recognized that the requirements for preliminary relief were met according to the factual analysis brought to the case file to date on the use of the* technology. (Internal appeal in special appeal No. 2230252/RJ, Rel. Min. Moura Ribeiro, 3rd Panel, j. 10/03/2023).

[27] Legal opinion of Prof. Luiz Guilherme Marinoni presented in patent infringement case no. 0179474 - 88.2021.8.19.0001 (page 191), which was heard before the 3rd Commercial Court of Rio de Janeiro.

contemplated: **(i)** damages already caused by the acts of infringement committed by the Defendant, as provided for in Article 44 of the LPI, and (**ii**) any infringements committed until the conclusion of this case (whether due to non-compliance with the emergency injunction, during the period until its granting, or in the event of non-compliance with the injunction, or even solely, hypothetically, in the event of its dismissal, which we trust will not occur).

75.      In view of the continuity of the infringements committed by the Defendant, the calculation of the compensation due, including the choice of the criteria to be used as a basis, should be made at the time of settlement of the judgment, since it is not possible to determine, at this stage, the actual extent of the damage caused to the Plaintiff.

76.      Furthermore, there is unequivocal **moral damage** caused to the Plaintiff, which is presumed (damage *in re ipsa*), since Article 186 of the Civil Code determines that anyone who violates the rights or causes damage to others commits an unlawful act, and Article 927 establishes that anyone who, through an unlawful act, causes damage to others is obliged to repair it.

77.      Similarly, it is clearly impossible at this time to determine the actual extent of the moral damages caused to InterDigital by the Defendant's infringing acts. The Defendant has been infringing InterDigital's industrial property rights with each passing day, thus the acts causing this damage are prolonged over time and will have repercussions in the future, making it difficult to determine a correct amount.

78.      Therefore, the provisions of Article 324, § 1, § II, of the CPC are applicable to the case, supported by the settled understanding of the E. STJ (Superior Court of Justice) regarding the possibility of formulating a generic request for compensation for moral damages when the initial petition contains elements that allow, in the course of the proceedings, the adequate quantification of the financial loss.

79.      However, in order not to prejudice the **urgent** analysis of the preliminary injunction, InterDigital will stipulate a provisional amount of R$ 200,000.00 (two hundred thousand reais) for its claim for moral damages, subject to adjustment at the discretion of this Court. Thus, the material and moral damages unquestionably caused to InterDigital by the Defendant must be satisfactorily compensated.

---

[28] *"In these cases, the claim can only be considered illiquid **if the act causing the damage could also have repercussions in the future, causing further damage** (e.g., a situation in which the moral injury is **ongoing**, such as improper registration in consumer files or continued damage to reputation); In this case, item II of §1 of art. 324, discussed here, would apply"* – DIDIER JR., Fredie. *Curso de Direito Processual Civil (Course on Civil Procedural Law).* 17th Ed., Salvador: Jus Podivm, 2015, v .1, pp. 589/591.

[29] STJ. Special Appeal No. 1,535,668, Reporting Justice Nancy Andrighi, 3rd Panel, decided on September 15, 2016. Similarly: STJ. Special Appeal No. 1,327,773, Reporting Justice Luis Felipe Salomão, 4th Panel, decided on November 28, 2017.

[30] *"The jurisprudence of this Court is clear regarding the possibility of filing a generic claim for compensation for moral damages, the arbitration of which is the exclusive responsibility of the judge, at his or her discretion. In cases where it is extremely difficult to immediately measure the amount due for material damages—because it depends on complex accounting calculations—a generic claim may be filed, provided that the plaintiff's claim is correctly individualized and the initial petition contains elements that allow for the adequate quantification of the financial loss during the course of the proceedings. In the case of a generic claim, the value of the case may be estimated at a symbolic and provisional amount, subject to subsequent adjustment to the amount determined in the judgment or in the settlement procedure." (STJ. REsp No. 1,534,559, Rel. Min. Nancy Andrighi, 3rd Panel, j. 11/22/2016)*

## 6.  URGENT PRELIMINARY INJUNCTION

80.    As seen above, the STJ understands that the Brazilian legislature, in the industrial property protection system, "*has managed to establish the **prevalence of injunctive <u>and preventive</u> relief**.*" It did so "*because it is understood that **injunctive relief** is **the most effective way to protect legal interests**, since **subsequent redress is not capable of restoring the parties to** the **actual** status quo* [ante].*"

81.    In the same vein, Professor Luiz Guilherme Marinoni argues that injunctive relief must be preventive in order to be effective: "*the legislature established the right to seek injunctive relief against threats to or violations of intellectual property—in particular, patent infringement. Furthermore, by providing that – even in cases of compensatory relief – it may be essential to grant a preliminary injunction without hearing the other party, he wanted to emphasize the **need for a preliminary injunction as a procedural technique inherent to the effective and adequate protection of** industrial **property**,*" concluding that "***If it is not possible to act against this illegal act through injunctive relief, granted preliminarily, there is no way for the patent holder to have their rights effectively*** [protected].*"

82.    In fact, Article 209, § 1 of the LPI establishes that "*the judge may, in the case file itself, in order to avoid irreparable or difficult to repair damage, preliminarily determine the suspension of the violation or act that gives rise to it, before the defendant is summoned, by means of, if deemed necessary, a cash deposit or surety bond.*" In the words of the STJ, this is "**the power and duty** *of the judge to prevent irreparable or difficult-to-repair damage, under the terms of Article 209 of the aforementioned law.*" Thus, once the requirements of Article 300 of the CPC are met, the preliminary injunction is the  appropriate measure.

83.    In the event that this Court finds that the requested measure should be granted after prior justification, upon confirmation of the violation by a judicial expert, the Plaintiff hereby requests **that an urgent expert examination be ordered** in order to enable compliance with Article 209, § 1, of the LPI in a timely manner to prevent irreparable damage.

84.    The solution is provided for in §2 of Article 300 and Article 139, VI, of the CPC and, at the same time, privileges the necessary protection of the violated right and the possibility for the defendant to defend himself against the allegation of infringement before the adoption of an injunction, in accordance with the principles of adversarial proceedings and full defense. This is without neglecting that the legislator established preventive injunctive relief, removing the illegal act from the legal world, as a specific remedy for patent infringement, as specified by the E. STJ ("*prevalence of injunctive and preventive relief, tending to achieve a result equivalent to compliance with the protected right*").

85.    This procedure is based on the prerogative of adapting the procedure to more effectively protect the right invoked and has been successfully implemented by the Business Courts to provide effective protection against patent infringement. **The Judges of the 1st, 3rd, 5th, 6th, and 7th Business Courts have already applied the procedure, and it is certain that no party has objected to the measure.** See:

> "*Having reviewed the case files, **I believe it is possible and convenient to apply the procedural schedule, pursuant to Article 191 of the Code of Civil Procedure, with a view to streamlining and***

---

[31]    STJ. Special appeal No. 1.315.479/SP, Rel. Min. Marco Aurélio Bellizze, 3rd Panel, j. 03/14/2017.

[32]    Opinion prepared by Professor Luiz Guilherme Marinoni and presented in case no. 0953148 - 87.2023.8.19.0001, which was heard before the 3rd Commercial Court of this District.

*efficiency of the proceedings*, bearing in mind that the judge is the conductor of the proceedings and is responsible for adopting measures that benefit the proceedings, without neglecting the rights of the parties.

*Considering the technical issue present in the case files, as well as the* **power to direct the proceedings conferred on the Judge, pursuant to art. 139, I, CPC**, *as stated,* I anticipate the evidentiary phase *and hereby designate the performance of expert evidence, due to the peculiarities of the case and the need for a swift resolution of the legal issue at hand, under penalty of forfeiture of the right.*

*Therefore, I appoint Dr. David Moura, whose qualifications are known to the court, as the court expert. He shall submit his fee proposal within five (5) days, which will be paid by the plaintiff, with the warning that he must observe the principles of reasonableness and moderation, as he is acting as an assistant to the Court, without this, of course, detracting from his important role. I allow the parties to prepare additional questions and appoint a technical assistant within ten (10) days.*

*With the arrival of the fee proposal, give the parties five days to respond.*

*If there are no objections, the deposit shall be made within fifteen (15) days.*

*Once the fees have been deposited, the expert shall be summoned to commence work, with 50% (fifty percent) of their remuneration being authorized for withdrawal, pursuant to Article 465, §4 of the CPC.* **The report must be submitted within 30 days, without fail**, *with an extension only possible in the event of exceptional justification by the expert.*

(Case No. 0883548-08.2025.8.19.0001, 1st Commercial Court, decided on July 11, 2025)

****

*"The practice, then, recommended revisiting this dynamic in order to immediately mature the definitive investigation aimed at the sentence.* **The general power of caution, an unshakeable power-duty of the judge, is therefore better invested in** anticipating the expert opinion **in order to ensure a prompt response to highly technical questions that are detrimental to the definition of the best law.**

*With this, in the time that was devoted to debating only the emergency injunction, the process, scheduled since the initial order, will be concluded. [...]*

*In light of the foregoing: [...] iii) I APPOINT Dr. David Moura, whose qualifications are known to the court, to* **conduct the expert examination that I hereby grant and** **anticipate***. [...] Within the response period, the plaintiff and defendant shall appoint a technical assistant and submit their questions, under penalty of preclusion. [...] The report must be submitted by September 30, 2025, and the parties may challenge it up to five business days before the hearing date. A hearing to hear the expert witness is hereby scheduled for October 15, 2025, at 4 p.m., at the headquarters of this Court.*

(Case No. 0853498-96.2025.8.19.0001, 3rd Business Court, decided on July 1, 2025)

****

*"Considering that this is an eminently technical matter and* **in order to provide the Court with the necessary elements for an early decision, I hereby order a preliminary assessment** *to be carried out by Engineer DAVID FERNANDES CRUZ MORUA, telephone 21.96419.776, emaildfcmoura@gmail.com , registered with the CPF under number 051.576.237-71. I set the fees at R$ 5,000.00 (five thousand reais), which will be payable at the end by the losing party and which must be advanced by the plaintiff. The preliminary report must be delivered as soon as possible."*

(Case No. 0880435-46.2025.8.19.0001, 5th Business Court, decided on 06/26/2025)

****

*"The most recent experience adopted by the business courts of the Capital has proven to be quite efficient in dealing with similar cases.*

*This is because* **it anticipates** *not the obligation not to do something, but rather* **the production of technical evidence itself***, thus* **implementing the rule set forth in Article 209, §1 of the LPI in conjunction with Articles 300, §2 and 139, I of the CPC***. Incidentally, it is worth noting that the resolution of this case requires technical expertise.*

*All of this, scheduled as authorized by Article 191 of the CPC, ensures the speedy conduct of procedural acts, with full respect for the procedural and constitutional rights of the parties,* **with a view to reaching a decision based on greater evidence to be adopted in a much more reasonable time frame***. That said,* I anticipate the production of the technical expertise, to be carried out promptly."

(Case No. 0912896-71.2025.8.19.0001, 6th Commercial Court, decided on August 14, 2025)

****

*"The practice, then, recommended revisiting this dynamic in order to immediately mature the definitive investigation aimed at the sentence. **The general power of caution, an unshakeable power-duty of the judge, is therefore better invested in <span style="color:red">anticipating the expert opinion</span> in order to ensure a prompt response to highly technical questions that are detrimental to the definition of the best law.***
*With this, in the time that was spent debating only the emergency injunction, the process will be concluded,*
*scheduled since the initial order. [...]*
*In light of the foregoing: [...] iii) I APPOINT Dr. David Moura, whose qualifications are known to the court, to **conduct the expert examination that I hereby grant and <span style="color:red">anticipate</span>**. [...] Within the response period, the plaintiff and defendant shall appoint technical assistants and submit their questions, under penalty of preclusion. [...] The report must be submitted by May 13, 2025. A hearing to hear the expert witness is hereby scheduled for June 13, 2025, at 2:00 p.m., at the headquarters of this Court.*
(Case No. 0811901-50.2025.8.19.0001, 7th Business Court, February 11, 2025)

86.    It is important to note that there was no appeal (appeal or request for reconsideration) by the defendants in the proceedings in which the above decisions were handed down, which demonstrates the reasonableness of the solution in question.

87.    In any case, the Plaintiff believes that it has provided sufficient evidence of the alleged right in this initial petition, as well as demonstrated the urgency and non-irreversibility of the requested relief. Below is a summary of the elements that demonstrate that the legal requirements for the granting of the requested provisional relief have been met.

## 6.1. *FUMUS BONI IURIS*

88.    InterDigital is recognized worldwide for its contributions in the field of video encoding, having received, this year alone, two CSI[33] awards that recognize its excellence in video processing solutions and in delivering immersive video experiences. This recognition translates into the licenses that InterDigital has granted to several companies that provide video content with the technology claimed by the patent *sub judice.*

89.    What is asserted in this complaint is that Disney infringes patent BR 112012031160-3 by encoding and distributing video files that can be decoded by decoders compatible with the H.265/HEVC format using the quantization parameter formation tool claimed in the patent *in question*. And the Defendant does so in a totally **deliberate and volitional** manner**,** since it could encode video files in the H.265/HEVC format without using the quantization parameter feature claimed by BR 112012031160-3.

90.    This means that Disney is actively choosing to implement technology patented by others that improves its services, providing it with economic benefits, while unjustifiably refusing to obtain the necessary license to make lawful use of that technology. This is the reason for the preliminary injunction sought by InterDigital in this initial petition, through which it seeks to prevent Disney from continuing its unauthorized use of its optional video encoding technology.

91.    To demonstrate that the requirements of the law for granting the preliminary injunction have been met, the Plaintiff presents proof of ownership of the rights conferred by BR 112012031160-3, which is valid and in full force and effect, in addition to the following means of

---

[33]    ir.interdigital.com/news-events/press-releases/news-details/2024/InterDigital-Wins-Two-CSI-Awards-for-Best-Immersive-Video-and-Video-Processing-Technology/default.aspx

evidence demonstrating that the technology claimed by the patent *sub judice* is being implemented in the *streaming* services offered by Disney in Brazil:

    **i)** **Patent letter BR 112012031160-3**, which confirms in a very simple and direct manner that InterDigital is the owner of the patent *sub judice* and, therefore, has exclusive rights to the invention;

    **ii)** **Technical opinion from a renowned expert** in the field related to the technology protected by the patent *sub judice*, who analyzed the issue impartially and independently, based on a thorough study and practical tests, attested that any encoder that generates a bit stream decodable by an H.265/HEVC decoder will implement the precepts of the invention disclosed in patent BR 112012031160-3, the use of which is optional;

    **iii)** **Practical tests reproduced by a notary public** prove that the Defendant's *streaming* service implements the quantization parameter prediction technology protected by patent BR 112012031160-3;

    **iv)** The fact that **the parties have been trying for years to negotiate a license for the Plaintiff's patent portfolio, which includes the patent now *sub judice***, although to date they have not reached an agreement due to the Defendant's pure recalcitrance and bad faith in the negotiations.

92.    One must also consider the understanding repeatedly expressed by the E. TJRJ that **the existence of licensing negotiations between companies is one of the strongest indications of the likelihood of copyright**:

> *"It cannot be ignored that both parties presented reports to corroborate their arguments regarding whether or not the patent was infringed; however, it is undeniable that the parties already had a contractual relationship (item 52 of the initial petition – ID P [...] 45076369)1, and **that negotiations are ongoing between the parties** (page 253). In this scenario, **the right claimed by the respondent with regard to the alleged patent infringement is considered probable.***
> (Interlocutory appeal No. 0012886-26.2023.8.19.0000, Judge Fernando Cerqueira Chagas, 20th Chamber of Private Law, j. 06/28/2023 – under seal)

> \*\*\*\*

> *"Now, **if it is true that there have been, or are, negotiations between the parties, it is because the aforementioned technology may, in fact, be used in the devices**, which, obviously, is not possible without the agreement of the patent holder. On the other hand, if it is true that the devices do not use the aforementioned technology, the Appellants have nothing to fear in continuing to market the equipment. Thus, although there is discussion as to whether or not such patents are in fact being infringed, **the fact that there are indications of negotiations between the parties cannot be ignored, requiring that the marketing of cell phones be authorized, however, without such technological resources**, discussed here, being used without the respective authorization or payment of the agreed amounts."* (Interlocutory Appeal No. 0050607-80.2021.8.19.0000 and 0051843-67.2021.8.19.0000, Rel. Des. Antônio Carlos Arrabida Paes, 10th Chamber of Private Law, j. 09/14/2021)

93.    Thus, the likelihood of InterDigital's right has been demonstrated. Notwithstanding the evidence listed above, the Plaintiff, as stated, requests, in the event, that urgent relief be granted after prior justification, pursuant to §2 of art. 300 of the CPC, consisting of **the immediate performance of a technical expert examination** to enable the granting of the specific remedy provided for by law, set forth in Article 209, Paragraph 1, of the LPI, in a timely manner, in order to prevent the perpetuation of truly irreparable damages that have been imposed on the Plaintiff with the infringement of its patent.

## 6.2. *PERICULUM IN MORA*

94.     Inhibitory relief does not require proof of damage, as expressly provided for in the sole paragraph of Article 497 of the Code of Civil Procedure. The mere finding of the existence of the unlawful act fulfills the requirement of *periculum in mora* for the purposes of granting the preliminary injunction now sought, as already attested to by case law: "the ***danger in delay, on your part, is*** <u>**in re ipsa,**</u> *insofar as the inherent slowness of the process will benefit, if the preliminary injunction is not granted, precisely those who, by all indications, are infringing* <sup>on the patent."</sup>

95.     Although it is unnecessary to establish this for the granting of the injunction to remove the unlawful act that is being sought, there is **an** unequivocal **danger in delay** because:

i)     If the Defendant is allowed to continue implementing InterDigital's technologies without authorization and without any sanctions, **the Plaintiff's patent licensing business will suffer irreparable damage**. Other players in this market will be strongly discouraged from maintaining their licenses with InterDigital if the Defendant is allowed to continue using the technologies protected by the patent *in question* without due compensation (which results in lower production costs and, therefore, an illegal competitive advantage).

ii)     The Plaintiff can only remain in business by reinvesting what it earns from its licenses in the development of the next generations of technologies. When an agent of Disney's size uses its patents without a license (and therefore without payment), it **prevents InterDigital from continuing the cycle of innovation**. Without proper compensation for its innovation efforts, the Plaintiff is unable to participate in the development of future technologies. In other words, in order for its economic activities to be sustained, InterDigital depends on the **effective and immediate** exercise of its right to exclude third parties from the unauthorized use of its patented technology**;**

iii)     The patent *sub judice* has **a definite expiration date**. The passage of time is irremediable. Each day that passes without InterDigital being able to exercise its right of exclusivity causes that right to perish;

iv)     In addition to having a fixed term, the patent covers technologies in a field that is constantly and rapidly evolving. If the technologies claimed by it are not protected immediately, it is quite possible that the patent *sub judice* will lose its value before the end of the current legal action. **The possible obsolescence of the technology in question shows that time is running against the Plaintiff and in favor of the Defendant**;

v)     **There is no punitive damages in Brazilian law** that can discourage the infringer from continuing to repeatedly commit the infringement, with preventive relief being the only remedy available to the litigant. Without preventive relief, patent infringement pays off, since the **compensation due for the infringement is limited to what the Defendant should have paid from the outset.** It is therefore very convenient for Disney to continue to delay the proceedings so that, only at the end of a lawsuit, it will have to pay compensation that will be

---

<sup>34</sup>     AI 2017998-49.2020.8.26.0000, Rel. Des. César Ciampolini, 1st Reserved Chamber of Business Law, j. 06/02/2021.

always inefficient and insufficient, making it more profitable to violate the law and the rights of others.

96.    Failure to enforce InterDigital's rights violated by the Defendant will give it an incentive to continue practicing the illegal act and to delay the resolution of this dispute. This would be compensating for an illegal act, **legitimizing a practice known as** **_lucrative illegality_**, already severely curbed by the Brazilian courts, citing, among others, the following precedent from the E. TJSP:

> *"And the danger in delay, on your part, is in re ipsa, insofar as **the inherent slowness of the process will benefit, if the preliminary injunction is not granted, precisely those who, by all indications, are infringing on the patent**. It is necessary to minimize the negative effects of lengthy proceedings. [...] The above ruling invokes the **theory of unlawful profit,** based on the observation of the distinguished President, Judge PEREIRA CALÇAS. This theory also serves as the basis for this decision. **The aim is to prevent patent infringements, in the defense of which it is always possible to argue, as the defendant does here, issues of apparent complexity for laymen, from persisting throughout the long duration of the proceedings, under the pretext of evidentiary investigation in which expert evidence must be produced**.*
> (Interlocutory appeal No. 2017998-49.2020.8.26.0000, Judge Cesar Ciampolini, 1st Reserved Chamber of Business Law, June 2, 2021)

97.    The jurisprudence of the E. TJRJ also understands that the damage caused to the owner of an infringed patent grows every day and is irreversible, and cannot be adequately compensated by "losses and damages" at the end of the lawsuit, being harmful to the maintenance of other licenses and impacting equal competition, as already explained above:

> *"In turn, the risk of irreparable damage or difficult and uncertain redress stems from the very manufacture and marketing of products using the aggravated party's technology, without a license or authorization to do so. **Waiting for the end of the lawsuit to then determine that the aggravating parties refrain from exploiting the use of the invention** would constitute the perpetuation of the unlawful act, which cannot be endorsed by the Judiciary."*
> (Interlocutory appeal No. 0015914-36.2022.8.19.0000, Judge Mauro Pereira Martins, 21st Chamber of Private Law, **September 29, 2022** – under seal)

98.    Furthermore, there is **a clear risk to the outcome of the lawsuit** if InterDigital's patent rights are not protected immediately. As the Defendant is the sole holder of the documentation capable of accurately quantifying the damages suffered by InterDigital, it will certainly do everything in its power to prevent proper compensation for these **damages—a reality that has already been confirmed in the case law of the E. TJRJ**, as seen above.

99.    The case in question is similar to one in which a particular property is illegally taken over by a third party who sets up their business there. The squatter cannot be allowed to remain in possession to the detriment of the owner's rights, legitimizing a manifestly illegitimate possession, contrary to the owner's will and, worse, without any compensation, affecting a legal economic activity that generates innovation and drives the economy.

100.    Postponing the granting of injunctive relief will mean a victory for those who intentionally take possession of someone else's invention, the result of heavy investment and lengthy research, legitimizing illegality, encouraging unfair competition, and rendering a fundamental right meaningless.

### 6.3. ABSENCE OF IRREVERSIBILITY

101.    Time is against the Plaintiff, which has been suffering irreversible losses due to the misuse of its technologies. The preliminary injunction requested will only serve to determine that the Defendant cannot continue to violate the patent *sub judice* with impunity, imposing a coercive measure in relation to future acts if it persists in its unlawful conduct.

102.    Since the patented technology is optional, the preliminary injunction sought by the Plaintiff will not prevent Disney from continuing to provide its *streaming* service in Brazil, nor will it prevent it from continuing to provide video content encoded in HEVC format. For this reason alone, it is clear and certain that the requested injunction, due to its **limited and easily reversible nature,** does not represent a risk of irreversible damage to the Defendant.

103.    It is entirely possible for the Defendant to continue its economic activities without infringing InterDigital's patent *sub judice*, either by refraining from using the technology or by negotiating a license, as its direct competitors have done. In this regard, it should be noted that the licensing offer submitted by InterDigital to the Defendant remains valid and may be accepted at any time by Disney, provided that it engages in good faith in negotiations with the Plaintiff.

104.    In any case, there is no doubt that **ceasing to use InterDigital's patented technology, as requested by the Plaintiff, will have no impact on the Defendant's revenue**.

105.    Disney's size is remarkable. With a market value of over [35] $230 billion, the Defendant states that its goal is "*to be the world's largest producer and provider of entertainment and information.*" [36] In addition to offering content through the Disney+ *streaming* platform, the Defendant also owns several studios, television networks, advertising services, *merchandising, and* theater divisions. The company owns and licenses fourteen (14) theme parks worldwide, as well as a large music division. In short, the company has become the largest media and entertainment conglomerate on the planet in terms of revenue.

106.    Although Disney's size has no bearing on the damages caused to the Plaintiff by the infringement of its patents—since, as amply discussed above, injunctive relief is not adequate to resolve the legal crisis in this case—it makes it clear that the limited preliminary injunction sought in this petition does not have the capacity to cause it reverse harm.

107.    Furthermore, the preliminary injunction requested has *ex nunc* (prospective) effect, covering only acts not yet performed—as stated, InterDigital's intention is not to hinder the Defendant's activities, but only to prevent the continued infringement of its patents and thus prevent irreparable damage from continuing to be inflicted on it on a daily basis.

108.    Incidentally, all *streaming* services (such as Disney+) periodically encode their video content. Therefore, compliance with the preliminary injunction would be achieved simply by ceasing to apply the claimed feature to the video content provided in Brazil.

---

[35]   ycharts.com/companies/DIS/enterprise_value .

[36]   thewaltdisneycompany.com

109.    In fact, Disney itself claimed in the records of another case involving InterDigital that it was recoding its catalog to remove video encoding technologies owned by the Plaintiff. Therefore, it could simply do the same with regard to the technical solution protected by the patent *sub judice*. It even claims that it has already made the necessary preparations for this:

> 6. A declaração ora apresentada relata que **a DISNEY comprometeu mais de USD 1.000.000,00 (um milhão de dólares) para aquisição de** *hardwares* **adicionais para acelerar o processo de recodificação de todo o seu conteúdo de** *streaming* **a fim de cumprir com maior eficiência eventual tutela provisória concedida à INTERDIGITAL**, já se antecipando para o cenário em que poderia ser deferida. Em outras palavras, a DISNEY já estava promovendo a alteração do processo de codificação do conteúdo do *streaming* Disney+ no Brasil antes mesmo da concessão da medida requerida pela Autora, de modo que **a DISNEY já deu conta de recodificar uma parte de seus conteúdos de vídeo**. Em especial, **todo conteúdo novo do catálogo do DISNEY+ já está sendo lançado na plataforma com a nova codificação que cumpre o comando da r. decisão desse r. Juízo**. [37]

110.    All that is sought is to prevent the Plaintiff's invention from continuing to be infringed with impunity, to the smallest extent possible. It is therefore clear that there is no indication that the measure sought has the power to cause any irreversible effect on the Defendant. On this point, the most recent ruling by the Superior Court of Justice on the matter states that "*it is not clear* [...] *that the cessation of use of the patented technology would lead to the total impossibility of its reuse in the event that the action is dismissed*"

111.    It is also indisputable that the possible satisfactory nature of the requested injunction, which is not even the case in the present proceedings, does not constitute an obstacle to its [granting]. In any event, under the terms of Article 302 of the CPC, any damages that may be caused by the requested preliminary injunction may be compensated by the Plaintiff if the injunction is revoked, which will certainly not happen.

## 7.  REQUESTS

### 7.1. PRELIMINARY REQUEST

112.    In view of the foregoing, InterDigital respectfully requests the granting of **urgent provisional relief** to order the Defendant, pursuant to Article 209, paragraph 1, of the LPI, to refrain, within a reasonable period of time, from

---

[37] Id. 227350865 of case no. 0811901-50-2025.8.19.0001, pending before the 7th Business Court of this district (Doc. 5).
Special Appeal No. 2074392/RJ, Rel. Min. Ricardo Villas Bôas Cueva, 3rd Panel, j. 11/16/2023.

[39]    "*Irreversibility should not be confused with satisfaction. All anticipatory measures are, by nature, satisfactory, that is, they allow the plaintiff to enjoy, at least in part, the benefit claimed in the lawsuit. Satisfaction, however, may have reversible or irreversible consequences in terms of facts. It will be reversible when it allows for the full restoration of the factual situation prior to its granting and irreversible in the opposite situation. Let us insist on this point: **reversibility has to do with the facts resulting from compliance with the decision and not with the decision itself. The decision is always reversible, even if the factual consequences of its compliance are irreversible**.*" (Teori Zavaski. Antecipação da Tutela [Anticipation of Relief], São Paulo: Saraiva, 2009, chapter V , item 13).

to implement, in Brazil, the technology protected by patent BR 112012031160-3 when encoding and distributing video files that can be decoded by decoders compatible with the H.265/HEVC format using the quantization parameter formation tool claimed in the patent *sub judice*, under penalty of a daily fine in the amount of R$ 100,000.00 (one hundred thousand reais) or another amount arbitrated by Your Honor.

113.    <u>Alternatively</u>, if this Court understands that the requested measure should only be granted after **prior justification (**Art. 300, § 2, of the CPC), we request that **an urgent expert examination be conducted** in order to enable compliance with Art. 209, § 1, of the LPI, based on the provisions of Art. 139, VI, of the CPC, with the following steps <u>suggested</u> in the event that the urgent injunction is not immediately granted:

    **i)**    **Appointment of an expert** specialized in the subject matter of ^the expert examination;

    **ii)**    Subpoena of the Defendant to file a response within the legal deadline, when **it must also submit questions and appoint technical assistants** (Article 465, § 1, of the CPC), with the Plaintiff having the same deadline to do so and, if they wish, to challenge the appointment of the expert appointed at the same time; and

    **iii)**    **Setting a deadline** for the delivery of the report in no more than one (1) month or thirty (30) calendar days from the fulfillment of the above deadline or its expiration *in albis*.

## 7.2. MERIT REQUEST

114.    On the merits, we respectfully request that the preliminary injunction for urgent provisional relief be confirmed as requested above and **that the request be granted** to:

    **i)**    Order the Defendant to **immediately cease infringement of patent BR 112012031160-3**, consisting of the practice of any of the acts indicated in art. 42 of the LPI, without prior authorization from the Plaintiff, through the encoding and distribution of video files decodable by decoders compatible with the H.265/HEVC format using the quantization parameter formation tool claimed in the patent *sub judice;*

    **ii)**    Order the Defendant to pay full compensation for **material damages** resulting from the infringement of patent BR 112012031160-3, in an amount to be determined in the settlement of the judgment, using the criteria most favorable to the Plaintiff, pursuant to Article 210 of the LPI;

    **iii)**    Order the Defendant to pay compensation for **moral damages**, in an amount to be determined when the judgment is rendered, **with** a **minimum** amount of R$ 200,000.00 (two hundred thousand reais) indicated as of now, without prejudice to a higher amount being awarded for full compensation for the immaterial damage suffered by the Plaintiff; and

    **iv)**    Order the Defendant to pay **court costs** and **attorneys' fees**, the latter in an amount equivalent to 20% (twenty percent) of the total net amount of the award.

---

[40] Signal transmission, a subject matter for professionals trained in electrical, electronic, and telecommunications engineering, as well as in computer science, computer engineering, and related fields.

## 7.3. PROCEDURAL PROVISIONS

115.    It is requested that **the Defendant be personally summoned**, **by electronic means**, to comply with the provisional injunction, as well as to **be served**, **also by electronic means**, pursuant to Article 246, § 1-A, of the CPC, to file a response, if desired, under penalty of default.

116.    **If the Defendant is not registered with SISTCADPJ**, the Plaintiff hereby requests that the Defendant be personally summoned and served **by a bailiff**, by means of **a letter rogatory** to be delivered to the address indicated in the preamble to this petition.

117.    The Plaintiff hereby requests the production of all evidence admissible by law, in particular **supplementary documentary** and **expert evidence**. And, at the time of the review of the case (Article 357, III, of the CPC), it requests that **the burden of proof be reversed,** in accordance with Articles 42, § 2, of the LPI and 373, § 1, of the CPC, since the case deals with a patented process and it is easier for the Defendant to prove that it uses a process other than the patented one.

118.    The Plaintiff, in compliance with art. 319, VII, of the CPC, informs that it has no interest in holding a conciliation or mediation hearing, since the attempts at settlement undertaken by it have been unsuccessful, which is why it expresses its lack of interest in the act.

119.    Finally, the Plaintiff requests, for the purposes of Article 77, V, of the CPC, that all summonses and notifications be made in the name of its attorneys **Rodolfo Pinto Barreto** (OAB/RJ 196.288), **Bruno Falque (**OAB/RJ 234.282), and **Amanda Terra (**OAB/RJ 244.856), with their professional address at Av. Oscar Niemeyer, 2,000, 9th Floor, CEP 20.220-297, Rio de Janeiro – RJ, and email address intimacoes@lickslegal.com , under penalty of nullity.

120.    The Plaintiff attributes a value of R$ 300,000.00 (three hundred thousand reais) to the case for tax purposes.

Whereupon, she
requests approval.

Rio de Janeiro, October 28, 2025.

| Otto Licks<br>OAB/RJ 79.412 | Rodolfo Pinto Barreto<br>OAB/RJ 196,288 | Luis Felipe Salomão Filho OAB/RJ<br>234,563 |
|---|---|---|
| Carlos Aboim<br>OAB/RJ 110,246 | Bruno Falque<br>OAB/RJ 234,282 | Paulo Cesar Salomão Filho OAB/RJ<br>129,234 |
| Abel Gomes<br>OAB/RJ 64,599 | Amanda Terra<br>OAB/RJ 244,856 | Rodrigo C. Salomão OAB/RJ<br>211,150 |
|  |  | Alice M. Studart da Fonseca<br>OAB/RJ 164,462 |

**LIST OF ATTACHED DOCUMENTS**

**Attachment A – Technical details regarding the use of patents by the Defendant;**

**Annex B – Proof of payment of court fees for filing the lawsuit; Doc. 1** Power of

| | | |
|---|---|---|
| **Parties** | | attorney from InterDigital; |
| | **Doc. 2** | Disney corporate documents; |

| | | |
|---|---|---|
| **Patent** | **Doc.** | Patent letter BR 112012031160-3; |

| | | |
|---|---|---|
| **Standard** | **Doc. 4** | HEVC (*High Efficiency Video Coding*) format standard and its certified translation; |

| | | |
|---|---|---|
| **Evidence of the infringement** | **Doc. 5** | Petition filed by the Defendant in case no. 0811901-50-2025.8.19.0001 stating that it is recoding the catalog; |
| | **Doc. 6** | Petition filed by the Defendant in case no. 0811901-50-2025.8.19.0001 stating that it uses the x265 application; |
| | **Doc. 7** | Opinion of Prof. Lisandro Lovisolo (UERJ) demonstrating the use of the patent by the Defendant; |
| | **Doc. 8** | Notarial deed proving that Disney+ implements the quantization parameter prediction technology protected by BR 112012031160 - 3; |
| | **Doc.** | Notarial deed proving that the Defendant sells digital videos in the city of Rio de Janeiro; |

| | | |
|---|---|---|
| **Precedents** | **Doc.** | Precedents from this E. TJRJ granting the production of early expert evidence. |